# EXHIBIT "J"

**REPLICA**

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

President and CEO                    Secretary

**WHOLE LIFE POLICY**
**WITH ADJUSTABLE TERM PROTECTION**

**Eligible For Annual Dividends.**

Basic Amount plus Adjustable Term Protection payable on death of Insured. Premiums payable for period shown on page 3.

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning. Any premium paid will be refunded.

NN 3



Northwestern Mutual

| | | | | |
|---|---|---|---|---|
| INSURED | KENNETH WILSON | AGE AND SEX | | 35   MALE |
| POLICY DATE | MAY 29, 2004 | POLICY NUMBER | | 16 852 083 |
| PLAN | WHOLE LIFE - ADJUSTABLE | BASIC AMOUNT | $ | 150,000 |
| | | ADJUSTABLE TERM | | 0 |
| NN.3.(0197) | | TOTAL INSURANCE AMOUNT | | 150,000 |

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. THE CONTRACT**

Life Insurance Benefit payable on death of Insured. Incontestability. Suicide. Definition of dates.

**SECTION 2. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 3. ADJUSTABLE TERM PROTECTION**

Description of Adjustable Term Protection. Inflation Protection Option. Scheduled and unscheduled increases. Reduction.

**SECTION 4. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace period of 31 days to pay premium. Amount of premium and premium adjustments. Unscheduled additional premium payments. How to reinstate the policy.

**SECTION 5. DIVIDENDS**

Annual dividends. Use of dividends. Dividend at death.

**SECTION 6. PAID-UP ADDITIONS**

Purchase of additions. Addition to reduce term insurance. Addition to increase paid-up insurance. Allocation of additional premiums and dividends.

**SECTION 7. CASH VALUES, EXTENDED TERM INSURANCE AND PAID-UP INSURANCE**

Cash surrender value. What happens if premium is not paid. Basis of values.

**SECTION 8. LOANS**

Policy loans. Premium loans. Effect of policy debt. Interest on loans.

**SECTION 9. CHANGE OF POLICY**

**SECTION 10. BENEFICIARIES**

Naming and change of beneficiaries. Marital deduction provision for spouse of Insured. Succession in interest of beneficiaries.

**SECTION 11. PAYMENT OF POLICY BENEFITS**

Payment of surrender or death proceeds. Payment plans for policy proceeds. Right to increase income under payment plans. Guaranteed payment tables.

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

NN 3

BENEFITS AND PREMIUMS

DATE OF ISSUE - MAY 29, 2004

| PLAN AND ADDITIONAL BENEFITS | | AMOUNT | SCHEDULED ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|---|
| WHOLE LIFE - ADJUSTABLE | | | $    2,284.50 | 55 YEARS |
| BASIC AMOUNT | $ | 150,000 | | |
| ADJUSTABLE TERM PROTECTION | | O | | |
| TOTAL INSURANCE AMOUNT | | 150,000 | | |
| WAIVER OF PREMIUM | | | 59.40 | 30 YEARS |

A PREMIUM IS PAYABLE ON MAY 29, 2004 AND EVERY MAY 29 AFTER THAT.

THE FIRST PREMIUM IS $2,343.90.

THE MINIMUM ANNUAL PREMIUM IS $2,284.50.  SEE SECTION 4.2.

WHILE THE WAIVER OF PREMIUM BENEFIT IS IN FORCE, THE PREMIUM FOR THIS
BENEFIT WILL BE AN AMOUNT EQUAL TO  2.60% OF EACH SCHEDULED PREMIUM PAID.
IF A SERIES OF INCREASES OF ADJUSTABLE TERM PROTECTION OR ADDITIONAL
PREMIUM IS STARTED AFTER THIS POLICY IS ISSUED, THE PERCENTAGE WILL INCREASE.

THE MAXIMUM CHARGE FOR EXPENSES THAT MAY BE DEDUCTED FROM EACH ADDITIONAL
PREMIUM USED TO PURCHASE A PAID-UP ADDITION UNDER SECTION 6.1 IS 8%.

THE OWNER MAY ELECT THE SPECIFIED RATE OR THE VARIABLE RATE LOAN INTEREST
OPTION.   SEE SECTIONS 8.4 THROUGH 8.6 OF THE POLICY.   THE SPECIFIED RATE
LOAN INTEREST OPTION WAS SELECTED ON THE APPLICATION.

THIS POLICY IS ISSUED IN A SELECT (NON-TOBACCO USE) PREMIUM CLASS.

DIVIDENDS ARE NOT GUARANTEED.  THE COMPANY MAY CHANGE THE AMOUNT OF DIVIDEND
CREDITED TO THIS POLICY RESULTING IN LOWER DIVIDEND CASH VALUES THAN
ILLUSTRATED, OR, IF APPLICABLE, MORE PREMIUMS PAID IN CASH THAN ILLUSTRATED.

GUARANTEED VALUES ARE BASED ON AN ANNUAL EFFECTIVE INTEREST RATE OF 4%.

DIRECT BENEFICIARY  MICHELLE A  WILSON, SPOUSE OF THE INSURED

OWNER                    KENNETH  WILSON, THE INSURED

| | | | |
|---|---|---|---|
| INSURED | KENNETH  WILSON | AGE AND SEX | 35    MALE |
| POLICY DATE | MAY 29, 2004 | POLICY NUMBER | 16 852 083 |
| PLAN | WHOLE LIFE - ADJUSTABLE | BASIC AMOUNT    $    150,000 | |
| | | ADJUSTABLE TERM              O | |
| | | TOTAL INSURANCE AMOUNT    150,000 | |

TABLE OF GUARANTEED VALUES
FOR $   150,000 BASIC AMOUNT

| END OF POLICY YEAR | MAY 29, | CASH VALUE | PAID-UP INSURANCE |
|---|---|---|---|
| 1 | 2005 | $         0 | $         0 |
| 2 | 2006 | 1,771 | 6,587 |
| 3 | 2007 | 3,594 | 12,932 |
| 4 | 2008 | 5,467 | 19,042 |
| 5 | 2009 | 7,390 | 24,918 |
| 6 | 2010 | 9,361 | 30,563 |
| 7 | 2011 | 11,380 | 35,988 |
| 8 | 2012 | 13,447 | 41,198 |
| 9 | 2013 | 15,562 | 46,202 |
| 10 | 2014 | 17,727 | 51,015 |
| 11 | 2015 | 19,938 | 55,635 |
| 12 | 2016 | 22,200 | 60,079 |
| 13 | 2017 | 24,513 | 64,357 |
| 14 | 2018 | 26,875 | 68,469 |
| 15 | 2019 | 29,289 | 72,425 |
| 16 | 2020 | 31,753 | 76,233 |
| 17 | 2021 | 34,261 | 79,885 |
| 18 | 2022 | 36,813 | 83,394 |
| 19 | 2023 | 39,399 | 86,751 |
| 20 | 2024 | 42,016 | 89,963 |
| AGE 60 | 2029 | 55,560 | 104,115 |
| AGE 65 | 2034 | 69,679 | 115,552 |
| AGE 70 | 2039 | 83,767 | 124,642 |

VALUES ARE INCREASED BY PAID-UP ADDITIONS, DIVIDEND ACCUMULATIONS, AND
ADDITIONAL PREMIUMS. VALUES ARE DECREASED BY POLICY DEBT AND SURRENDERS
OF PAID-UP ADDITIONS. VALUES SHOWN AT END OF POLICY YEAR DO NOT REFLECT
ANY PREMIUM DUE ON THAT POLICY ANNIVERSARY.

| | | | |
|---|---|---|---|
| NSURED | KENNETH  WILSON | AGE AND SEX | 35_  MALE |
| 'OLICY DATE | MAY 29, 2004 | POLICY NUMBER | 16 652 083 |
| 'LAN | WHOLE LIFE - ADJUSTABLE | BASIC AMOUNT          $     150,000 | |
| | | ADJUSTABLE TERM                        0 | |
| IN.3.(0197) | PAGE 4 | TOTAL INSURANCE AMOUNT    150,000 | |

TABLE OF CASH VALUES
FOR $1.00 OF PAID-UP ADDITIONS

| END OF POLICY YEAR | MAY 29, | CASH VALUE | END OF POLICY YEAR | MAY 29, | CASH VALUE |
|---|---|---|---|---|---|
| 0 | 2004 | $ .25173 | 28 | 2032 | $ .57516 |
| 1 | 2005 | .26019 | 29 | 2033 | .58909 |
| 2 | 2006 | .26892 | 30 | 2034 | .60301 |
| 3 | 2007 | .27790 | 31 | 2035 | .61689 |
| 4 | 2008 | .28712 | 32 | 2036 | .63072 |
| 5 | 2009 | .29659 | 33 | 2037 | .64453 |
| 6 | 2010 | .30630 | 34 | 2038 | .65831 |
| 7 | 2011 | .31623 | 35 | 2039 | .67206 |
| 8 | 2012 | .32641 | 36 | 2040 | .68574 |
| 9 | 2013 | .33683 | 37 | 2041 | .69929 |
| 10 | 2014 | .34748 | 38 | 2042 | .71262 |
| 11 | 2015 | .35837 | 39 | 2043 | .72564 |
| 12 | 2016 | .36951 | 40 | 2044 | .73828 |
| 13 | 2017 | .38089 | 41 | 2045 | .75052 |
| 14 | 2018 | .39252 | 42 | 2046 | .76238 |
| 15 | 2019 | .40440 | 43 | 2047 | .77391 |
| 16 | 2020 | .41653 | 44 | 2048 | .78517 |
| 17 | 2021 | .42888 | 45 | 2049 | .79621 |
| 18 | 2022 | .44143 | 46 | 2050 | .80702 |
| 19 | 2023 | .45416 | 47 | 2051 | .81756 |
| 20 | 2024 | .46704 | 48 | 2052 | .82774 |
| 21 | 2025 | .48007 | 49 | 2053 | .83745 |
| 22 | 2026 | .49324 | 50 | 2054 | .84665 |
| 23 | 2027 | .50655 | 51 | 2055 | .85536 |
| 24 | 2028 | .52002 | 52 | 2056 | .86362 |
| 25 | 2029 | .53364 | 53 | 2057 | .87153 |
| 26 | 2030 | .54739 | 54 | 2058 | .87921 |
| 27 | 2031 | .56124 | 55 | 2059 | .88679 |

VALUES DURING A POLICY YEAR WILL REFLECT ANY PORTION OF THE YEAR'S PREMIUM PAID AND THE TIME ELAPSED IN THAT YEAR. THESE CASH VALUES ARE NOT GUARANTEED FOR INCREASES IN SCHEDULED ADDITIONAL PREMIUMS OR UNSCHEDULED ADDITIONAL PREMIUMS PAID AFTER THE FIRST 20 POLICY YEARS.

| INSURED | KENNETH WILSON | AGE AND SEX | 35 MALE |
|---|---|---|---|
| POLICY DATE | MAY 29, 2004 | POLICY NUMBER | 16 852 083 |
| PLAN | WHOLE LIFE - ADJUSTABLE. | BASIC AMOUNT | $ 150,000 |
| | | ADJUSTABLE TERM | 0 |
| | | TOTAL INSURANCE AMOUNT | 150,000 |

IN.3.(0197)                          PAGE 4B

# SECTION 1. THE CONTRACT

## 1.1 LIFE INSURANCE BENEFIT

The Northwestern Mutual Life Insurance Company will pay a benefit on the death of the Insured. Subject to the terms and conditions of the policy:

- payment of the death proceeds will be made after proof of the death of the Insured is received at the Home Office; and
- payment will be made to the beneficiary or other payee under Sections 10 and 11.

The amount of the death proceeds when all premiums due have been paid will be:

- the Basic Amount shown on page 3; plus
- the amount of Adjustable Term Protection then in force under Section 3; plus
- the amount of any paid-up additions in force under Section 6.3; plus
- the amount of any dividend accumulations (Section 5.2); plus
- the amount of any premium refund (Section 4.1) and any dividend at death (Section 5.3); less
- the amount of any policy debt (Section 8.3).

These amounts will be determined as of the date of death.

The amount of the death proceeds when the Insured dies during the grace period following the due date of an unpaid premium will be:

- the amount determined above assuming the overdue premium had been paid; less
- the amount of the unpaid premium.

The amount of the death proceeds when the Insured dies while the policy is in force as extended term or paid-up insurance will be determined under Sections 7.2 or 7.3.

## 1.2 ENTIRE CONTRACT; CHANGES

This policy with the attached application is the entire contract. Statements in the application are representations and not warranties. A change in the policy is valid only if it is approved by an officer of the Company. The Company may require that the policy be sent to it for endorsement to show a change. No agent has the authority to change the policy or to waive any of its terms.

## 1.3 INCONTESTABILITY

The Company will not contest insurance under this policy after the insurance has been in force during the lifetime of the Insured for two years from the Date of Issue. In issuing insurance, the Company relies on the application. While insurance is contestable, the Company, on the basis of a material misstatement in the application, may rescind the insurance or deny a claim.

## 1.4 SUICIDE

If the Insured dies by suicide within one year from the Date of Issue, the amount payable by the Company will be limited to the premiums paid, less the amount of any policy debt.

## 1.5 DATES

The contestable and suicide periods begin with the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3. The Date of Issue for any insurance issued under Increases Scheduled After Issue (Section 3.2), Unscheduled Increase of Adjustable Term Protection (Section 3.3), Additional Premiums Scheduled After Issue (Section 4.2), or Unscheduled Additional Premium Option (Section 4.3) will be shown on an amendment to the schedule of Benefits and Premiums.

## 1.6 MISSTATEMENT OF AGE OR SEX

If the age or sex of the Insured has been misstated, the amount payable will be the amount which the premiums paid would have purchased at the correct age and sex.

## 1.7 PAYMENT BY THE COMPANY

All payments by the Company under this policy are payable at its Home Office.

NN 3
New York

# SECTION 2. OWNERSHIP

## 2.1 THE OWNER

The Owner is named on page 3. The Owner, his successor or his transferee may exercise policy rights without the consent of any beneficiary. After the death of the Insured, policy rights may be exercised only as provided in Sections 10 and 11.

## 2.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will then take effect as of the date that it was signed. The Company may require that the policy be sent to it for endorsement to show the transfer.

## 2.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

The interest of any beneficiary will be subject to any collateral assignment made either before or after the beneficiary is named.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 2.2.

# SECTION 3. ADJUSTABLE TERM PROTECTION

## 3.1 ADJUSTABLE TERM PROTECTION

**Description.** Adjustable Term Protection consists of one year term insurance and paid-up additions. The amount of one year term insurance will be reduced by the amount of paid-up additions purchased under Section 6.2 by dividends or by the payment of additional premiums. One year term insurance will generally be in force for the entire policy year; however, as provided in Section 3.4, the one year term insurance may be terminated, or the amount of one year term insurance may be reduced during a policy year after the end of the guaranteed period.

**Amount.** The initial amount of Adjustable Term Protection is shown on page 3. The amount of Adjustable Term Protection may be increased as described in Sections 3.2 and 3.3. Decreases in Adjustable Term Protection are described in Section 3.4.

**Guaranteed Period.** The initial amount of Adjustable Term Protection is guaranteed for the period shown on page 3. Each time that the amount of Adjustable Term Protection is increased, the guaranteed period is redetermined under the schedule shown below. At the end of the guaranteed period, the Owner may extend the period by a written request received at the Home Office and the payment of a new minimum premium as determined by the Company.

| Insured's Age On Policy Anniversary When Guaranteed Period Is Determined | Guaranteed Period |
|---|---|
| up to 27 | 14 years |
| 27 to 28 | 13 years |
| 29 to 32 | 12 years |
| 33 to 40 | 11 years |
| 41 to 44 | 10 years |
| 45 to 48 | 9 years |
| 49 to 52 | 8 years |
| 53 to 56 | 7 years |
| 57 to 59 | 6 years |
| 60 to 62 | 5 years |
| 63 to 66 | 4 years |
| 67 to 69 | To age 70 |

If the guaranteed period is determined other than on a policy anniversary, the guaranteed period will be based on the Insured's age on the last policy anniversary.

If the Owner directs that dividends be used other than for the purchase of paid-up additions, the guaranteed period will be terminated and may not be renewed or extended, except as provided in Reduction If Dividend Option Changed in Section 3.4.

**Premium.** When the amount of Adjustable Term Protection is increased, the minimum premium for the policy will be redetermined. The new minimum premium will be payable for the remainder of the premium paying period. Any increased premium will be based on the Basic Amount, on the Insured's attained age and on the amount of one year term insurance that is part of the Adjustable Term Protection at the time of increase. When an increase takes effect during a policy year, the amount of the first premium due will be based on the time remaining in that year.

## 3.2 SCHEDULED INCREASES OF ADJUSTABLE TERM PROTECTION

**Inflation Protection Option.** If this option is in effect (as shown on page 3), the Total Insurance Amount will be indexed on each of the first twenty policy anniversaries to reflect increases in consumer price levels. Increases will not be made after the policy anniversary that is nearest to the Insured's 69th birthday. The Total Insurance Amount is the sum of the Basic Amount and the amount of Adjustable Term Protection then in force. The initial Total Insurance Amount is shown on page 3. When the Total Insurance Amount is indexed, the amount of Adjustable Term Protection will be increased so that it equals the difference between the Total Insurance Amount, as increased, and the Basic Amount.

An increase in the Total Insurance Amount will take effect as of a policy anniversary. The Amount for a policy year will be the Amount for the prior policy year multiplied by the Indexing Factor. The Indexing Factor is:

- the consumer price index for the current policy year; divided by
- the consumer price index for the prior policy year.

The maximum increase in Amount on any policy anniversary will be 8%. The Amount will not decrease as a result of a decrease in the consumer price index. If the Indexing Factor is less than one, a value of one will be used.

The "consumer price index for the current policy year" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the fourth month before the start of the current policy year. The "consumer price index for the prior policy year" is the CPI-U for the fourth month before the start of the prior policy year. The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found to serve the same purpose:

- by the Company; and
- the insurance supervisory official of the state in which this policy is delivered.

**Increases Scheduled At Issue.** This policy may have been issued with the amount of Adjustable Term Protection scheduled to increase in a specified amount on each policy anniversary. The amount of increase each year and the policy anniversaries on which increases take effect are shown on page 3.

**Increases Scheduled After Issue.** If the Inflation Protection Option is not in force on this policy, the Owner may request a scheduled series of increases of Adjustable Term Protection in a specified amount to be made in future policy years. Increases may be made for the balance of the first twenty policy years, but not after the policy anniversary that is nearest to the Insured's 69th birthday. Increases will be made only if, at the time the scheduled increases are applied for:

- the amount of each increase is not more than 10% of the Total Insurance Amount then in force;
- evidence of insurability is given that is satisfactory to the Company; and
- Company requirements place the Insured in an underwriting classification that is the same as, or is better than, the one for this policy.

The first increase will take effect on the Date of Issue shown on an amendment to the schedule of Benefits and Premiums. Later increases will take effect on the policy anniversaries that follow.

The Company may charge a fee for underwriting and issue expenses.

**Minimum Premium.** The minimum premium may increase when the amount of Adjustable Term Protection is increased. See Section 4.2.

**Terminating Right To Increases.** The right to increase coverage under Section 3.2 will terminate when:

- the Owner directs that dividends be used other than to purchase paid-up additions (except as provided in Section 3.4); or
- written notice of termination by the Owner is received at the Home Office.

### 3.3 UNSCHEDULED INCREASE OF ADJUSTABLE TERM PROTECTION

The Owner may request unscheduled increases of Adjustable Term Protection. Increases must be made after the policy anniversary that is nearest to the Insured's 69th birthday. An increase will be made only if, at the time the increase is applied for:

- any increase in premium and any fee charged for underwriting and issue expenses are paid to the Company;
- the insurance in force, as increased, will be within the Company's issue limits;
- evidence of insurability is given that is satisfactory to the Company; and
- Company requirements place the Insured in an underwriting classification that is the same as, or is better than, the one for this policy.

An increase will take effect the later of:

- the date of the request for the increase; or
- the date of the medical examination (or the non-medical application).

### 3.4 REDUCTION OF ADJUSTABLE TERM PROTECTION

**Reduction Of Adjustable Term Protection By Company; Owner's Right To Continue Existing Protection.** At the end of any policy month after the end of the guaranteed period, the Company may reduce any remaining term insurance that is part of Adjustable Term Protection. The Company may do this if, at the attained age of the Insured, the minimum premium is not large enough to pay for the Basic Amount and the amount of term insurance that would be part of Adjustable Term Protection. The Company will send written notice of the reduction.

The Owner may prevent a reduction that would occur on or before the policy anniversary nearest to the Insured's 69th birthday. This may be done by a written request to start a new guaranteed period and the payment of an increased minimum premium. The amount of the increased minimum premium will be determined under Section 4.2. The Owner's request and the premium must be received at the Home Office within 31 days of the date the reduction would take effect. The new guaranteed period will be determined under the schedule shown in Section 3.1

**Reduction If Dividend Option Changed.** If the Owner directs that dividends be used other than to purchase paid-up additions, the guaranteed period and any one year term insurance in force will terminate. The amount of Adjustable Term Protection will then be the amount of paid-up additions in force under Section 6.2. This restriction will not apply on a policy anniversary when the dividend is more than the scheduled premium (on an annual basis) and the Owner directs that dividends be used to pay premiums. The amount by which the dividend is more than the scheduled premium (on an annual basis) will be used to purchase paid-up additions under Section 6.2.

**Reduction If Additions Surrendered.** If additions under Section 6.2 are surrendered, the Adjustable Term Protection will be reduced by the amount of additions that are surrendered.

## SECTION 4. PREMIUMS AND REINSTATEMENT

### 4.1 PREMIUM PAYMENT

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A receipt signed by an officer of the Company will be furnished on request. A premium must be paid on or before its due date. The date when each premium is due and the number of years for which premiums are payable are described on page 3.

No premiums may be paid while the policy is in force as extended term or paid-up insurance under Sections 7.2 or 7.3, except as provided in Reinstatement (Section 4.4).

**Frequency.** Premiums may be paid every 3, 6 or 12 months at the published rates of the Company. A change in premium frequency will take effect when the Company accepts a premium on a new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The policy will be in full force during this period. If the Insured dies during the grace period, any overdue premium will be paid from the proceeds of the policy.

If the premium is not paid within the grace period, the policy will terminate as of the due date unless it continues as extended term or paid-up insurance under Sections 7.2 or 7.3.

**Premium Refund At Death.** The Company will refund a portion of a premium which was due and was paid for the policy year in which the Insured dies. The refund will be the amount by which the premium paid is more than that premium on an annual basis multiplied by the fraction of the policy year that has elapsed at the time of death. Any premium amount used to purchase a paid-up addition will not be included in determining the refund. The refund will be part of the policy proceeds.

### 4.2 AMOUNT OF PREMIUM; ADJUSTMENTS

**Scheduled And Minimum Premiums.** The premium due on this policy is the scheduled premium. The scheduled premium is the sum of the minimum premium, any scheduled additional premium under Section 4.2, and any premium that is due for any additional benefit that is a part of this policy. These premium amounts are shown on page 3.

The minimum premium may increase each time the amount of Adjustable Term Protection is increased or a new guaranteed period is determined. An increased minimum premium will be determined by adding a premium for the Basic Amount to a premium for the

amount of one year term insurance that is in force as part of Adjustable Term Protection as of the date used to determine the increased minimum premium. The premium rates for term insurance are shown on page 4A. The minimum premium will not be changed after the policy anniversary that is nearest to the Insured's 69th birthday.

The Owner may decrease the minimum premium to an amount not less than the sum of the premium for the Basic Amount and the premium for the amount of one year term insurance that is in force as part of Adjustable Term Protection. The decrease will take effect on the first policy anniversary that follows the receipt at the Home Office of the Owner's written request and any required fee.

**Additional Premiums Scheduled At Issue.** If requested on the application, this policy may have been issued with premiums that are larger than the minimum premium. These additional premiums may be level or may be scheduled to increase on each policy anniversary. The level amount, or the amount of increase each year, is shown on page 3. Annual increases may be made for the first 20 policy years, but not after the policy anniversary that is nearest to the Insured's 69th birthday.

**Additional Premiums Scheduled After Issue.** The Owner may pay additional premiums by requesting that the level premium payable on the policy be increased or that premiums increase on each policy anniversary by a specified amount. An increase in the level amount may be made at any time before the policy anniversary that is nearest to the Insured's 75th birthday. Annual increases may be made for the balance of the first 20 policy years, but not after the policy anniversary that is nearest to the Insured's 69th birthday. Additional premiums may be scheduled only if, at the time the increases are applied for:

- evidence of insurability is given that is satisfactory to the Company;
- Company requirements place the Insured in an underwriting classification that is the same as, or is better than, the one for this policy.
- the insurance in force after applying the scheduled additional premiums will be within the Company's issue limits; and
- the total amount of the scheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of the Insured is within the Company's limits for such premiums however, the Company may not set a limit below $1,000.

**Owner's Right To Decrease Scheduled Additional Premiums.** The Owner may decrease the level additional premium amount or the amount of annual increase in the additional premium. This may be done at any time by written request sent to the Home Office. Later increases in the level amount or in the amount of annual increase may be made only as provided in the preceding paragraph.

**Effective Date.** A premium change will take effect on the first premium due date that follows the receipt at the Home Office of the Owner's written request for change. When the Owner increases or decreases premiums, the Company will send an amendment to the schedule of Benefits and Premiums.

**Additional Premiums Used To Purchase Paid-Up Additions.** Each scheduled additional premium paid will be used, as of the due date of the premium, to purchase a paid-up addition as described in Section 6.

### 4.3 UNSCHEDULED ADDITIONAL PREMIUM OPTION

Unscheduled additional premiums may be paid to the Company at any time before the policy anniversary that is nearest to the Insured's 75th birthday. An unscheduled additional premium may be paid only if, at the time the premium is paid:

- evidence of insurability is given that is satisfactory to the Company;

- Company requirements place the Insured in an underwriting classification that is the same as, or is better than, the one for this policy;

- the insurance in force after applying the unscheduled additional premium will be within the Company's issue limits; and

- the total amount of the unscheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of the Insured is within the Company's limits for such premiums, however, the Company may not set a limit below $1,000.

Each unscheduled premium may not be less than $1,000. Each unscheduled premium will be used, as of the date the premium is paid, to purchase a paid-up addition as described in Section 6.

### 4.4 REINSTATEMENT

The policy may be reinstated within five years after the due date of the overdue premium. All unpaid minimum premiums and premiums for any additional benefits that are a part of this policy (and interest as required below) must be received by the Company while the Insured is alive. The policy may not be reinstated if the policy was surrendered for its cash surrender value. Any policy debt on the due date of the overdue premium, with interest at the policy loan interest rate from that date, must be repaid or reinstated.

In addition, for the policy to be reinstated more than 31 days after the end of the grace period:

- evidence of insurability must be given that is satisfactory to the Company; and

- all unpaid minimum premiums and premiums for any additional benefits that are a part of this policy must be paid with interest from the due date of each premium. Interest is at an annual effective rate of 6%.

# SECTION 5. DIVIDENDS

### 5.1 ANNUAL DIVIDENDS

This policy will share in the divisible surplus of the Company. This surplus is determined each year. The policy's share will be credited as a dividend on the policy anniversary. This dividend will reflect the mortality, expense and investment experience of the Company and will be affected by any policy debt during the policy year.

### 5.2 USE OF DIVIDENDS

Annual dividends may be paid in cash or used for one of the following:

- **Paid-up Additions.** Dividends will purchase paid-up additional insurance as described in Section 6.
- **Dividend Accumulations.** Dividends will accumulate at interest. Interest is credited at an annual effective rate of not less than 3 1/2%. The Company may set a higher rate. Dividend

accumulations increase the policy's cash value. They are payable as part of the policy proceeds. Accumulations may be withdrawn unless they are used for a loan, for extended term insurance, or for paid-up insurance.

- **Premium Payment.** Dividends will be used to reduce premiums. If the balance of a premium is not paid, or if this policy is in force as paid-up insurance, the dividend will purchase paid-up additions.

Other uses of dividends may be made available by the Company.

If no direction is given for the use of dividends, they will purchase paid-up additions.

### 5.3 DIVIDEND AT DEATH

A dividend for the period from the beginning of the policy year to the date of the Insured's death will be payable as part of the policy proceeds.

NN.3.(0187).Rein. Sec.                    9

# SECTION 6. PAID-UP ADDITIONS

## 6.1 PURCHASE OF ADDITIONS: CHARGES

Paid-up additions are purchased by additional premiums and by dividends. Paid-up additions can be used to reduce term insurance (Section 6.2) or to increase coverage (Section 6.3). Paid-up additions increase the policy's cash value and will share in the divisible surplus. They may be surrendered unless they are used for a loan, for extended term insurance, or for paid-up insurance.

The Company may deduct a charge for expenses from each additional premium that is to be used to purchase a paid-up addition. The charge will not be more than 8% for scheduled additional premiums that were scheduled at issue or that are applied for in the first 20 policy years. The charge will not be more than 8% for unscheduled additional premiums that are paid during the first 20 policy years.

## 6.2 ADDITIONS TO REDUCE TERM INSURANCE

This type of paid-up addition will be part of the Adjustable Term Protection. Each addition will reduce the amount of one year term insurance that is in force as part of Adjustable Term Protection, and the amount of Adjustable Term Protection will remain unchanged.

## 6.3 ADDITIONS TO INCREASE COVERAGE

This type of paid-up addition will be used to provide paid-up insurance that is not included in the Adjustable Term Protection. Each addition will immediately increase the death proceeds payable under Section 1.1.

## 6.4 ALLOCATION OF ADDITIONAL PREMIUMS AND DIVIDENDS

When there is no one year term insurance in force as part of the Adjustable Term Protection, the dividends and the additional premiums will be applied under Section 6.3. When there is one year term insurance in force, the additional premiums will be allocated, as shown on page 3, between Sections 6.2 and 6.3; and the dividends that are used to purchase paid-up additions will be applied under Section 6.2. However, the Owner may choose to allocate the eligible dividend between Sections 6.2 and 6.3. The eligible dividend will be determined by the Company. The Owner may change these allocations. This may be done by written request that is sent to the Home Office, if:

- evidence of insurability is given that is satisfactory to the Company; and
- Company requirements place the Insured in an underwriting classification that is the same as, or is better than, the one for this policy.

An allocation must be in whole percentages. The Owner may choose different allocations for additional premiums (See Sections 4.2 and 4.3) and the eligible dividend.

# SECTION 7. CASH VALUES, EXTENDED TERM INSURANCE AND PAID-UP INSURANCE

## 7.1 CASH VALUE

The cash value for this policy, when all premiums due have been paid, will be the sum of:

- the cash value from the Table of Guaranteed Values;
- the cash value of any paid-up additions; and
- the amount of any dividend accumulations.

If premiums are not paid on this policy on an annual basis, the cash value will reflect a reduction for any premiums due later in the policy year.

The cash value within three months after the due date of any unpaid premium will be the cash value on that due date reduced by any later surrender of paid-up additions and by any later withdrawal of dividend accumulations. After that, the cash value will be the cash value of the insurance then in force, including the cash value of any paid-up additions and any dividend accumulations.

The cash value of any extended term insurance, paid-up insurance or paid-up additions will be the net single premium for that insurance at the attained age of the Insured.

## 7.2 EXTENDED TERM INSURANCE

If any premium is unpaid at the end of the grace period, this policy will be in force as extended term insurance. The amount of the death proceeds under this term insurance will be:

- the Basic Amount shown on page 3; plus
- the amount of Adjustable Term Protection then in force under Section 3; plus
- the amount of any paid-up additions in force under Section 6.3; plus
- the amount of any dividend accumulations (Section 5.2); less
- the amount of any policy debt (Section 8.3).

These amounts will be determined as of the due date of the unpaid premium; however, if the due date of the premium is a policy anniversary, the amount of Adjustable Term Protection then in force will not include any increase under Section 3 that would have been made on the policy anniversary. The term insurance will start as of the due date of the unpaid premium. The period of term insurance will be determined by using the cash surrender value as a net single premium at the attained age of the Insured. If the term insurance would extend to or beyond age 100, paid-up insurance will be provided instead. Extended term insurance does not share in divisible surplus.

If the extended term insurance is surrendered within 31 days after a policy anniversary, the cash value will not be less than the cash value on that anniversary.

### 7.3 PAID-UP INSURANCE

Paid-up insurance may be selected in place of extended term insurance. A written request must be received at the Home Office no later than three months after the due date of an unpaid premium. The amount of insurance will be determined by using the cash value as a net single premium at the attained age of the Insured. Any policy debt will continue. Paid-up insurance will share in divisible surplus.

The amount of the death proceeds when this policy is in force as paid-up insurance will be:

- the amount of paid-up insurance determined above; plus

- the amount of any in force paid-up additions purchased by dividends after the policy has become paid-up insurance (Section 6); plus

- the amount of any existing dividend accumulations (Section 5.2); plus

- the amount of any dividend at death (Section 5.3); less

- the amount of any policy debt (Section 8.3).

These amounts will be determined as of the date of death.

If paid-up insurance is surrendered within 31 days after a policy anniversary, the cash value will not be less than the cash value on that anniversary reduced by any later surrender of paid-up additions and by any later withdrawal of dividend accumulations.

### 7.4 CASH SURRENDER

The Owner may surrender this policy for its cash surrender value. The cash surrender value is the cash value less any policy debt. A written surrender of all claims, satisfactory to the Company, will be required. The date of surrender will be the date of receipt at the Home Office of the written surrender. The policy will terminate and the cash surrender value will be determined as of the date of surrender. The Company may require that the policy be sent to it.

### 7.5 TABLE OF GUARANTEED VALUES

Cash values and paid-up insurance for the Basic Amount are shown on page 4 for the end of the policy years indicated. These values assume that all premiums due have been paid for the number of years stated. They do not reflect paid-up additions, dividend accumulations or policy debt. Cash values for paid-up additions are shown on page 4B. Values during a policy year will reflect any portion of the year's premium paid and the time elapsed in that year.

Values for policy years not shown are calculated on the same basis as those on page 4. A list of these values will be furnished on request. A detailed statement of the method of calculation of all values has been filed with the insurance supervisory official of the state in which this policy is delivered. The Company will furnish this statement at the request of the Owner. All values are at least as great as those required by that state.

### 7.6 BASIS OF VALUES

The cash value for each policy year not shown on page 4 and the net single premiums are based on the Commissioners 1980 Standard Ordinary Mortality Table for the sex of the Insured; except that for extended term insurance, the Commissioners 1980 Extended Term Insurance Table for the sex of the Insured is used for the first 20 policy years. Interest is based on an annual effective rate of 4%. Calculations assume the continuous payment of premiums and the immediate payment of claims.

For increases in coverage or premium that occur under Sections 3 or 4 after the twentieth policy year, the Company may base cash values and premiums on the interest rates and mortality tables being used as the basis of values of whole life insurance then being issued by the Company.

# SECTION 8. LOANS

## 8.1 POLICY AND PREMIUM LOANS

The Owner may obtain a loan from the Company in an amount that is not more than the loan value.

**Policy Loan.** The loan may be obtained on written request. No loan will be made if the policy is in force as extended term insurance. The Company may defer making the loan for up to six months unless the loan is to be used to pay premiums due the Company.

**Premium Loan.** If the premium loan provision is in effect on this policy, a loan will be made to pay an overdue scheduled premium. If the loan value is not large enough to pay the overdue scheduled premium, a scheduled premium will be paid for any other frequency permitted by this policy for which the loan value is large enough. If the loan value is not large enough to pay the overdue scheduled premium on any frequency permitted by this policy, the policy will continue in force or terminate as provided in Grace Period (Section 4.1). The Owner may elect or revoke the premium loan provision by written request received at the Home Office.

## 8.2 LOAN VALUE

The loan value is the smaller of a. or b., less any policy debt and any scheduled premium then due or billed; a. and b. are defined as:

a. the cash value one year after the date of the loan, assuming all scheduled premiums due within that year are paid, less interest to one year from the date of the loan.

b. the cash value on the due date of the first scheduled premium not yet billed that is due after the date of the loan, less interest from the date of the loan to that premium due date.

## 8.3 POLICY DEBT

Policy debt consists of all outstanding loans and accrued interest. It may be paid to the Company at any time. Policy debt affects dividends under Section 5.1. Any policy debt will be deducted from the policy proceeds.

If the policy debt equals or exceeds the cash value, this policy will terminate. Termination occurs 31 days after a notice has been mailed to the Owner and to any assignee on record at the Home Office.

## 8.4 LOAN INTEREST

Interest accrues and is payable on a daily basis from the date of the loan on policy loans and from the premium due date on premium loans. Unpaid interest is added to the loan.

The Specified Rate loan interest option or the Variable Rate loan interest option is elected on the application.

**Change To Variable Rate Loan Interest Option.** The Owner may request a change to the Variable Rate loan interest option at any time, with the change to take effect on the January 1st following receipt of a written request at the Company's Home Office.

**Change To Specified Rate Loan Interest Option.** The Owner may request a change to the Specified Rate loan interest option if the interest rate set by the Company under Section 8.6 for the year beginning on the next January 1st is less than 8%. The written request to change must be received at the Home Office between November 15th and the last business day of the calendar year; the change will take effect on the January 1st following receipt of the request at the Home Office.

## 8.5 SPECIFIED RATE LOAN INTEREST OPTION

Interest is payable at an annual effective rate of 8%.

## 8.6 VARIABLE RATE LOAN INTEREST OPTION

Interest is payable at an annual effective rate that is set by the Company annually and applied to new or outstanding policy debt during the year beginning each January 1st. The highest loan interest rate that may be set by the Company is the greater of 5% or a rate based on the Moody's Corporate Bond Yield Averages-Monthly Average Corporates for the immediately preceding October. This Average is published by Moody's Investor's Service, Inc. If it is no longer published, the highest loan rate will be based on some other similar average established by the insurance supervisory official of the state in which this policy is delivered.

The loan interest rate set by the Company will not exceed the maximum rate permitted by the laws of the state in which this policy is delivered. The loan interest rate may be increased only if the increase in the annual effective rate is at least 1/2%. The loan interest rate will be decreased if the decrease in the annual effective rate is at least 1/2%.

The Company will give notice:
- of the initial loan interest rate in effect at the time a policy or premium loan is made.
- of an increase in loan interest rate on outstanding policy debt no later than 30 days before the January 1st on which the increase takes effect.

This policy will not terminate during a policy year as the sole result of an increase in the loan interest rate during that policy year.

# SECTION 9. CHANGE OF POLICY

## 9.1 CHANGE OF PLAN

The Owner may reduce the amount of this policy, subject to the Company's minimum policy amount rules. The Owner also may change this policy to any permanent life insurance plan agreed to by the Owner and the Company by:

- paying the required costs; and

- meeting any other conditions set by the Company.

## 9.2 CHANGE OF INSURED

**Change.** The Owner may change the insured under this policy by:

- paying the required costs; and

- meeting any other conditions set by the Company, including the following:

  a. on the date of change, the new insured's age may not be more than 65;

  b. the new insured must have been born on or before the Policy Date of this policy;

c. the new insured must be insurable; and

d. the Owner must have an insurable interest in the life of the new insured.

**Date Of Change.** The date of change will be the later of:

- the date of the request to change; or

- the date of the medical examination (or the non-medical application).

**Terms Of Policy After Change.** The policy will cover the new insured starting on the date of change. When coverage on the new insured starts, coverage on the prior insured will terminate.

The contestable and suicide periods for the new insured start on the date of change.

The amount of insurance on the new insured will be set so that there will be no change in the cash value of the policy at the time of change. If the policy has no cash value, the amount will be set so that premiums do not change.

Any policy debt or assignment will continue after the change.

NN 3

13

# SECTION 10. BENEFICIARIES

## 10.1 DEFINITION OF BENEFICIARIES

The term "beneficiaries" as used in this policy includes direct beneficiaries, contingent beneficiaries and further payees.

## 10.2 NAMING AND CHANGE OF BENEFICIARIES

**By Owner.** The Owner may name and change the beneficiaries of death proceeds:

- while the Insured is living.
- during the first 60 days after the date of death of the Insured, if the Insured just before his death was not the Owner. No one may change this naming of a direct beneficiary during this 60 days.

**By Direct Beneficiary.** A direct beneficiary may name and change the contingent beneficiaries and further payees of his share of the proceeds:

- if the direct beneficiary is the Owner;
- if, at any time after the death of the Insured, no contingent beneficiary or further payee of that share is living; or
- if, after the death of the Insured, the direct beneficiary elects a payment plan. The interest of any other beneficiary in the share of that direct beneficiary will end.

These direct beneficiary rights are subject to the Owner's rights during the 60 days after the date of death of the Insured.

**By Spouse (Marital Deduction Provision).**

- **Power To Appoint.** The spouse of the Insured will have the power alone and in all events to appoint all amounts payable to the spouse under the policy if:

  a. the Insured just before his death was the Owner; and

  b. the spouse is a direct beneficiary; and

  c. the spouse survives the Insured.

- **To Whom Spouse Can Appoint.** Under this power, the spouse can appoint:

  a. to the estate of the spouse; or

  b. to any other persons as contingent beneficiaries and further payees.

- **Effect Of Exercise.** As to the amounts appointed, the exercise of this power will:

  a. revoke any other designation of beneficiaries;

  b. revoke any election of payment plan as it applies to them; and

  c. cause any provision to the contrary in Section 10 or 11 of this policy to be of no effect.

**Effective Date.** A naming or change of a beneficiary will be made on receipt at the Home Office of a written request that is acceptable to the Company. The request will then take effect as of the date that it was signed. The Company is not responsible for any payment or other action that is taken by it before the receipt of the request. The Company may require that the policy be sent to it to be endorsed to show the naming or change.

## 10.3 SUCCESSION IN INTEREST OF BENEFICIARIES

**Direct Beneficiaries.** The proceeds of this policy will be payable in equal shares to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before he receives all or part of his full share, the unpaid part of his share will be payable in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** At the death of all of the direct beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be payable in equal shares to the contingent beneficiaries who survive and receive payment. If a contingent beneficiary dies before he receives all or part of his full share, the unpaid part of his share will be payable in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** At the death of all of the direct and contingent beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or
- if no further payees survive and receive payment, to the estate of the last to die of all of the direct and contingent beneficiaries.

**Owner Or His Estate.** If no beneficiaries are alive when the Insured dies, the proceeds will be paid to the Owner or to his estate.

## 10.4 GENERAL

**Transfer Of Ownership.** A transfer of ownership of itself will not change the interest of a beneficiary.

**Claims Of Creditors.** So far as allowed by law, no amount payable under this policy will be subject to the claims of creditors of a beneficiary.

**Succession Under Payment Plans.** A direct or contingent beneficiary who succeeds to an interest in a payment plan will continue under the terms of the plan.

# SECTION 11. PAYMENT OF POLICY BENEFITS

## 11.1 PAYMENT OF PROCEEDS

Death proceeds will be paid under the payment plan that takes effect on the date of death of the Insured. The Interest Income Plan (Option A) will be in effect if no payment plan has been elected. Interest will accumulate from the date of death until a payment plan is elected or the proceeds are withdrawn in cash.

Surrender proceeds will be the cash surrender value as of the date of surrender. These proceeds will be paid in cash or under a payment plan that is elected. The Company may defer paying the surrender proceeds for up to six months from the date of surrender. If payment is deferred for more than 10 working days, interest will be paid on the surrender proceeds in accordance with New York law.

## 11.2 PAYMENT PLANS

**Interest Income Plan (Option A).** The proceeds will earn interest which may be received each month or accumulated. The first payment is due one month after the date on which the plan takes effect. Interest that has accumulated may be withdrawn at any time. Part or all of the proceeds may be withdrawn at any time.

**Installment Income Plans.** Payments will be made each month on the terms of the plan that is elected. The first payment is due on the date that the plan takes effect.

- **Specified Period (Option B).** The proceeds with interest will be paid over a period of from one to 30 years. The present value of any unpaid installments may be withdrawn at any time.
- **Specified Amount (Option D).** Payments of not less than $10.00 per $1,000 of proceeds will be made until all of the proceeds with interest have been paid. The balance may be withdrawn at any time.

**Life Income Plans.** Payments will be made each month on the terms of the plan that is elected. The first payment is due on the date that the plan takes effect. Proof of the date of birth, acceptable to the Company, must be furnished for each person on whose life the payments are based.

- **Single Life Income (Option C).** Payments will be made for a chosen period and, after that, for the life of the person on whose life the payments are based. The choices for the period are:

  a. zero years;

  b. 10 years;

  c. 20 years; or

  d. a refund period which continues until the sum of the payments that have been made is equal to the proceeds that were placed under the plan.

- **Joint And Survivor Life Income (Option E).** Payments are based on the lives of two persons. Level payments will be made for a period of 10 years and, after that, for as long as one or both of the persons are living.
- **Other Selections.** The Company may offer other selections under the Life Income Plans.
- **Withdrawal.** The present value of any unpaid payments that are to be made for the chosen period (Option C) or the 10 year period (Option E) may be withdrawn only after the death of all of the persons on whose lives the payments are based.
- **Limitations.** A direct or contingent beneficiary who is a natural person may be paid under a Life Income Plan only if the payments depend on his life. A corporation may be paid under a Life Income Plan only if the payments depend on the life of the Insured or, after the death of the Insured, on the life of his spouse or his dependent.

**Payment Frequency.** On request, payments will be made once every 3, 6 or 12 months instead of each month.

**Transfer Between Payment Plans.** A beneficiary who is receiving payment under a plan which includes the right to withdraw may transfer the amount withdrawable to any other plan that is available.

**Minimum Payment.** The Company may limit the election of a payment plan to one that results in payments of at least $50.

If payments under a payment plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the payment plan.

## 11.3 PAYMENT PLAN RATES

**Interest Income And Installment Income Plans.** Proceeds will earn interest at rates declared each year by the Company. None of these rates will be less than an annual effective rate of 2%. Interest of more than 2% will increase the amount of the payments or, for the Specified Amount Plan (Option D), increase the number of payments. The present value of any unpaid installments will be based on the 2% rate of interest.

The Company may offer guaranteed rates of interest higher than 2% with conditions on withdrawal.

**Life Income Plans.** Payments will be based on rates declared by the Company. These rates will provide at least as much income as would the Company's rates, on the date that the payment plan takes effect, for a single premium immediate annuity contract, with no charge for issue expenses. Payments under these rates will not be less than the amounts that are described in Minimum Payment Rates.

**Minimum Payment Rates.** The minimum payment rates for the Installment Income Plans (Options B and D) and the Life Income Plans (Options C and E) are shown in the Minimum Payment Rate Tables.

The Life Income Plan payment rates in those tables depend on the sex and the adjusted age of each person on whose life the payments are based. The adjusted age is:

- the age on the birthday that is nearest to the date on which the payment plan takes effect; plus

- the age adjustment shown below for the number of policy years that have elapsed from the Policy Date to the date that the payment plan takes effect. A part of a policy year is counted as a full year.

| POLICY YEARS ELAPSED | AGE ADJUSTMENT | POLICY YEARS ELAPSED | AGE ADJUSTMENT |
|---|---|---|---|
| 1 to 8 | 0 | 33 to 40 | -4 |
| 9 to 16 | -1 | 41 to 48 | -5 |
| 17 to 24 | -2 | 49 or more | -6 |
| 25 to 32 | -3 | | |

## 11.4 EFFECTIVE DATE FOR PAYMENT PLAN

A payment plan that is elected will take effect on the date of death of the Insured if:

- the plan is elected by the Owner; and

- the election is received at the Home Office while the Insured is living.

In all other cases, a payment plan that is elected will take effect:

- on the date the election is received at the Home Office; or

- on a later date, if requested.

## 11.5 PAYMENT PLAN ELECTIONS

**For Death Proceeds By Owner.** The Owner may elect payment plans for death proceeds:

- while the Insured is living.

- during the first 60 days after the date of death of the Insured, if the Insured just before his death was not the Owner. No one may change this election made during those 60 days.

**For Death Proceeds By Direct Or Contingent Beneficiary.** A direct or contingent beneficiary may elect payment plans for death proceeds payable to him if no payment plan that has been elected is in effect. This right is subject to the Owner's rights during the 60 days after the date of death of the Insured.

**For Surrender Proceeds.** The Owner may elect payment plans for surrender proceeds. The Owner will be the direct beneficiary.

## 11.6 INCREASE OF MONTHLY INCOME

A direct beneficiary who is to receive proceeds under a payment plan may increase the amount of the monthly payments. This is done by the payment of an annuity premium to the Company at the time the payment plan elected under Section 11.5 takes effect. The amount that will be applied under the payment plan will be the net premium. The net premium is the annuity premium less a charge of not more than 2% and less any premium tax. The net premium will be applied under the same payment plan and at the same rates as the proceeds. The Company may limit this net premium to an amount that is equal to the direct beneficiary's share of the proceeds payable under this policy.

## MINIMUM PAYMENT RATE TABLES
### Minimum Monthly Income Payments Per $1,000 Proceeds

**INSTALLMENT INCOME PLANS (OPTIONS B AND D)**

| PERIOD (YEARS) | MONTHLY PAYMENT | PERIOD (YEARS) | MONTHLY PAYMENT | PERIOD (YEARS) | MONTHLY PAYMENT |
|---|---|---|---|---|---|
| 1 | $ 84.09 | 11 | $ 8.42 | 21 | $ 4.85 |
| 2 | 42.46 | 12 | 7.80 | 22 | 4.67 |
| 3 | 28.59 | 13 | 7.26 | 23 | 4.51 |
| 4 | 21.65 | 14 | 6.81 | 24 | 4.36 |
| 5 | 17.49 | 15 | 6.42 | 25 | 4.22 |
| 6 | 14.72 | 16 | 6.07 | 26 | 4.10 |
| 7 | 12.74 | 17 | 5.77 | 27 | 3.98 |
| 8 | 11.25 | 18 | 5.50 | 28 | 3.87 |
| 9 | 10.10 | 19 | 5.26 | 29 | 3.77 |
| 10 | 9.18 | 20 | 5.04 | 30 | 3.68 |

# MINIMUM PAYMENT RATE TABLES

### Minimum Monthly Income Payments Per $1,000 Proceeds

**LIFE INCOME PLAN (OPTION C)**

| | SINGLE LIFE MONTHLY PAYMENTS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | | FEMALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | |
| | ZERO | 10 | 20 | REFUND | | ZERO | 10 | 20 | REFUND |
| 55 | $ 4.48 | $ 4.43 | $ 4.28 | $ 4.29 | 55 | $ 4.09 | $ 4.07 | $ 4.00 | $ 3.99 |
| 56 | 4.56 | 4.50 | 4.34 | 4.36 | 56 | 4.15 | 4.13 | 4.05 | 4.05 |
| 57 | 4.65 | 4.59 | 4.40 | 4.43 | 57 | 4.22 | 4.20 | 4.11 | 4.11 |
| 58 | 4.75 | 4.68 | 4.46 | 4.50 | 58 | 4.30 | 4.27 | 4.17 | 4.17 |
| 59 | 4.85 | 4.77 | 4.52 | 4.58 | 59 | 4.38 | 4.34 | 4.23 | 4.24 |
| 60 | 4.96 | 4.87 | 4.59 | 4.66 | 60 | 4.46 | 4.42 | 4.29 | 4.30 |
| 61 | 5.07 | 4.97 | 4.66 | 4.75 | 61 | 4.55 | 4.50 | 4.36 | 4.38 |
| 62 | 5.20 | 5.08 | 4.72 | 4.84 | 62 | 4.65 | 4.59 | 4.43 | 4.46 |
| 63 | 5.33 | 5.19 | 4.79 | 4.94 | 63 | 4.75 | 4.69 | 4.50 | 4.54 |
| 64 | 5.48 | 5.32 | 4.86 | 5.04 | 64 | 4.86 | 4.79 | 4.57 | 4.62 |
| 65 | 5.63 | 5.44 | 4.92 | 5.15 | 65 | 4.97 | 4.89 | 4.64 | 4.71 |
| 66 | 5.80 | 5.58 | 4.99 | 5.26 | 66 | 5.10 | 5.01 | 4.71 | 4.81 |
| 67 | 5.97 | 5.72 | 5.05 | 5.38 | 67 | 5.23 | 5.12 | 4.79 | 4.91 |
| 68 | 6.16 | 5.86 | 5.12 | 5.51 | 68 | 5.38 | 5.25 | 4.86 | 5.02 |
| 69 | 6.36 | 6.01 | 5.18 | 5.64 | 69 | 5.53 | 5.39 | 4.93 | 5.14 |
| 70 | 6.58 | 6.17 | 5.23 | 5.78 | 70 | 5.70 | 5.53 | 5.01 | 5.26 |
| 71 | 6.81 | 6.33 | 5.29 | 5.93 | 71 | 5.88 | 5.68 | 5.08 | 5.39 |
| 72 | 7.05 | 6.49 | 5.34 | 6.08 | 72 | 6.08 | 5.83 | 5.15 | 5.53 |
| 73 | 7.31 | 6.66 | 5.38 | 6.25 | 73 | 6.29 | 6.00 | 5.21 | 5.67 |
| 74 | 7.59 | 6.83 | 5.43 | 6.42 | 74 | 6.52 | 6.17 | 5.27 | 5.83 |
| 75 | 7.89 | 7.01 | 5.46 | 6.60 | 75 | 6.77 | 6.35 | 5.33 | 5.99 |
| 76 | 8.21 | 7.19 | 5.50 | 6.79 | 76 | 7.04 | 6.54 | 5.38 | 6.17 |
| 77 | 8.56 | 7.37 | 5.53 | 6.99 | 77 | 7.33 | 6.73 | 5.43 | 6.35 |
| 78 | 8.93 | 7.55 | 5.56 | 7.20 | 78 | 7.65 | 6.93 | 5.47 | 6.55 |
| 79 | 9.32 | 7.72 | 5.58 | 7.42 | 79 | 7.99 | 7.13 | 5.51 | 6.76 |
| 80 | 9.75 | 7.90 | 5.60 | 7.66 | 80 | 8.36 | 7.34 | 5.54 | 6.98 |
| 81 | 10.20 | 8.07 | 5.62 | 7.90 | 81 | 8.76 | 7.54 | 5.57 | 7.21 |
| 82 | 10.69 | 8.23 | 5.63 | 8.16 | 82 | 9.20 | 7.74 | 5.59 | 7.46 |
| 83 | 11.21 | 8.39 | 5.64 | 8.43 | 83 | 9.67 | 7.93 | 5.61 | 7.72 |
| 84 | 11.76 | 8.54 | 5.65 | 8.71 | 84 | 10.18 | 8.12 | 5.63 | 7.99 |
| 85 and over | 12.35 | 8.68 | 5.66 | 9.01 | 85 and over | 10.74 | 8.30 | 5.64 | 8.28 |

**LIFE INCOME PLAN (OPTION E)**

| | JOINT AND SURVIVOR MONTHLY PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | FEMALE ADJUSTED AGE* | | | | | | |
| | 55 | 60 | 65 | 70 | 75 | 80 | 85 and over |
| 55 | $ 3.79 | $ 3.93 | $ 4.07 | $ 4.19 | $ 4.29 | $ 4.35 | $ 4.39 |
| 60 | 3.87 | 4.07 | 4.27 | 4.46 | 4.61 | 4.73 | 4.80 |
| 65 | 3.94 | 4.18 | 4.45 | 4.73 | 4.98 | 5.19 | 5.32 |
| 70 | 3.99 | 4.27 | 4.61 | 4.99 | 5.37 | 5.70 | 5.94 |
| 75 | 4.02 | 4.34 | 4.73 | 5.20 | 5.72 | 6.21 | 6.60 |
| 80 | 4.05 | 4.38 | 4.81 | 5.35 | 6.00 | 6.67 | 7.24 |
| 85 and over | 4.06 | 4.40 | 4.86 | 5.45 | 6.18 | 7.00 | 7.75 |

*See Section 11.3.

# WAIVER OF PREMIUM BENEFIT

## 1. THE BENEFIT

**Disability Before Age 60.** If total disability of the Insured starts on or before the policy anniversary nearest his 60th birthday, the Company will waive all premiums that come due on the policy as long as the total disability continues.

**Disability After Age 60.** If total disability of the Insured starts after the policy anniversary nearest his 60th birthday, the Company will waive those premiums that come due on the policy as long as the total disability continues, but only to the policy anniversary that is nearest his 65th birthday.

**Premium Waived On An Annual Basis.** Even if premiums have been paid more often than every 12 months, a premium waived on a policy anniversary will be an annual premium.

**Refund Of Premium.** The Company will refund that portion of a premium paid which applies to a period beyond the policy month in which the total disability began.

**Premium For Benefit.** The premium for this Benefit is shown on page 3.

**Amount Of Premium Waived.** The amount of each premium waived by the Company under this Benefit will be the scheduled premium as described in Section 4.2 of this policy. The scheduled premium to be waived will include any increase in the minimum premium and extension of the guaranteed period which the Company determines necessary to maintain the Adjustable Term Protection.

## 2. TOTAL DISABILITY

**Definition Of Total Disability.** A total disability is one which prevents the Insured from engaging in an occupation. For the first 24 months of total disability, an occupation is the one that the Insured had at the time he became disabled. After 24 months, an occupation is one for which the Insured is qualified by education, training or experience. Due regard will be given to his vocation and earnings before he became disabled.

**Disabilities Covered By This Benefit.** Premiums are waived for total disability only if:

- the Insured becomes disabled while this Benefit is in force;

- the disability results from an accident or sickness; and

- the disability lasts for at least six months.

**Presumptive Total Disability.** Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight of both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The loss must occur while this Benefit is in force.

## 3. PROOF OF DISABILITY

Before any premium is waived, proof of total disability must be given to the Company:

- while the Insured is living; and
- while the Insured is totally disabled.

However, the claim will not be affected if the proof is given as soon as reasonably possible.

## 4. PROOF THAT DISABILITY HAS CONTINUED

Proof that the total disability has continued may be required once a year. If the proof is not given when it is required, no more premiums will be waived. The Company will not require proof that the disability continues beyond the policy anniversary that is nearest the 65th birthday of the Insured.

## 5. PAYMENT OF PREMIUM

A premium that comes due while the Insured is disabled, but before the Company has approved the claim, is payable and should be paid. A premium that is paid and later waived will be refunded. A premium that is not paid will be waived if the total disability began before the end of the grace period.

## 6. TERMINATION OF BENEFIT

This Benefit will terminate on the policy anniversary that is nearest the 65th birthday of the Insured, unless he has been totally disabled since the policy anniversary that is nearest his 60th birthday. It will terminate earlier.

- when the policy terminates.
- when the policy becomes extended term or paid-up insurance.
- when the Owner's written request is received at the Home Office.

*Robert J. Berdan*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

NN 3 WP
New York

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 E. WISCONSIN AVENUE, MILWAUKEE, WISCONSIN 53202

**LIFE INSURANCE APPLICATION**

**LIFE INSURANCE APPLICATION** — Page 1

16952105

| INSURED NAME (First, Middle Initial, Last) | POLICY NUMBER | |
|---|---|---|
| Kenneth Wilson | 16952093 | 326366 |

| ☐ Companion policies    ☐ Life & Disability Application | Plan Group Number |
|---|---|
| ☑ APB Option    ☐ Exam (NM, PME, MD) in Home Office | |

## INSURED

Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life, or disability insurance on the life of the insured?    ☐ Yes    ☐ No    If yes, the last policy number is _____

**A.**
☑ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other

**B.** ☑ MALE  ☐ FEMALE

**C.** BIRTHDATE (Month, Day, Year): 12/31/1968

**D.**
STATE OF BIRTH (or Foreign Country): NY

**E.** TAXPAYER IDENTIFICATION NUMBER: 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

**F.** PRIMARY RESIDENCE:
STREET OR PO BOX: 70 Brookside Place
CITY, STATE, ZIP (Country if other than U.S.A.): New Rochelle, NY 10801

## APPLICANT

Select ONLY ONE: ☑ Insured at Insured's Address  OR  ☐ Other (Complete A, B and C)

**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____    ☐ MALE  ☐ FEMALE

PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)

RELATIONSHIP TO INSURED: _____    BIRTHDATE: _____ MONTH  DAY  YEAR

**OR**
BUSINESS/TRUST NAME: _____
TYPE OF ORGANIZATION:  ☐ Trust  ☐ Corporation  ☐ Partnership  ☐ Other type of Business _____
AUTHORIZED COMPANY
REP/TRUSTEE NAME: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____

**C.** ADDRESS:    STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

## PREMIUM PAYER

Select ONLY ONE: ☑ ISA (Omit A through D below)    OR   ☐ Insured (Complete D only)    ☐ Applicant (Complete D only)
☐ Owner (Complete D only)    ☐ Other (Complete A, B, C and D)

**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____    ☐ MALE  ☐ FEMALE

PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)
BIRTHDATE: _____ MONTH  DAY  YEAR

**OR**
BUSINESS/TRUST NAME: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____    **C.** DAYTIME TELEPHONE NUMBER:
Area Code ( )

Send premium and other notices regarding this policy to:
**D.** ADDRESS: ☐ Insured's Address  ☐ Applicant's Address   OR
STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

## OWNER (CAUTION: A MINOR OWNER CANNOT EXERCISE POLICY RIGHTS.)

Select ONLY ONE: ☑ Insured (Complete C only)  ☐ Applicant (Complete C only)  ☐ Other (Complete A, B and C)  ☐ See attached supplement form

**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____    ☐ MALE  ☐ FEMALE

PERSONAL NAME: _____
FIRST, MIDDLE INITIAL, LAST
RELATIONSHIP TO INSURED: _____    BIRTHDATE: _____ MONTH  DAY  YEAR

**OR**
BUSINESS/TRUST NAME: _____
RELATIONSHIP TO INSURED: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____

**C.** ADDRESS: ☐ Insured's Address  ☐ Applicant's Address  ☐ Premium Payer's Address   OR
STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

90-1 E.I.(0496) NEW YORK (TIN)    90-0001-72 (0603)

LIFE INSURANCE APPLICATION
Page 2

**5.** RESERVED

**6. SUCCESSOR OWNER** – COMPLETE THIS SECTION ONLY IF THE OWNER IN QUESTION 4 IS THE APPLICANT AND A SUCCESSOR OWNER IS TO BE NAMED.
(CAUTION: A MINOR OWNER CANNOT EXERCISE POLICY RIGHTS.)
Select ONLY ONE:
☐ A. If the Applicant dies before the Insured, the Insured will be the Owner.
☐ B. If the Applicant dies before the Insured, the Owner will be:
NAME: _____    RELATIONSHIP TO THE INSURED _____
If both die before the Insured, the Insured will be the Owner.
☐ C. The Insured will become the Owner upon attaining the age of ____ years. If the Applicant dies before the Insured, the Owner will be:
NAME: _____    RELATIONSHIP TO THE INSURED _____
until the Insured attains such age. Upon the Insured attaining such age, or if both die before the Insured, the Insured will be the Owner.

**7. ADDITIONAL PURCHASE BENEFIT OPTION** – COMPLETE THIS SECTION IF EXERCISING AN APB OPTION (NOTE: SMOKING QUESTIONNAIRE MAY BE REQUIRED)
A. List the policy number(s) and purchase amount(s) for each option being exercised:
Policy 1  _____    Regular $ _____    Advance $ _____
Policy 2  _____    Regular $ _____    Advance $ _____
Policy 3  _____    Regular $ _____    Advance $ _____
B. If Advance Purchase, the event is:  ☐ Marriage  ☐ Birth of child  ☐ Adoption of child
NAME OF SPOUSE OR CHILD: _____
                                              FIRST              MIDDLE INITIAL              LAST
Date and place of marriage, birth or final decree of adoption: _____    _____
                                                                MONTH  DAY  YEAR      CITY      STATE
C. Is the amount applied for more than the additional purchase option amount available?  ☐ Yes ☐ No
If yes, what is the excess amount to be underwritten? $ _____

**8. SPECIAL DATE** – COMPLETE THIS SECTION ONLY IF A SPECIAL POLICY DATE IS BEING REQUESTED
A. PREPAID:
☐ Short Term — Policy Date will coincide with ISA Payment Date (For monthly ISA only)
☐ Short Term to: _____    ☐ Date to save age  ☐ Backdate to _____
                    MONTH  DAY  YEAR                                          MONTH  DAY  YEAR
B. NONPREPAID:
☐ Specified future date: _____    ☐ Date to save age  ☐ Backdate to _____
                          MONTH  DAY  YEAR                                          MONTH  DAY  YEAR

**9. POLICY APPLIED FOR**
☒ Term insurance Plan (Complete A and B).  OR  ☐ See attached supplement for plans other than term insurance
A. Plan and Amount
(1) PLAN: _____    (2) PLAN: 350,000 ↓ T
    AMOUNT: _____        AMOUNT: T 75
B. ADDITIONAL BENEFITS:
(1) ☒ Waiver of Premium                    (2) ☒ Waiver of Premium
    ☐ Accidental Death $ _____          ☐ Accidental Death $ _____
    ☐ Indexed Protection                        ☐ Indexed Protection
    ☐ Other _____                    ☐ Other _____

**10.** If an additional benefit cannot be approved, should the company issue a policy without the benefit?    ☒ Yes  ☐ No

Shall the Premium Loan provision, if available, become operative according to its terms?    ☒ Yes  ☐ No

ANNUAL DIVIDENDS until otherwise directed will:
Policy 1  Policy 2
☐        ☒        Reduce current premium
☒        ☐        Purchase paid-up additions - if the plan has Additional Protection or Adjustable Term Protection,
                  additions purchased by eligible dividends will be used to:
                  ☐ Reduce term insurance _____%  ☐ Increase Coverage _____%
☐        ☐        Accumulate at interest
☐        ☐        Be paid in cash
☐        ☐        Be used for a combination of options above - complete form 18-1364-01

**11.** POLICY LOAN INTEREST RATE OPTION: ☒ 8%  ☐ Variable Rate

**12.** PREMIUM FREQUENCY: ☒ Annually  ☐ Semiannually  ☐ Quarterly  ☐ Single

90-1 L.I. (0496)

**LIFE INSURANCE APPLICATION**
Page 3

| INSURED NAME (First, Middle Initial, Last) | POLICY NUMBER |
|---|---|
| | 326366 |

## BENEFICIARY

**A. DIRECT BENEFICIARY**    1. Michelle A. Wilson    First, Middle Initial, Last    Relationship to Insured

2. _____

3. _____

**BUSINESS ORGANIZATION** _____

OR TRUST _____

**B. CONTINGENT BENEFICIARY**    1. Estate of the Insured    First, Middle Initial, Last    Relationship to Insured

2. _____

3. _____

Box (1) or (2) may be selected to include all of the children or brothers and sisters without naming them, or to add to the contingent beneficiaries named. Box (3) may be selected to provide for the children of a deceased contingent beneficiary; use only if contingent beneficiaries are named and/or Box (1) or (2) is checked. NOTE: The word "children" includes child and any legally adopted child.

☐ (1) and all (other) children of the Insured.

☐ (2) and all (other) brothers and sisters of the insured born of the marriage of or legally adopted by _____ and _____ before the insured's death.

☐ (3) any amount that would have been paid to a deceased contingent beneficiary, if living, will be paid in one sum and in equal shares to the children of that contingent beneficiary who survive and receive payment.

**C. FURTHER PAYEES**    First, Middle Initial, Last    Relationship to Insured

**D. SEE ATTACHED SUPPLEMENT FORM (To be used in place of designations above.)**

TRUSTEE AS BENEFICIARY If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under a payment plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be as provided in the contract as though the trustee had not been named. The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

RESERVED

Has the premium for the policy applied for been given to the agent in exchange for the Conditional Life Insurance Agreement with the same number as this application?    ☒ Yes  ☐ No

A. Will the insurance applied for replace any Northwestern Mutual Life insurance (or annuities) on the Insured's life?    ☐ Yes  ☒ No
   If yes, agent should explain and send required papers.

B. Will the insurance applied for replace life insurance (or annuities) on the Insured's life from a source other than the Northwestern Mutual Life?    ☐ Yes  ☒ No
   If yes, agent should explain and send required papers.

C. Will the replacement result in a 1035 exchange?    ☐ Yes  ☒ No
   If yes, agent should explain and send required papers.

EXPLANATION:

19.    RESERVED

90-1 L.I. (0496)

## PERSONAL HISTORY QUESTIONNAIRE

☐ Payor Benefit for Applicant (Payor) _____
FIRST                    MIDDLE INITIAL                    LAST

Payor's Date of Birth _____  Policy Number _____  Relationship to Insured _____
MONTH    DAY    YEAR

**30** Has the insured ever had life, disability or health insurance declined, rated, modified, issued with an exclusion rider, cancelled, or not renewed? If yes, explain in ADDITIONAL REMARKS.      ☐ Yes  ☒ No

**31** When was the insured's last examination or application for life, disability or accidental death insurance?
Month _____ Year 2002 Company William Penn _____  OR  ☐ None

**22** Indicate below whether any other life insurance on the insured is Individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C) or ☐ NONE.

| Company Name | Ind or Grp | In Force Amount | Pending Amount | Contemplated Amount | Accidental Death Amount |
|---|---|---|---|---|---|
| William Penn | | 1,000,000 | | | |
| William Penn | | 500,000 | | | |

**23** Insured's Marital Status:  ☐ Single, Widowed or Divorced  ☒ Married

**24** A. Insured is a citizen of:  ☒ U.S.A.  ☐ Other
If other: Type of Visa _____  Visa Number _____
B. How many years has the insured resided in the U.S.A. immediately prior to completing this application? 35 years

**25** Does the insured regularly travel outside the U.S.A. or have plans to leave the U.S.A. for travel or residence?      ☐ Yes  ☒ No
If yes, explain in the chart below.

| Destination (List all Cities and Countries) | Number of Trips Last 12 Months | Next 12 Months | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**26** A. What is the insured's occupation(s)? Bank Officer
What are the insured's duties? Product Manager
B. Employer's Name: J. P. Morgan Chase
Address: 1 CMP
City, State, Zip Code: NY NY 10081
C. How long has the insured been employed? 11 yrs. years (If less than 2 years, explain in ADDITIONAL REMARKS)

**QUESTIONS 27 THROUGH 30 ARE NOT REQUIRED IF THE INSURED IS UNDER AGE 16.**

**27** Is the insured a member of, or does the insured plan on joining any branch of, the Armed Forces or reserve military unit? If yes, complete the Military Section.      ☐ Yes  ☒ No

**28** Except as a passenger on a regularly scheduled flight, has the insured flown within the past 2 years, or does the insured have plans to fly in the future? If yes, complete the Aviation Section.      ☐ Yes  ☒ No

**29** In the past 2 years, has the insured participated in or does the insured have plans to participate in: racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, or rodeos? If yes, complete the Avocation Section.      ☐ Yes  ☒ No

**30** A. What is the insured's automobile driver's license number? # 707 208 268  State NY
or, ☐ the insured has no driver's license.
B. In the past 5 years, has the insured been in a motor vehicle accident, has the insured been convicted of a moving violation of any motor vehicle law, or has the insured's driver's license been restricted, suspended or revoked?      ☐ Yes  ☒ No
If yes, complete the chart below.

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## ADDITIONAL REMARKS

90-1 L.I. (0496) NEW YORK

LIFE INSURANCE APPLICATION
Page 5

| INSURED NAME (First, Middle Initial, Last) | POLICY NUMBER |
|---|---|
| | 326366 |

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid, if: the Insured is living at the time; and the answers and statements in the application are then true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Life Insurance Agreement with the same number as this application.

(3) If the policy is issued in an extra premium class, acceptance of the policy will amend it so that extended term insurance can be in force only if: the Company gives its consent; or the loan value is not large enough to grant a premium loan. If a premium is not paid within the grace period and extended term insurance cannot be in force, paid-up insurance will be selected.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

### INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize The Northwestern Mutual Life Insurance Company, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information ... application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental healt ... ; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristic ... surance. This authorization extends to information on the use of alcohol, drugs and tobacco; the diagnosis or treatme ... transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it ex ... .o ...rmation required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to The Northwestern Mutual Life Insurance Company or its representatives on receipt of this authorization. The Northwestern Mutual Life Insurance Company or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize The Northwestern Mutual Life Insurance Company to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 30 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

The Owner of the policy applied for herein certifies, under penalties of perjury, (1) that the Taxpayer Identification Number given for the Owner on the first page of this application is the Owner's correct Taxpayer Identification Number (or the Owner is waiting for a number to be issued) and (2) that the Owner is not subject to backup withholding either because the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the Owner that the Owner is no longer subject to backup withholding, and (3) that the Owner is a U.S. person (includes U.S. citizen, resident alien, and others as defined by the IRS). (See Taxpayer Identification Number instructions.)

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

The signatures below apply to the authorization, the application and the certification of Taxpayer Identification Number.

| | |
|---|---|
| Signature of INSURED (If other than Applicant and 15 years of age or over) Print name of insured if under age 15. | _Kenneth E. Shiben_ <br> Signature of APPLICANT |
| Signature of PARENT OR GUARDIAN (If other than Applicant and Insured is a minor) | _N Y, N Y_ <br> Signed by Applicant at CITY, COUNTY, STATE |
| Signature of OWNER (If other than Applicant or Insured) | DATE Signed by Applicant _05 22 20 4_ <br> MONTH   DAY |
| _David Stein_ <br> Signature of LICENSED AGENT | |

90-1 L.I. (0496) NEW YORK

027458

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 E. WISCONSIN AVENUE, MILWAUKEE, WISCONSIN 53202

## PARAMEDICAL QUESTIONNAIRE

INSURED NAME (First, Middle Initial, Last)  Kenneth  Wilson

Each question must be individually asked and answered. Give details of "Yes" answers below:

| | YES | NO | |
|---|---|---|---|
| **31.** Have you used tobacco or nicotine in any form in the last 10 years? If 'Yes', indicate type and date last used: ☐ Cigarette, pipe, snuff, chewing tobacco, nicotine gum, nicotine patch or other form of nicotine . . . . . . . . . . Date last used __/__/__  ☐ Cigar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date last used __/__/__  Frequency of cigar use . . . . . . . . . . . . . . . . . . . No. per year ___ | ☐ | ☑ | For all "Yes" responses: • Identify question numbers. • State signs, symptoms and diagnosis of each illness or injury. • List the details and results of any treatment. • For each health care provider consulted, list the name, full address, telephone number and dates. **DETAILS** |

| | YES | NO |
|---|---|---|
| **32.** Are you taking medication or drugs (legal or illegal, prescription or nonprescription) for any reason? If yes, list and explain. | ☐ | ☑ |

**33.** In the last 10 years, have you been told you had or been treated for:

| | YES | NO |
|---|---|---|
| a. Disorder of eyes (including double vision), ears, nose, mouth, throat or speech? | ☐ | ☑ |
| b. Dizziness, loss of balance, headaches, seizures or convulsions, muscle weakness, tremor, paralysis, stroke, memory loss, or any disease of the brain or nervous system? | ☐ | ☑ |
| c. Anxiety, depression, stress, or any psychological or emotional condition or disorder? | ☐ | ☑ |
| d. Persistent shortness of breath, hoarseness, cough, coughing up blood, asthma, emphysema, tuberculosis, or any lung or respiratory disorder? | ☐ | ☑ |
| e. Jaundice, hepatitis, intestinal bleeding, ulcer, hernia, colitis, diverticulitis, recurrent indigestion, or any disorder of the stomach, intestines, liver, gall bladder or pancreas? | ☐ | ☑ |
| f. High blood pressure, chest pain, chest discomfort, chest tightness, irregular heart beat, heart murmur, heart attack or any disorder of the heart or blood vessels? | ☐ | ☑ |
| g. Sugar, albumin, blood or pus in the urine, sexually transmitted or venereal disease, or any disorder of the kidney, bladder, prostate or reproductive organs? | ☐ | ☑ |
| h. Diabetes, thyroid or any glandular (endocrine) disorder? | ☐ | ☑ |
| i. Cancer, tumor, polyp, or disorder of the lymph gland(s) or breast(s)? | ☐ | ☑ |
| j. Anemia, bleeding tendency, or any disorder of the blood? | ☐ | ☑ |
| k. Arthritis, sciatica, gout, or any disorder of the muscles, bones, joints, spine, back or neck? | ☐ | ☑ |
| l. Chronic or unexplained fatigue, fever, or illness? | ☐ | ☑ |
| m. Any allergies? | ☐ | ☑ |
| n. Any disorders of the skin? | ☐ | ☑ |
| o. Deformity, lameness or amputation? | ☐ | ☑ |

**34.** | | YES | NO |
|---|---|---|
| a. Have you sought or received counseling or treatment for the use of alcohol or drugs or had any symptoms of alcohol abuse or drug addiction? | ☐ | ☑ |
| b. In the last 10 years, have you used marijuana, cocaine, heroin, amphetamines or hallucinogens? | ☐ | ☑ |
| c. In the last 10 years, have you used any tranquilizers, sedatives or narcotic drugs? | ☐ | ☑ |
| d. In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician or medical practitioner? | ☐ | ☑ |

| | YES | NO |
|---|---|---|
| **35.** Are you pregnant? If yes, due date: _____ No | ☐ | ☐ |

DOC. REC'D  AS 13

027458

INSURED NAME (First, Middle Initial, Last)    Kenneth Wilson

Each question must be individually asked and answered. Give details of "Yes" answers below:

|  | | YES | NO |
|---|---|---|---|
| **36.** Other than as previously stated on this application, in the last five years have you: | | | |
| a. Consulted any other health care providers (medical doctor, psychiatrist, psychologist, chiropractor, counselor, therapist or other)? | | ☐ | ☑ |
| b. Been a patient in a hospital, clinic or medical facility? | | ☐ | ☑ |
| c. Had any diagnostic studies (EKG, x-ray, blood tests or any other, except for an HIV test)? | | ☐ | ☑ |
| d. Had surgery? | | ☐ | ☑ |
| e. Been advised to have any test, consultation, hospitalization, or surgery which was not completed? | | ☐ | ☑ |

For all "Yes" responses:
• Identify question numbers.
• State signs, symptoms and diagnosis of each illness or injury.
• List the details and results of any treatment.
• For each health care provider consulted, list the name, full address, telephone number and dates.

**DETAILS**

|  | | YES | NO |
|---|---|---|---|
| **37.** a. During the last 6 months have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury? | | ☐ | ☑ |
| b. Have you ever requested or received payments, benefits, or a pension because of any injury, accident, sickness or disability? | | ☐ | ☑ |

|  | | YES | NO |
|---|---|---|---|
| **38.** a. Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide, or any hereditary disease? | | ☐ | ☑ |

b. Family History:

| | Age If Living | Medical History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 70 | | |
| Mother | 63 | } pvd | |
| Brothers or Sisters | 35 | | |

DOC. REC'D AS IS

|  | | YES | NO |
|---|---|---|---|
| **39.** Have you lost weight in the past 6 months? | | ☐ | ☑ |
| If yes, loss was _____ lbs. | | | |
| Reason for weight loss _____ | | | |

**40.** (Do not complete for Disability Insurance)
If the Insured is under age 1, what was the weight at birth? _____ lbs. _____ ozs.

|  | | YES | NO |
|---|---|---|---|
| **41.** Have you ever been diagnosed as having or been treated for AIDS and/or ARC? | | ☐ | ☑ |

**42.** Who is your regular or personal physician, doctor or health care provider? ☐ None

Name: Dr Patal , Sunil

Address: Greene Blvd.

City, State & Zip Code: Forest Hills N.Y. 11375

Date last seen: 2. 05    Phone number: (718 26 F 1750

Reason: Check up

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signed in my presence ▶ _____    ▶ _____
                                                              Signature of Insured (or Parent/Guardian)

_____
(DATE SIGNED/YY)    05/29 /2004

JUN. 1. 2004 11:23AM    NO. 067    P. 4

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
720 East Wisconsin Avenue, Milwaukee, WI 53202

## This Authorization complies with the HIPAA Privacy Rule

## Authorization for Release of Health-Related Information
## to The Northwestern Mutual Life Insurance Company

Kenneth Wilson                                    12/31/1968
Name of Patient/Proposed Insured (please print)        Date of Birth (MM/DD/YYYY)

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided payment, treatment or services to me or on my behalf within the past 10 years ("My Providers") to disclose my entire medical record to The Northwestern Mutual Life Insurance Company (Northwestern Mutual) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

By signing below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This protected health information is to be disclosed under this Authorization so that Northwestern Mutual may: 1) underwrite my application for coverage, make eligibility, risk rating, policy issuance and enrollment determinations; 2) obtain reinsurance; 3) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 4) administer coverage; and 5) conduct other legally permissible activities that relate to any coverage I have or have applied for with Northwestern Mutual.

This Authorization shall remain in force for 30 months following the date of my signature below, and a copy of this Authorization is as valid as the original. I understand that I have the right to revoke this Authorization in writing, at any time, by sending a written request for revocation to Northwestern Mutual at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, Attention: Vice President New Business. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Northwestern Mutual has a legal right to contest a claim under an insurance policy or to contest the policy itself. I understand that information disclosed to Northwestern Mutual pursuant to this Authorization is no longer covered by the HIPAA Privacy Rule, and that in the course of conducting its business, Northwestern Mutual may release information it has about me to affiliates, reinsurers, and any person performing business or legal service for Northwestern Mutual and as permitted or required by law.

I understand that if I alter, revoke, or refuse to sign this Authorization to release my entire medical record, Northwestern Mutual may not be able to process my application, or if coverage has been issued may not be able to make any benefit payments. I further understand that My Providers cannot condition treatment, payment, enrollment, or eligibility for benefits on whether I sign this Authorization. I acknowledge by my signature below, that I have a right to receive, and have in fact received, a copy of this Authorization:

 Kenneth E. Wilson                          05/22/2004
Signature of Patient/Proposed Insured (or Parent or Guardian)        Date (MM/DD/YYYY)


Relationship to Patient/Proposed Insured


Address of Parent or Guardian, if signing

**Some states' rules concerning Authorizations change the terms and provisions above. The terms and provisions on page two of this document are part of this Authorization and apply in the identified states.**
SEND ORIGINAL WITH APPLICATION – GIVE A COPY TO PROPOSED INSURED
THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT

17-1276 Life and DI (0403)                                    WCRD 2004-FE
                                                              (Page 1 of 2)

If you or your provider reside in a state requiring one or more changes to the provisions on page one of this form, then the identified provisions apply to your Authorization.

### Arizona
This Authorization is valid for 180 days from the date it is signed for HIV related information.

### California
This Authorization includes information on the diagnosis or treatment of AIDS and sexually transmitted diseases.

### Kansas
This Authorization is valid for 12 months from the date it is signed.

### Maine
This authorization excludes disclosure of the result of a test for HIV if the Insured has tested HIV positive but has not developed symptoms of the disease AIDS. Such test results shall not be discovered or published. Nothing in this caveat shall otherwise prohibit this Authorization from including other facts and information relative to the fact that the Insured has AIDS.

### Minnesota
This Authorization is valid for 26 months from the date it is signed. The Authorization excludes the release of information about HBV (Hepatitis B Virus), HCV (Hepatitis C Virus), or HIV (Human Immunodeficiency Virus) tests which were administered (1) to a criminal offender or crime victim as a result of a crime that was reported to the police; (2) to a patient who received the services of emergency medical services personnel at a hospital or medical care facility; (3) to emergency medical personnel who were tested as a result of performing emergency medical services. The term "emergency medical personnel" includes individuals employed to provide pre-hospital emergency services; licensed police officers, firefighters, paramedics, emergency medical technicians, licensed nurses, rescue squad personnel, or other individuals who serve as volunteers of an ambulance service who provide emergency medical services; crime lab personnel, correctional guards, including security guards, at the Minnesota security hospital, who experience a significant exposure to an inmate who is transported to a facility for emergency medical care; and other persons who render emergency care or assistance at the scene of an emergency, or while an injured person is being transported to receive medical care and who would qualify for immunity under the Good Samaritan law.

### New Jersey
This Authorization includes information on the diagnosis or treatment of AIDS and sexually transmitted diseases.

### New Mexico
"Confidential abuse information" means information about acts of domestic abuse or abuse status, the work or home address or telephone number of a victim of domestic abuse or the status of an applicant or insured as a family member, employer or associate of a victim of domestic abuse or a person with whom an applicant or insured is known to have a direct, close personal, family or abuse-related counseling relationship. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.
With respect to confidential abuse information, I may revoke this Authorization in writing, effective ten days after receipt by The Northwestern Mutual Life Insurance Company, but that doing so may result in an application or claim being denied or may otherwise adversely affect a pending insurance action.

### New York
This Authorization includes information on the diagnosis or treatment of AIDS, ARC, and sexually transmitted diseases.

### Oklahoma
This Authorization is valid for 24 months from the date it is signed. We are required to inform you that the information you authorize for release may include records which may indicate the presence of communicable or venereal diseases, which may include, but are not limited to, diseases such as hepatitis, syphilis, gonorrhea and the human immunodeficiency virus, also known as Acquired Immune Deficiency Syndrome (AIDS).

### Oregon
This Authorization is valid for 24 months (or 180 days for HIV related information) from the date it is signed.

### Vermont
This Authorization is valid for 24 months from the date it is signed. It excludes the release of any information about previously administered tests for HIV antibodies, T-cell counts, AIDS or ARC. The proposed Insured IS NOT authorizing the Company to forward the results from any new test required by the Company to any outside, non-affiliated company or any entity not under specific contract to perform underwriting services.

The signature on page one of this Authorization acknowledges that the entire Authorization includes the applicable state variations as listed above.

SEND ORIGINAL WITH APPLICATION – GIVE A COPY TO PROPOSED INSURED
THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT

17-1276 Life and DI (0403)

WORD 2000-1E
(Page 2 of 2)



The Northwestern Mutual Life Insurance Company

Northwestern Long Term Care Insurance Company

## NEW YORK NOTICE AND CONSENT FOR AIDS-RELATED BLOOD OR SALIVA TESTING

To evaluate your insurability, the insurer named above (the insurer) has requested that you provide a sample of your blood or saliva for testing and analysis to determine the presence of human immunodeficiency virus (HIV) antibody or antigens. By signing and dating this form, you agree that this test may be done and that underwriting decisions will be based on the test results. A series of at least three tests will be performed by a licensed laboratory through a medically accepted procedure. These tests may include enzyme-linked immunosorbent assay tests and a Western blot test.

### MEANING OF POSITIVE TEST RESULT

This test is not a test for AIDS. It is a test for antibodies to or antigens of HIV, the causative agent for AIDS, and shows whether you have been exposed to the virus. A positive test result does not mean that you have AIDS, but that you are at significantly increased risk of developing problems with your immune system. The HIV test is very sensitive and specific. Errors are very rare, but they could occur. If your test result is positive, you may wish to consider further independent testing. Your private physician, a public health clinic, or an AIDS information organization in your city might provide you with further information on the medical implications of a positive test. Positive HIV test results mean that your insurance application will be declined.

### CONFIDENTIALITY OF TEST RESULTS

All test results will be treated confidentially. They will be reported by the laboratory to the insurer. When necessary in connection with insurance you have applied for with the insurer, the insurer may disclose test results to others such as its affiliates, reinsurers or employees. If your HIV test is abnormal, a generic code signifying a nonspecific blood or saliva abnormality may be made known to the Medical Information Bureau (MIB, Inc.) as described in the notice given at the time of application. The fact that the test has been done and the results of the test will not otherwise be disclosed except as may be required by law or as authorized by you.

### NOTIFICATION OF TEST RESULTS

If your test results are negative, no routine notification will be sent to you. If your test results are other than normal, you are entitled to that information if you so desire. You are asked to designate a physician to receive abnormal test results. This physician can best discuss the test results with you and explain their significance. Please provide the following information about your personal physician (or other person to whom you would like positive test results disclosed):

| PHYSICIAN'S NAME | | STREET ADDRESS | |
|---|---|---|---|
| CITY | | STATE | ZIP CODE |

If you would prefer to have the test results sent to you at the address given below, initial here. [KW]

### FURTHER INFORMATION

For further information about AIDS, the meaning of AIDS-related test results, and the availability and location of AIDS related counseling services, contact the Department of Health through its state-wide toll-free telephone number 1-800-541-AIDS.

### CONSENT

I have read and I understand this Notice and Consent for AIDS-Related Blood or Saliva Testing. I voluntarily consent to provide a sample of blood or saliva from me, the testing of that blood or saliva and the disclosure of the test results as described above. A photocopy or facsimile of this form will be as valid as the original. I further acknowledge receipt of a copy of this form signed by me.

SIGNATURE    _Kenneth E. Nelson_    DATE SIGNED  05/29/04

NAME OF PROPOSED INSURED    Kenneth Wilson    DATE OF BIRTH  12/31/1956

STREET ADDRESS  70 Brookside Place    CITY  New Rochelle    STATE NY  ZIP 10801

9   P. 6    NO. 067    JUN. 1. 2004 11:24AM

# REPLICA

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

## Election Of Trustees

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**WHOLE LIFE POLICY
WITH ADJUSTABLE TERM PROTECTION**

**Eligible For Annual Dividends.**

Basic Amount plus Adjustable Term Protection payable on death of Insured. Premiums payable for period shown on page 3.

NN 3

 Northwestern Mutual