# EXHIBIT "K"

# REPLICA

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

President and CEO                    Secretary

### TERM LIFE POLICY

### Participating.

Insurance payable on death of insured before Expiry Date. Convertible on or before the Final Conversion Date. Non-renewable. Premiums are payable to the Expiry Date shown on page 3.

**Right To Return Policy --** Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning. Any premium paid will be refunded.

RS.TERM.(042000).NY

 Northwestern Mutual

| Insured | Kenneth Wilson | | Age and Sex | 35 Male |
| Policy Date | May 29, 2004 | | Policy Number | 16 352 105 |
| Plan | Term to Age 75 with Increasing Premiums | | Amount | $ 350,000 |

RS.TERM.(042000)

# REPLICA

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

President and CEO

Secretary

### TERM LIFE POLICY

**Participating.**

Insurance payable on death of Insured before Expiry Date. Convertible on or before the Final Conversion Date. Non-renewable. Premiums are payable to the Expiry Date shown on page 3.

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning. Any premium paid will be refunded.

RS.TERM.(042000).NY


Northwestern Mutual

| Insured | Kenneth Wilson | Age and Sex | 35 Male |
|---|---|---|---|
| Policy Date | May 29, 2004 | Policy Number | 16 352 105 |
| Plan | Term to Age 75 with Increasing Premiums | Amount | $ 350,000 |

RS.TERM.(042000)

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.
Read your policy carefully.

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. THE CONTRACT**

Life Insurance Benefit payable on death of Insured.
Incontestability. Suicide. Definition of dates.

**SECTION 2. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 3. PREMIUMS**

Scheduled premiums may change. Payment of premiums.
Grace period of 31 days to pay premium.
Refund of unused premium at death.

**SECTION 4. REINSTATEMENT**

**SECTION 5. DIVIDENDS**

**SECTION 6. CONVERSION TO PERMANENT INSURANCE**

How to convert to a new policy.

**SECTION 7. BENEFICIARIES**

Naming and change of beneficiaries.
Marital deduction provision for spouse of Insured.
Succession in interest of beneficiaries.

**SECTION 8. PAYMENT OF POLICY BENEFITS**

Payment of death proceeds. Payment plans for policy proceeds.
Right to increase income under payment plans.
Guaranteed payment tables.

**ADDITIONAL BENEFIT** (if any)

**APPLICATION**

RS.TERM.(042000)

BENEFITS AND PREMIUMS
DATE OF ISSUE - MAY 29, 2004

| Plan and Additional Benefits | Amount | Annual Premium | Payable For |
|---|---|---|---|
| Term to Age 75 with Increasing Premiums | $ 350,000 | See Table | 40 Years |
| Waiver of Premium | | See Table | 30 Years |

An annual premium is payable May 29, 2004 and every May 29 after that.

The first annual premium is $242.50.

Final Conversion Date    May 29, 2029        Expiry Date    May 29, 2044

This policy is issued in a select (non-tobacco use) premium class.

This policy is eligible for a $60.00 annual discount from the annual premiums shown below as long as premiums are paid on policy number 6852083.

TABLE OF ANNUAL PREMIUMS

| For Policy Year Beginning May 29, | $350,000 Term to Age 75 Scheduled | Maximum | Waiver of Premium Benefit | Total Scheduled Premiums |
|---|---|---|---|---|
| 2004 | $ 246.50 | $ 246.50 | $ 56.00 | $ 302.50 |
| 2005 | 250.00 | 250.00 | 63.00 | 313.00 |
| 2006 | 267.50 | 267.50 | 66.50 | 334.00 |
| 2007 | 285.00 | 285.00 | 73.50 | 358.50 |
| 2008 | 302.50 | 302.50 | 80.50 | 383.00 |
| 2009 | 327.00 | 910.50 | 84.00 | 411.00 |
| 2010 | 351.50 | 1,040.00 | 91.00 | 442.50 |
| 2011 | 386.50 | 1,162.50 | 101.50 | 488.00 |
| 2012 | 414.50 | 1,253.50 | 115.50 | 530.00 |
| 2013 | 442.50 | 1,344.50 | 126.00 | 568.50 |
| 2014 | 470.50 | 1,803.00 | 140.00 | 610.50 |
| 2015 | 498.50 | 1,932.50 | 154.00 | 652.50 |
| 2016 | 530.00 | 2,065.50 | 175.00 | 705.00 |
| 2017 | 565.00 | 2,205.50 | 199.50 | 764.50 |
| 2018 | 603.50 | 2,363.00 | 227.50 | 831.00 |
| 2019 | 642.00 | 2,531.00 | 269.50 | 911.50 |
| 2020 | 687.50 | 2,727.00 | 311.50 | 999.00 |
| 2021 | 740.00 | 2,954.50 | 360.50 | 1,100.50 |
| 2022 | 799.50 | 3,210.00 | 413.00 | 1,212.50 |
| 2023 | 866.00 | 3,500.50 | 479.50 | 1,345.50 |
| 2024 | 939.50 | 3,819.00 | 542.50 | 1,482.00 |
| 2025 | 1,027.00 | 4,172.50 | 623.00 | 1,650.00 |
| 2026 | 1,135.50 | 4,540.00 | 710.50 | 1,846.00 |
| 2027 | 1,275.50 | 4,932.00 | 822.50 | 2,098.00 |
| 2028 | 1,454.00 | 5,373.00 | 959.00 | 2,413.00 |

- Continued on Page 3-1 -

Scheduled premiums are guaranteed for the first five policy years. Beginning in the sixth policy year, scheduled premiums may change subject to the maximums shown above. See Section 3.1.

DIRECT BENEFICIARY   Michelle A Wilson, spouse of the Insured

OWNER                Kenneth Wilson, the Insured

| | | | |
|---|---|---|---|
| Insured | Kenneth Wilson | Age and Sex | 35 Male |
| Policy Date | May 29, 2004 | Policy Number | 16 852 105 |
| Plan | Term to Age 75 with Increasing Premiums | Amount | $ 350,000 |

RS.TERM.IP75.(042000).NY        Page 3

POLICY NUMBER        16 852 105

## TABLE OF ANNUAL PREMIUMS

### - Continued from Page 3 -

| For Policy Year Beginning May 29, | $350,000 Term to Age 75 | | Waiver of Premium Benefit | Total Scheduled Premiums |
|---|---|---|---|---|
| | Scheduled | Maximum | | |
| 2029 | 1,671.00 | 5,863.00 | 612.50 | 2,283.50 |
| 2030 | 1,926.50 | 6,402.00 | 630.00 | 2,556.50 |
| 2031 | 2,220.50 | 7,007.50 | 633.50 | 2,854.00 |
| 2032 | 2,553.00 | 7,693.50 | 672.00 | 3,225.00 |
| 2033 | 2,924.00 | 8,463.50 | 570.50 | 3,494.50 |
| 2034 | 3,333.50 | 9,307.00 | | 3,333.50 |
| 2035 | 3,781.50 | 10,199.50 | | 3,781.50 |
| 2036 | 4,268.00 | 11,155.00 | | 4,268.00 |
| 2037 | 4,793.00 | 15,194.00 | | 4,793.00 |
| 2038 | 5,356.50 | 19,859.50 | | 5,356.50 |
| 2039 | 5,958.50 | 26,726.50 | | 5,958.50 |
| 2040 | 6,599.00 | 33,016.00 | | 6,599.00 |
| 2041 | 7,278.00 | 39,386.00 | | 7,278.00 |
| 2042 | 8,247.50 | 47,548.00 | | 8,247.50 |
| 2043 | 9,371.00 | 57,106.50 | | 9,371.00 |

Scheduled premiums are guaranteed for the first five policy years.
Beginning in the sixth policy year, scheduled premiums may change
subject to the maximums shown above. See Section 3.1.

# SECTION 1. THE CONTRACT

## 1.1 LIFE INSURANCE BENEFIT

The Northwestern Mutual Life Insurance Company will pay a benefit on the death of the Insured. Subject to the terms and conditions of the policy:

- payment of the death proceeds will be made after proof of the death of the Insured is received at the Home Office; and

- payment will be made to the beneficiary or other payee under Sections 7 and 8.

The amount of the death proceeds when all premiums due have been paid will be:

- the plan Amount shown on page 3; plus

- the amount of any dividend accumulations (Section 5.2); plus

- the amount of any premium refund (Section 3.5) and any dividend at death (Section 5.5).

These amounts will be determined as of the date of death.

The amount of the death proceeds when the Insured dies during the grace period following the due date of any unpaid premium will be:

- the amount determined above assuming the overdue premium has been paid; less

- the amount of the unpaid premium.

## 1.2 EXPIRY OF POLICY

This policy will terminate on the Expiry Date shown on page 3.

## 1.3 ENTIRE CONTRACT; CHANGES

This policy with the attached application is the entire contract. Statements in the application are representations and not warranties. A change in the policy is valid only if it is approved in writing by an officer of the Company. The Company may require that the policy be sent to it for endorsement to show a change. No agent has the authority to change the policy or to waive any of its terms.

## 1.4 INCONTESTABILITY

The Company will not contest this policy after it has been in force during the lifetime of the Insured for two years from the Date of Issue.

## 1.5 SUICIDE

If the Insured dies by suicide within one year from the Date of Issue, the amount payable by the Company will be limited to the premiums paid.

## 1.6 DATES

The contestable and suicide periods begin with the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3.

## 1.7 MISSTATEMENT OF AGE OR SEX

If the age or sex of the Insured has been misstated, the amount payable will be the amount which the premiums paid would have purchased at the correct age and sex.

## 1.8 PAYMENTS BY THE COMPANY

All payments by the Company under this policy are payable at its Home Office.

# SECTION 2. OWNERSHIP

## 2.1 THE OWNER

The Owner is named on page 3. The Owner, the Owner's successor or the Owner's transferee may exercise policy rights without the consent of any beneficiary. After the death of the Insured, policy rights may be exercised only as provided in Sections 7 and 8.

## 2.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the

Company must be received at its Home Office. The transfer will then take effect as of the date that it was signed. The Company may require that the policy be sent to it for endorsement to show the transfer.

## 2.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company

before receipt of the assignment in writing at its Home Office.

The interest of any beneficiary will be subject to any collateral assignment made either before or after the beneficiary is named.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 2.2.

# SECTION 3. PREMIUMS

### 3.1 AMOUNT OF PREMIUM

The premiums due for the term insurance Amount ("scheduled premiums") and the premiums due for any additional benefits are shown on page 3. Scheduled premiums are guaranteed for the period of time shown on page 3. After the guarantee period the Company will review scheduled premiums at least once every five policy years to determine whether a change is necessary.

A change in scheduled premiums:

- will take effect on the first policy anniversary after a change has been determined by the Company to be necessary. The Company may not increase scheduled premiums more than once each policy year.

- will be made in accordance with procedures on file in the state in which this policy is delivered.

- will be based on the Company's expectations as to future mortality rates, expenses, persistency, and earnings on investments.

- will apply to policies that are in the same premium class as this policy.

Scheduled premiums may not be increased above the maximum premiums shown on page 3.

### 3.2 PREMIUM PAYMENT

All premiums after the first are payable at the Home Office or to an authorized agent. A receipt signed by an officer of the Company will be furnished on request. A premium must be paid on or before its due date. The date when each premium is due and the number of years for which premiums are payable are described on page 3.

### 3.3 FREQUENCY

Premiums may be paid every 3, 6 or 12 months at the published rates of the Company. A change in premium frequency will take effect when the Company accepts a premium on a new frequency. Premiums may be paid on any other frequency approved by the Company.

### 3.4 GRACE PERIOD

A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The policy will be in full force during this period. If the Insured dies during the grace period, any overdue premium will be paid from the proceeds of the policy.

If the premium is not paid within the grace period, the policy will terminate as of the due date.

### 3.5 PREMIUM REFUND AT DEATH

The Company will refund a portion of a premium paid for the period beyond the date of the Insured's death. The refund will be part of the policy proceeds.

# SECTION 4. REINSTATEMENT

If this policy terminates as provided in Section 3.4, it may be reinstated within three years after the due date of the overdue premium. All unpaid premiums (and interest as required in this section) must be received by the Company while the Insured is alive and before the Expiry Date.

In addition, for the policy to be reinstated more than 31 days after the end of the grace period:

- evidence of insurability must be given that is satisfactory to the Company; and

- all unpaid premiums must be paid with interest from the due date of each premium. Interest is at an annual effective rate of 6%.

# SECTION 5. DIVIDENDS

## 5.1 ANNUAL DIVIDENDS

This policy will share in the divisible surplus of the Company to the extent it contributes to this surplus. This surplus is determined each year. This policy's share will be credited as a dividend on the policy anniversary.

Since this policy is not expected to contribute to divisible surplus, it is not expected that any dividends will be paid.

## 5.2 USE OF DIVIDENDS

Annual dividends may be paid in cash or used for one of the following:

- **Dividend Accumulations.** Dividends will accumulate at interest. Interest is credited at an annual effective rate of 3 1/2%. The Company may set a higher rate.

- **Premium Payment.** Dividends will be used to reduce premiums. If the balance of a premium is not paid, the dividend will be credited to dividend accumulations.

If no direction is given for the use of dividends, they will be credited to dividend accumulations.

## 5.3 AUTOMATIC PREMIUM PAYMENT

Dividend accumulations will be used to pay an overdue premium on this policy if the Automatic Premium Payment provision is in effect. If dividend accumulations are not large enough to pay the overdue premium, a premium will be paid for any other frequency permitted by this policy for which dividend accumulations are large enough.

If dividend accumulations are not large enough to pay any premium and if the premium is unpaid at the end of the grace period, the policy will terminate.

The Owner may elect or revoke this Automatic Premium Payment provision by written request received at the Home Office.

## 5.4 PAYMENT OF ACCUMULATIONS

Dividend accumulations are part of the proceeds payable on the death of the Insured. While the Insured is living, dividend accumulations may be withdrawn at any time. They will be paid to the Owner when the policy terminates.

## 5.5 DIVIDEND AT DEATH

If a dividend is payable under Section 5.1, a dividend for the period from the beginning of the policy year to the date of the Insured's death will be payable as part of the policy proceeds.

# SECTION 6. CONVERSION TO PERMANENT INSURANCE

## 6.1 ATTAINED AGE CONVERSION

The Owner may convert this policy to a new policy that will be issued at the attained age of the Insured. This may be done on or before the Final Conversion Date shown on page 3. No evidence of insurability will be required.

A portion of this policy may be converted, subject to conditions set by the Company.

**Plan.** The new policy will be on a permanent single life insurance plan being issued by the Company on the date of the conversion. An additional benefit that is made a part of the new policy will contain the provisions of that benefit as it is being issued by the Company on the date of conversion.

**Amount.** The amount of the new policy will be the amount of term insurance converted. The minimum amount of a new policy on the Whole Life Paid Up at 90 plan (or, if that plan has been discontinued at the time of conversion, the successor plan then being issued) will be $20,000. The amount of a new policy on any other plan must be at least the

Company's minimum for policies being issued on that plan at the time of the conversion.

**Premiums.** The premium for the new policy, including any additional benefits, will be determined as of the date of conversion based on:

- the Company's premium rates then in effect;

- the plan and amount of the new policy and any additional benefits;

- the Insured's age on the Insured's birthday nearest the policy date of the new policy; and

- the underwriting classification of this policy.

If the new policy allows the payment of additional premiums that have the effect of increasing cash value, the Company may limit the amount of such premiums.

**Cost of Conversion.** The cost of conversion will be the first premium on the new policy less any dividend and refund of premium paid for the period beyond the date of conversion on the amount converted.

**Provisions.** The new policy will contain any exclusion provision which is a part of this policy.

### 6.2 EFFECTIVE DATE

The new policy will take effect on receipt at the Home Office of:

- a written request satisfactory to the Company; and

- payment of the cost of conversion.

The amount of term insurance converted on this policy will be surrendered when the new policy takes effect. The Company may require that this policy be sent to it for endorsement to show the conversion.

### 6.3 CONVERSION OF WAIVER OF PREMIUM BENEFIT

If the Waiver of Premium Benefit is a part of this policy at the time of conversion, the new policy may be issued with the Benefit only if the annual

premium on the new policy is not greater than the annual premium for the same amount of coverage on the Company's Whole Life Paid Up at 90 plan (or, if that plan has been discontinued at the time of an attained age conversion, the successor plan then being issued).

The Waiver of Premium Benefit on the new policy will apply to a disability that started while the term insurance converted was in force.

**Exception.** The new policy may be issued with the Waiver of Premium Benefit only if the Benefit is available on that type of policy when issued in the same classification of risk as this term insurance policy.

### 6.4 CONVERSION OF ACCIDENTAL DEATH BENEFIT

The amount of any Accidental Death Benefit that is in force on the term insurance converted:

- will be surrendered when the new policy takes effect; and

- will be made a part of the new policy if requested in writing by the Owner at the time of conversion.

## SECTION 7. BENEFICIARIES

### 7.1 DEFINITION OF BENEFICIARIES

The term "beneficiaries" as used in this policy includes direct beneficiaries, contingent beneficiaries and further payees.

### 7.2 NAMING AND CHANGE OF BENEFICIARIES

**By Owner.** The Owner may name and change the beneficiaries of death proceeds:

- while the Insured is living.

- during the first 60 days after the date of death of the Insured, if the Insured just before the Insured's death was not the Owner. No one may change this naming of a direct beneficiary during this 60 days.

**By Direct Beneficiary.** A direct beneficiary may name and change the contingent beneficiaries and further payees of the direct beneficiary's share of the proceeds:

- if the direct beneficiary is the Owner;

- if, at any time after the death of the Insured, no contingent beneficiary or further payee of

that share is living; or

- if, after the death of the Insured, the direct beneficiary elects a payment plan. The interest of any other beneficiary in the share of that direct beneficiary will end.

These direct beneficiary rights are subject to the Owner's rights during the 60 days after the date of death of the Insured.

**By Spouse (Marital Deduction Provision).**

- **Power To Appoint.** The spouse of the Insured will have the power alone and in all events to appoint all amounts payable to the spouse under the policy if:

  a. the Insured just before the Insured's death was the Owner; and

  b. the spouse is a direct beneficiary; and

  c. the spouse survives the Insured.

- **To Whom Spouse Can Appoint.** Under this power, the spouse can appoint:

    a. to the estate of the spouse; or

    b. to any other persons as contingent beneficiaries and further payees.

- **Effect Of Exercise.** As to the amounts appointed, the exercise of this power will:

    a. revoke any other designation of beneficiaries;

    b. revoke any election of payment plan as it applies to them; and

    c. cause any provision to the contrary in Section 7 or 8 of this policy to be of no effect.

**Effective Date.** A naming or change of a beneficiary will be made on receipt at the Home Office of written request that is acceptable to the Company. The request will then take effect as of the date that it was signed. The Company is not responsible for any payment or other action that is taken by it before the receipt of the request. The Company may require that the policy be sent to it to be endorsed to show the naming or change.

### 7.3 SUCCESSION IN INTEREST OF BENEFICIARIES

**Direct Beneficiaries.** The proceeds of this policy will be payable in equal shares to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before receiving all or part of the direct beneficiary's full share, the unpaid portion will be payable in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** At the death of all of the direct beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be payable in equal shares to the contingent beneficiaries who survive and receive payment. If a contingent beneficiary dies before receiving all or part of the contingent beneficiary's full share, the unpaid portion will be payable in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** At the death of all of the direct and contingent beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or

- if no further payees survive and receive payment, to the estate of the last to die of all of the direct and contingent beneficiaries.

**Owner Or The Owner's Estate.** If no beneficiaries are alive when the Insured dies, the proceeds will be paid to the Owner or to the Owner's estate.

### 7.4 TRUSTEE AS BENEFICIARY

If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under a payment plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be made as though the trustee had not been named.

The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

### 7.5 GENERAL

**Transfer Of Ownership.** A transfer of ownership of itself will not change the interest of a beneficiary

**Claims Of Creditors.** So far as allowed by law, no amount payable under this policy will be subject to the claims of creditors of a beneficiary.

**Succession Under Payment Plans.** A direct or contingent beneficiary who succeeds to an interest in a payment plan will continue under the terms of the plan.

# SECTION 8. PAYMENT OF POLICY BENEFITS

### 8.1 PAYMENT OF PROCEEDS

Death proceeds will be paid under the payment plan that takes effect on the date of death of the Insured. The Interest Income Plan (Option A) will be in effect if no payment plan has been elected. Interest will accumulate from the date of death

until a payment plan is elected or the proceeds are withdrawn in cash.

### 8.2 PAYMENT PLANS

**Interest Income Plan (Option A).** The proceeds will earn interest which may be received each

month or accumulated. The first payment is due one month after the date on which the plan takes effect. Interest that has accumulated may be withdrawn at any time. Part or all of the proceeds may be withdrawn at any time.

**Installment Income Plans.** Payments will be made each month on the terms of the plan that is elected. The first payment is due on the date that the plan takes effect.

- **Specified Period (Option B).** The proceeds with interest will be paid over a period of from one to 30 years. The present value of any unpaid installments may be withdrawn at any time.

- **Specified Amount (Option D).** Payments of not less than $10.00 per $1,000 of proceeds will be made until all of the proceeds with interest have been paid. The balance may be withdrawn at any time.

**Life Income Plans.** Payments will be made each month on the terms of the plan that is elected. The first payment is due on the date that the plan takes effect. Proof of the date of birth, acceptable to the Company, must be furnished for each person on whose life the payments are based.

- **Single Life Income (Option C).** Payments will be made for a chosen period and, after that, for the life of the person on whose life the payments are based. The choices for the period are:

  a. zero years;

  b. 10 years;

  c. 20 years; or

  d. a refund period which continues until the sum of the payments that have been made is equal to the proceeds that were placed under the plan.

  If any life income plan provides for payments of the same amount for different chosen periods, the Company will deem an election to have been made for the longest chosen period which could have been elected.

- **Joint and Survivor Life Income (Option E).** Payments are based on the lives of two persons. Level payments will be made for a period of 10 years and, after that, for as long as one or both of the persons are living.

- **Other Selections.** The Company may offer other selections under the Life Income Plans.

- **Withdrawal.** The present value of any unpaid payments that are to be made for the chosen period (Option C) or the 10 year period (Option E) may be withdrawn only after the death of all of the persons on whose lives the payments are based.

- **Limitations.** A direct or contingent beneficiary who is a natural person may be paid under a Life Income Plan only if the payments depend on his life. A corporation may be paid under a Life Income Plan only if the payments depend on the life of the insured's spouse or his dependent.

**Payment Frequency.** On request, payments will be made once every 3, 6 or 12 months instead of each month.

**Transfer Between Payment Plans.** A beneficiary who is receiving payment under a plan which includes the right to withdraw may transfer the amount withdrawable to any other plan that is available.

**Minimum Payment.** The Company may limit the election of a payment plan to one that results in payments of at least $50.

If payments under a payment plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the payment plan.

### 8.3 PAYMENT PLAN RATES

**Interest Income And Installment Income Plans.** Proceeds will earn interest at rates declared each year by the Company. None of these rates will be less than an annual effective rate of 2%. Interest of more than 2% will increase the amount of the payments or, for the Specified Amount Plan (Option D), increase the number of payments. The Company may offer guaranteed rates of interest higher than 2% with conditions on withdrawal.

The present value of the amount of any unpaid installments will be based on the rate of interest used to determine the amount of the payment.

**Life Income Plans.** Payments will be based on rates declared by the Company. These rates will provide at least as much income as would the Company's rates, on the date that the payment plan takes effect, for a single premium immediate annuity contract. Payments under these rates will not be less than the amounts that are described in Minimum Payment Rates.

**Minimum Payment Rates.** The minimum payment rates for the Installment Income Plans (Options B and D) and the Life Income Plans (Options C and E) are shown in the Minimum Payment Rate Tables.

The Life Income Plan payment rates in those tables depend on the sex and the adjusted age of each person on whose life the payments are based. The adjusted age is:

- the age on the birthday that is nearest to the date on which the payment plan takes effect; plus

- the age adjustment shown below for the number of policy years that have elapsed from the Policy Date to the date that the payment plan takes effect. A part of a policy year is counted as a full year.

| POLICY YEARS ELAPSED | AGE ADJUST- MENT | POLICY YEARS ELPASED | AGE ADJUST- MENT |
|---|---|---|---|
| 1 to 8 | 0 | 33 to 40 | -4 |
| 9 to 16 | -1 | 41 to 48 | -5 |
| 17 to 24 | -2 | 49 or more | -6 |
| 25 to 32 | -3 | | |

## 8.4 EFFECTIVE DATE FOR PAYMENT PLAN

A payment plan that is elected will take effect on the date of death of the Insured if:

- the plan is elected by the Owner; and

- the election is received at the Home Office while the Insured is living.

In all other cases, a payment plan that is elected will take effect:

- on the date the election is received at the Home Office; or

- on a later date, if requested.

## 8.5 PAYMENT PLAN ELECTIONS

**By Owner.** The Owner may elect payment plans for proceeds:

- while the Insured is living.

- during the first 60 days after the date of death of the Insured, if the Insured just before his death was not the Owner. No one may change this election made during those 60 days.

**By Direct Or Contingent Beneficiary.** A direct or contingent beneficiary may elect payment plans for proceeds payable to him if no payment plan that has been elected is in effect. This right is subject to the Owner's rights during the 60 days after the date of death of the Insured.

## 8.6 INCREASE OF MONTHLY INCOME

A direct beneficiary who is to receive proceeds under a payment plan may increase the amount of the monthly payments. This is done by the payment of an annuity premium to the Company at the time the payment plan elected under Section 8.5 takes effect. The amount that will be applied under the payment plan will be the net premium. The net premium is the annuity premium less a charge of not more than 2% and less any premium tax. The net premium will be applied under the same payment plan and at the same rates as the proceeds. The Company may limit this net premium to an amount that is equal to the direct beneficiary's share of the proceeds payable under this policy.

## MINIMUM PAYMENT RATE TABLES

### Minimum Monthly Income Payments Per $1,000 Of Proceeds

**INSTALLMENT INCOME PLANS (OPTION B AND D)**

| PERIOD (YEARS) | MONTHLY PAYMENT | PERIOD (YEARS) | MONTHLY PAYMENT | PERIOD (YEARS) | MONTHLY PAYMENT |
|---|---|---|---|---|---|
| 1 | $ 84.09 | 11 | $ 8.42 | 21 | $ 4.85 |
| 2 | 42.46 | 12 | 7.80 | 22 | 4.67 |
| 3 | 28.59 | 13 | 7.26 | 23 | 4.51 |
| 4 | 21.65 | 14 | 6.81 | 24 | 4.36 |
| 5 | 17.49 | 15 | 6.42 | 25 | 4.22 |
| 6 | 14.72 | 16 | 6.07 | 26 | 4.10 |
| 7 | 12.74 | 17 | 5.77 | 27 | 3.98 |
| 8 | 11.25 | 18 | 5.50 | 28 | 3.87 |
| 9 | 10.10 | 19 | 5.26 | 29 | 3.77 |
| 10 | 9.18 | 20 | 5.04 | 30 | 3.68 |

# MINIMUM PAYMENT RATE TABLES

## Minimum Monthly Income Payments Per $1,000 Of Proceeds

### LIFE INCOME PLAN (OPTION C)

| SINGLE LIFE MONTHLY PAYMENTS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | | FEMALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | |
| | ZERO | 10 | 20 | REFUND | | ZERO | 10 | 20 | REFUND |
| 55 | $ 4.48 | $ 4.43 | $ 4.28 | $ 4.29 | 55 | $ 4.09 | $ 4.07 | $ 4.00 | $ 3.99 |
| 56 | 4.56 | 4.50 | 4.34 | 4.36 | 56 | 4.15 | 4.13 | 4.05 | 4.05 |
| 57 | 4.65 | 4.59 | 4.40 | 4.43 | 57 | 4.22 | 4.20 | 4.11 | 4.11 |
| 58 | 4.75 | 4.68 | 4.46 | 4.50 | 58 | 4.30 | 4.27 | 4.17 | 4.17 |
| 59 | 4.85 | 4.77 | 4.52 | 4.58 | 59 | 4.38 | 4.34 | 4.23 | 4.24 |
| 60 | 4.96 | 4.87 | 4.59 | 4.66 | 60 | 4.46 | 4.42 | 4.29 | 4.30 |
| 61 | 5.07 | 4.97 | 4.66 | 4.75 | 61 | 4.55 | 4.50 | 4.36 | 4.38 |
| 62 | 5.20 | 5.08 | 4.72 | 4.84 | 62 | 4.65 | 4.59 | 4.43 | 4.46 |
| 63 | 5.33 | 5.19 | 4.79 | 4.94 | 63 | 4.75 | 4.69 | 4.50 | 4.54 |
| 64 | 5.48 | 5.32 | 4.86 | 5.04 | 64 | 4.86 | 4.79 | 4.57 | 4.62 |
| 65 | 5.63 | 5.44 | 4.92 | 5.15 | 65 | 4.97 | 4.89 | 4.64 | 4.71 |
| 66 | 5.80 | 5.58 | 4.99 | 5.26 | 66 | 5.10 | 5.01 | 4.71 | 4.81 |
| 67 | 5.97 | 5.72 | 5.05 | 5.38 | 67 | 5.23 | 5.12 | 4.79 | 4.91 |
| 68 | 6.16 | 5.86 | 5.12 | 5.51 | 68 | 5.38 | 5.25 | 4.86 | 5.02 |
| 69 | 6.36 | 6.01 | 5.18 | 5.64 | 69 | 5.53 | 5.39 | 4.93 | 5.14 |
| 70 | 6.58 | 6.17 | 5.23 | 5.78 | 70 | 5.70 | 5.53 | 5.01 | 5.26 |
| 71 | 6.81 | 6.33 | 5.29 | 5.93 | 71 | 5.88 | 5.68 | 5.08 | 5.39 |
| 72 | 7.05 | 6.49 | 5.34 | 6.08 | 72 | 6.08 | 5.83 | 5.15 | 5.53 |
| 73 | 7.31 | 6.66 | 5.38 | 6.25 | 73 | 6.29 | 6.00 | 5.21 | 5.67 |
| 74 | 7.59 | 6.83 | 5.43 | 6.42 | 74 | 6.52 | 6.17 | 5.27 | 5.83 |
| 75 | 7.89 | 7.01 | 5.46 | 6.60 | 75 | 6.77 | 6.35 | 5.33 | 5.99 |
| 76 | 8.21 | 7.19 | 5.50 | 6.79 | 76 | 7.04 | 6.54 | 5.38 | 6.17 |
| 77 | 8.56 | 7.37 | 5.53 | 6.99 | 77 | 7.33 | 6.73 | 5.43 | 6.35 |
| 78 | 8.93 | 7.55 | 5.56 | 7.20 | 78 | 7.65 | 6.93 | 5.47 | 6.55 |
| 79 | 9.32 | 7.72 | 5.58 | 7.42 | 79 | 7.99 | 7.13 | 5.51 | 6.76 |
| 80 | 9.75 | 7.90 | 5.60 | 7.66 | 80 | 8.36 | 7.34 | 5.54 | 6.98 |
| 81 | 10.20 | 8.07 | 5.62 | 7.90 | 81 | 8.76 | 7.54 | 5.57 | 7.21 |
| 82 | 10.69 | 8.23 | 5.63 | 8.16 | 82 | 9.20 | 7.74 | 5.59 | 7.46 |
| 83 | 11.21 | 8.39 | 5.64 | 8.43 | 83 | 9.67 | 7.93 | 5.61 | 7.72 |
| 84 | 11.76 | 8.54 | 5.65 | 8.71 | 84 | 10.18 | 8.12 | 5.63 | 7.99 |
| 85 and over | 12.35 | 8.68 | 5.66 | 9.01 | 85 and over | 10.74 | 8.30 | 5.64 | 8.28 |

### LIFE INCOME PLAN (OPTION E)

| | JOINT AND SURVIVOR MONTHLY PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | FEMALE ADJUSTED AGE* | | | | | | |
| | 55 | 60 | 65 | 70 | 75 | 80 | 85 and over |
| 55 | $ 3.79 | $ 3.93 | $ 4.07 | $ 4.19 | $ 4.29 | $ 4.35 | $ 4.39 |
| 60 | 3.87 | 4.07 | 4.27 | 4.46 | 4.61 | 4.73 | 4.80 |
| 65 | 3.94 | 4.18 | 4.45 | 4.73 | 4.98 | 5.19 | 5.32 |
| 70 | 3.99 | 4.27 | 4.61 | 4.99 | 5.37 | 5.70 | 5.94 |
| 75 | 4.02 | 4.34 | 4.73 | 5.20 | 5.72 | 6.21 | 6.60 |
| 80 | 4.05 | 4.38 | 4.81 | 5.35 | 6.00 | 6.67 | 7.24 |
| 85 and over | 4.06 | 4.40 | 4.86 | 5.45 | 6.18 | 7.00 | 7.75 |

* See Section 8.3

Monthly payment rates are based on 3 1/2% interest, the 1983 Table a mortality table with Projection Scale G and an expense charge of 1 1/2%. Mortality improvements are projected for 16 years plus the remaining life of the Annuitant.

# WAIVER OF PREMIUM BENEFIT

## 1. THE BENEFIT

**Disability Before Age 60.** If total disability of the Insured starts on or before the policy anniversary nearest his 60th birthday, the Company will waive all premiums that come due on the policy as long as the total disability continues.

**Disability After Age 60.** If total disability of the Insured starts after the policy anniversary nearest his 60th birthday, the Company will waive those premiums that come due on the policy as long as the total disability continues, but only to the policy anniversary that is nearest his 65th birthday.

**Premium Waived On An Annual Basis.** Even if premiums have been paid more often than every 12 months, a premium waived on a policy anniversary will be an annual premium.

**Refund Of Premium.** The Company will refund that portion of a premium paid which applies to a period beyond the policy month in which the total disability began.

**Premium For Benefit.** The premium for this Benefit is shown on page 3.

## 2. TOTAL DISABILITY

**Definition Of Total Disability.** A total disability is one which prevents the Insured from engaging in an occupation. For the first 24 months of total disability, an occupation is the one that the Insured had at the time he became disabled. After 24 months, an occupation is one for which the Insured is qualified by education, training or experience. Due regard will be given to his vocation and earnings before he became disabled.

**Disabilities Covered By This Benefit.** Premiums are waived for total disability only if:

- the Insured becomes disabled while this Benefit is in force;

- the disability results from an accident or sickness; and

- the disability lasts for at least six months.

**Presumptive Total Disability.** Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight of both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The loss must occur while this Benefit is in force.

## 3. PROOF OF DISABILITY

Before any premium is waived, proof of total disability must be given to the Company:

- while the Insured is living; and
- while the Insured is totally disabled.

However, the claim will not be affected if the proof is given as soon as reasonably possible.

## 4. PROOF THAT DISABILITY HAS CONTINUED

Proof that the total disability has continued may be required once a year. If the proof is not given when it is required, no more premiums will be waived. The Company will not require proof that the disability continues beyond the policy anniversary that is nearest the 65th birthday of the Insured.

## 5. PAYMENT OF PREMIUM

A premium that comes due while the Insured is disabled, but before the Company has approved the claim, is payable and should be paid. A premium that is paid and later waived will be refunded. A premium that is not paid will be waived if the total disability began before the end of the grace period.

## 6. TERMINATION OF BENEFIT

This Benefit will terminate on the policy anniversary that is nearest the 65th birthday of the Insured, unless he has been totally disabled since the policy anniversary that is nearest his 60th birthday. It will terminate earlier:

- when the policy terminates.
- when the policy becomes extended term or paid-up insurance.
- when the Owner's written request is received at the Home Office.

*Robert J. Berdan*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

NN 1,2,4,5 WP
New York

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

720 E. WISCONSIN AVENUE, MILWAUKEE, WISCONSIN 53202

## LIFE INSURANCE APPLICATION

**LIFE INSURANCE APPLICATION**
Page 1

*16952105*

**INSURED NAME** (First, Middle Initial, Last)
Kenneth Wilson

**POLICY NUMBER**
16952093     326366

| ☐ Companion policies | ☐ Life & Disability Application | Plan Group Number |
| ☑ APB Option | ☐ Exam (NM, PME, MD) in Home Office | |

## INSURED

Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life, or disability insurance on the life of the insured?   ☐ Yes   ☐ No     If yes, the last policy number is _____

**A.**
☑ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____

**B.** ☑ MALE  ☐ FEMALE

**C.** BIRTHDATE (Month, Day, Year)
12/31/1968

**D.**
STATE OF BIRTH (or Foreign Country): __NY__

**E.** TAXPAYER IDENTIFICATION NUMBER:
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

**F.** PRIMARY RESIDENCE:
STREET OR PO BOX: 70 Brookside Place
CITY, STATE, ZIP (Country if other than U.S.A.): New Rochelle NY 10801

## APPLICANT

Select ONLY ONE: ☑ Insured at Insured's Address   OR   ☐ Other (Complete A, B and C)

**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____     ☐ MALE  ☐ FEMALE
PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)
RELATIONSHIP TO INSURED: _____     BIRTHDATE: _____
                                      MONTH   DAY   YEAR
**OR**
BUSINESS/TRUST NAME: _____
TYPE OF ORGANIZATION: ☐ Trust  ☐ Corporation  ☐ Partnership  ☐ Other type of Business _____
AUTHORIZED COMPANY
REP/TRUSTEE NAME: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____

**C.** ADDRESS:     STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

## PREMIUM PAYER

Select ONLY ONE: ☐ ISA (Omit A through D below)     OR   ☐ Insured (Complete D only)   ☐ Applicant (Complete D only)
                                                          ☐ Owner (Complete D only)     ☐ Other (Complete A, B, C and D)
**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____     ☐ MALE  ☐ FEMALE
PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)
          BIRTHDATE: _____
                    MONTH   DAY   YEAR
**OR**
BUSINESS/TRUST NAME: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____     **C.** DAYTIME TELEPHONE NUMBER:
                                                          Area Code (   )

Send premium and other notices regarding this policy to:
**D.** ADDRESS: ☐ Insured's Address  ☐ Applicant's Address   OR
                    STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

## OWNER (CAUTION: A MINOR OWNER CANNOT EXERCISE POLICY RIGHTS.)

Select ONLY ONE: ☑ Insured (Complete C only)  ☐ Applicant (Complete C only)  ☐ Other (Complete A, B and C)  ☐ See attached
                                                                                                              supplement form
**A.** ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other _____     ☐ MALE  ☐ FEMALE
PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)
RELATIONSHIP TO INSURED: _____     BIRTHDATE: _____
                                                MONTH   DAY   YEAR
**OR**
BUSINESS/TRUST NAME: _____
RELATIONSHIP TO INSURED: _____

**B.** TAXPAYER IDENTIFICATION NUMBER: _____
**C.** ADDRESS: ☐ Insured's Address  ☐ Applicant's Address  ☐ Premium Payer's Address   OR
                    STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

90-1-L.I.(0496) NEW YORK (TIN)                                    90-0001-72 (0603)

**LIFE INSURANCE APPLICATION**
Page 2

**5** RESERVED

**SUCCESSOR OWNER** – COMPLETE THIS SECTION ONLY IF THE OWNER IN QUESTION 4 IS THE APPLICANT AND A SUCCESSOR OWNER IS TO BE NAMED.
(CAUTION: A MINOR OWNER CANNOT EXERCISE POLICY RIGHTS.)
Select ONLY ONE:
☐ A. If the Applicant dies before the Insured, the Insured will be the Owner.
☐ B. If the Applicant dies before the Insured, the Owner will be:
NAME: _____  RELATIONSHIP TO THE INSURED _____
If both die before the Insured, the Insured will be the Owner.
☐ C. The Insured will become the Owner upon attaining the age of _____ years. If the Applicant dies before the Insured, the Owner will be:
NAME: _____  RELATIONSHIP TO THE INSURED _____
until the Insured attains such age. Upon the Insured attaining such age, or if both die before the Insured, the Insured will be the Owner.

**ADDITIONAL PURCHASE BENEFIT OPTION** –COMPLETE THIS SECTION IF EXERCISING AN APB OPTION (NOTE: SMOKING QUESTIONNAIRE MAY BE REQUIRED.)
A. List the policy number(s) and purchase amount(s) for each option being exercised:
Policy 1 _____  Regular $ _____  Advance $ _____
Policy 2 _____  Regular $ _____  Advance $ _____
Policy 3 _____  Regular $ _____  Advance $ _____
B. If Advance Purchase, the event is:  ☐ Marriage  ☐ Birth of child  ☐ Adoption of child
NAME OF SPOUSE OR CHILD: _____
FIRST                    MIDDLE INITIAL              LAST
Date and place of marriage, birth or final decree of adoption: _____  _____
MONTH   DAY   YEAR                    CITY        STATE
C. Is the amount applied for more than the additional purchase option amount available?          ☐ Yes  ☐ No
If yes, what is the excess amount to be underwritten? $ _____

**SPECIAL DATE** – COMPLETE THIS SECTION ONLY IF A SPECIAL POLICY DATE IS BEING REQUESTED
A. PREPAID:
☐ Short Term — Policy Date will coincide with ISA Payment Date (For monthly ISA only)
☐ Short Term to: _____     ☐ Date to save age  ☐ Backdate to _____
MONTH   DAY   YEAR                                        MONTH   DAY   YEAR
B. NONPREPAID:
☐ Specified future date: _____  ☐ Date to save age  ☐ Backdate to _____
MONTH   DAY   YEAR                                        MONTH   DAY   YEAR

**POLICY APPLIED FOR**
☒ Term Insurance Plan (Complete A and B).  OR  ☒ See attached supplement for plans other than term insurance
A. Plan and Amount
(1) PLAN: _____     (2) PLAN: 350,000 J T
AMOUNT: _____         AMOUNT: T A S
B. ADDITIONAL BENEFITS:
(1) ☒ Waiver of Premium                (2) ☒ Waiver of Premium
☐ Accidental Death $ _____     ☐ Accidental Death $ _____
☐ Indexed Protection                   ☐ Indexed Protection
☐ Other _____                  ☐ Other _____

If an additional benefit cannot be approved, should the company issue a policy without the benefit?     ☒ Yes  ☐ No

Shall the Premium Loan provision, if available, become operative according to its terms?               ☒ Yes  ☐ No

ANNUAL DIVIDENDS until otherwise directed will:
Policy 1  Policy 2
☐        ☒        Reduce current premium
☒        ☐        Purchase paid-up additions - If the plan has Additional Protection or Adjustable Term Protection,
additions purchased by eligible dividends will be used to:
☐ Reduce term insurance _____%  ☐ Increase Coverage _____%
☐        ☐        Accumulate at interest
☐        ☐        Be paid in cash
☐        ☐        Be used for a combination of options above - complete form 18-1364-01

**POLICY LOAN INTEREST RATE OPTION:** ☒ 8%  ☐ Variable Rate

**PREMIUM FREQUENCY:** ☒ Annually  ☐ Semiannually  ☐ Quarterly  ☐ Single

9G-1 L.L. (0496)

# LIFE INSURANCE APPLICATION
### Page 3

| INSURED NAME (First, Middle Initial, Last) | POLICY NUMBER |
|---|---|
| | 326366 |

## BENEFICIARY

**A. DIRECT BENEFICIARY**    First, Middle Initial, Last    Relationship to Insured
1. Michelle A. Wilson
2.
3.

BUSINESS ORGANIZATION

OR TRUST

**B. CONTINGENT BENEFICIARY**    First, Middle Initial, Last    Relationship to Insured
1. Estate of the Insured
2.
3.

Box (1) or (2) may be selected to include all of the children or brothers and sisters without naming them, or to add to the contingent beneficiaries named. Box (3) may be selected to provide for the children of a deceased contingent beneficiary; use only if contingent beneficiaries are named and/or Box (1) or (2) is checked. NOTE: The word "children" includes child and any legally adopted child.

☐ (1) and all (other) children of the Insured.
☐ (2) and all (other) brothers and sisters of the Insured born of the marriage of or legally adopted by _____
    and _____ before the Insured's death.
☐ (3) any amount that would have been paid to a deceased contingent beneficiary, if living, will be paid in one sum and in equal shares to the children of that contingent beneficiary who survive and receive payment.

**C. FURTHER PAYEES**    First, Middle Initial, Last    Relationship to Insured

**D. SEE ATTACHED SUPPLEMENT FORM (To be used in place of designations above.)**

TRUSTEE AS BENEFICIARY If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under a payment plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be as provided in the contract as though the trustee had not been named. The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**14.   RESERVED**

Has the premium for the policy applied for been given to the agent in exchange for the Conditional Life Insurance Agreement with the same number as this application?    ☒ Yes   ☐ No

A. Will the insurance applied for replace any Northwestern Mutual Life insurance (or annuities) on the Insured's life?    ☐ Yes   ☒ No
   If yes, agent should explain and send required papers.
B. Will the insurance applied for replace life insurance (or annuities) on the Insured's life from a source other than the Northwestern Mutual Life?    ☐ Yes   ☒ No
   If yes, agent should explain and send required papers.
C. Will the replacement result in a 1035 exchange?    ☐ Yes   ☒ No
   If yes, agent should explain and send required papers.
**EXPLANATION:**

**19.   RESERVED**

90-1 L.I. (0498)

**LIFE INSURANCE APPLICATION**
Page 4

## PERSONAL HISTORY QUESTIONNAIRE

□ Payor Benefit for Applicant (Payor) _____
FIRST                    MIDDLE INITIAL                    LAST

Payor's Date of Birth _____ Policy Number _____ Relationship to Insured _____
MONTH   DAY   YEAR

**20** Has the Insured ever had life, disability or health insurance declined, rated, modified, issued with an exclusion rider, cancelled, or not renewed? If yes, explain in ADDITIONAL REMARKS.    □ Yes  ☒ No

**21** When was the Insured's last examination or application for life, disability or accidental death insurance?
Month _____ Year 2002 Company William Penn _____ OR    □ None

**22** Indicate below whether any other life insurance on the Insured is Individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C) or □ NONE.

| Company Name | Ind or Grp | In Force Amount | Pending Amount | Contemplated Amount | Accidental Death Amount |
|---|---|---|---|---|---|
| William Penn | | 1,000,000 | | | |
| William Penn | | 500,000 | | | |

**23** Insured's Marital Status: □ Single, Widowed or Divorced  ☒ Married

**24** A. Insured is a citizen of: ☒ U.S.A.  □ Other
If other: Type of Visa _____ Visa Number _____
B. How many years has the Insured resided in the U.S.A. immediately prior to completing this application? 35 years

**25** Does the Insured regularly travel outside the U.S.A. or have plans to leave the U.S.A. for travel or residence?    □ Yes  ☒ No
If yes, explain in the chart below.

| Destination (List all Cities and Countries) | Number of Trips Last 12 Months | Number of Trips Next 12 Months | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**26** A. What is the Insured's occupation(s)? Bank Officer
What are the Insured's duties? Product Manager
B. Employer's Name: J. P. Morgan Chase
Address: 1 CMP
City, State, Zip Code: NY NY 10081
C. How long has the Insured been employed? 11 yrs. years (If less than 2 years, explain in ADDITIONAL REMARKS)

**QUESTIONS 27 THROUGH 30 ARE NOT REQUIRED IF THE INSURED IS UNDER AGE 16.**

**27** Is the Insured a member of, or does the Insured plan on joining any branch of, the Armed Forces or reserve military unit? If yes, complete the Military Section.    □ Yes  ☒ No

**28** Except as a passenger on a regularly scheduled flight, has the Insured flown within the past 2 years, or does the Insured have plans to fly in the future? If yes, complete the Aviation Section.    □ Yes  ☒ No

**29** In the past 2 years, has the Insured participated in or does the Insured have plans to participate in: racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, or rodeos? If yes, complete the Avocation Section.    □ Yes  ☒ No

**30** A. What is the Insured's automobile driver's license number? # 107 208 268 _____ State NY
or, □ the Insured does not have a driver's license.
B. In the past 5 years, has the Insured been in a motor vehicle accident, has the Insured been convicted of a moving violation of any motor vehicle law, or has the Insured's driver's license been restricted, suspended or revoked?    □ Yes  ☒ No
If yes, complete the chart below.

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## ADDITIONAL REMARKS

90-1 L.I. (0496) NEW YORK

**LIFE INSURANCE APPLICATION**
Page 5

| INSURED NAME (First, Middle Initial, Last) | POLICY NUMBER |
|---|---|
| | 326366 |

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid, if: the Insured is living at the time; and the answers and statements in the application are then true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Life Insurance Agreement with the same number as this application.

(3) If the policy is issued in an extra premium class, acceptance of the policy will amend it so that extended term insurance can be in force only if: the Company gives its consent; or the loan value is not large enough to grant a premium loan. If a premium is not paid within the grace period and extended term insurance cannot be in force, paid-up insurance will be selected.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

### INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize The Northwestern Mutual Life Insurance Company, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information on this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristic; insurance. This authorization extends to information on the use of alcohol, drugs and tobacco; the diagnosis or treatme transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it ex. information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to The Northwestern Mutual Life Insurance Company or its representatives on receipt of this authorization. The Northwestern Mutual Life Insurance Company or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize The Northwestern Mutual Life Insurance Company to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 30 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

The Owner of the policy applied for herein certifies, under penalties of perjury, (1) that the Taxpayer Identification Number given for the Owner on the first page of this application is the Owner's correct Taxpayer Identification Number (or the Owner is waiting for a number to be issued) and (2) the Owner is not subject to backup withholding either because the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the Owner that the Owner is no longer subject to backup withholding, and (3) that the Owner is a U.S. person (includes U.S. citizen, resident alien, and others as defined by the IRS). (See Taxpayer Identification Number instructions.)

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

The signatures below apply to the authorization, the application and the certification of Taxpayer Identification Number.

Signature of INSURED (if other than Applicant and 15 years of age or over)
Print name of Insured if under age 15.

Signature of APPLICANT — _Kenneth E. Weber_

Signed by Applicant at CITY, COUNTY, STATE — _N.Y., N.Y._

Signature of PARENT OR GUARDIAN
(if other than Applicant and Insured is a minor)

Signature of OWNER
(if other than Applicant or Insured)

DATE Signed by Applicant — MONTH _05_  DAY _22_  _20 4_

Signature of LICENSED AGENT — _Daniel Stern_

90-1 L.I. (0496) NEW YORK

027458

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 E. WISCONSIN AVENUE, MILWAUKEE, WISCONSIN 53202

## PARAMEDICAL QUESTIONNAIRE

INSURED NAME (First, Middle Initial, Last)  **Kenneth Wilson**

Each question must be individually asked and answered. Give details of "Yes" answers below:

| | | YES | NO | |
|---|---|---|---|---|
| **31.** | Have you used tobacco or nicotine in any form in the last 10 years? If 'yes', indicate type and date last used: | ☐ | ☑ | For all "Yes" responses: |
| | ☐ Cigarette, pipe, snuff, chewing tobacco, nicotine gum, nicotine patch or other form of nicotine . . . . . . . . . . Date last used ___/___/___ | | | • Identify question number. • State signs, symptoms and diagnosis of each illness or injury. • List the details and results of any treatment. |
| | ☐ Cigar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date last used ___/___/___ | | | • For each health care provider consulted, list the name, full address, telephone number and date. |
| | Frequency of cigar use . . . . . . . . . . . . . . . . . No. per year ___ | | | |

DETAILS

| | | YES | NO |
|---|---|---|---|
| **32.** | Are you taking medication or drugs (legal or illegal, prescription or nonprescription) for any reason? If yes, list and explain. | ☐ | ☑ |

| | | YES | NO |
|---|---|---|---|
| **33.** | In the last 10 years, have you been told you had or been treated for: | | |
| a. | Disorder of eyes (including double vision), ears, nose, mouth, throat or speech? | ☐ | ☑ |
| b. | Dizziness, loss of balance, headaches, seizures or convulsions, muscle weakness, tremor, paralysis, stroke, memory loss, or any disease of the brain or nervous system? | ☐ | ☑ |
| c. | Anxiety, depression, stress, or any psychological or emotional condition or disorder? | ☐ | ☑ |
| d. | Persistent shortness of breath, hoarseness, cough, coughing up blood, asthma, emphysema, tuberculosis, or any lung or respiratory disorder? | ☐ | ☑ |
| e. | Jaundice, hepatitis, intestinal bleeding, ulcer, hernia, colitis, diverticulitis, recurrent indigestion, or any disorder of the stomach, intestines, liver, gall bladder or pancreas? | ☐ | ☑ |
| f. | High blood pressure, chest pain, chest discomfort, chest tightness, irregular heart beat, heart murmur, heart attack or any disorder of the heart or blood vessels? | ☐ | ☑ |
| g. | Sugar, albumin, blood or pus in the urine, sexually transmitted or venereal disease, or any disorder of the kidney, bladder, prostate or reproductive organs? | ☐ | ☑ |
| h. | Diabetes, thyroid or any glandular (endocrine) disorder? | ☐ | ☑ |
| i. | Cancer, tumor, polyp, or disorder of the lymph gland(s) or breast(s)? | ☐ | ☑ |
| j. | Anemia, bleeding tendency, or any disorder of the blood? | ☐ | ☑ |
| k. | Arthritis, sciatica, gout, or any disorder of the muscles, bones, joints, spine, back or neck? | ☐ | ☑ |
| l. | Chronic or unexplained fatigue, fever, or illness? | ☐ | ☑ |
| m. | Any allergies? | ☐ | ☑ |
| n. | Any disorders of the skin? | ☐ | ☑ |
| o. | Deformity, lameness or amputation? | ☐ | ☑ |

| | | YES | NO |
|---|---|---|---|
| **34.** | a. Have you sought or received counseling or treatment for the use of alcohol or drugs or had any symptoms of alcohol abuse or drug addiction? | ☐ | ☑ |
| | b. In the last 10 years, have you used marijuana, cocaine, heroin, amphetamines or hallucinogens? | ☐ | ☑ |
| | c. In the last 10 years, have you used any tranquilizers, sedatives or narcotic drugs? | ☐ | ☑ |
| | d. In the last 10 years, have you used legally prescribed drugs in excess of dosage prescribed by a physician or medical practitioner? | ☐ | ☑ |

| | | YES | NO |
|---|---|---|---|
| **35.** | Are you pregnant?  If yes, due date: ___ | ☐ | ☐ |

DOC. REC'D
AS 13

NEW YORK                                                                 90-0976-62 (page 1 of 2)

027458

**INSURED NAME (First, Middle Initial, Last)**   Kenneth Wilson

Each question must be individually asked and answered. Give details of "Yes" answers below:

|  | YES | NO |
|---|---|---|
| **36.** Other than as previously stated on this application, in the last five years have you: | | |
| a. Consulted any other health care provider (medical doctor, psychiatrist, psychologist, chiropractor, counselor, therapist or other)? | ☐ | ☑ |
| b. Been a patient in a hospital, clinic or medical facility? | ☐ | ☑ |
| c. Had any diagnostic studies (EKG, x-ray, blood tests or any other, except for an HIV test)? | ☐ | ☑ |
| d. Had surgery? | ☐ | ☑ |
| e. Been advised to have any test, consultation, hospitalization, or surgery which was not completed? | ☐ | ☑ |

For all "Yes" responses:
• Identify question numbers.
• State signs, symptoms and diagnosis of each illness & injury.
• List the details and results of any treatment.
• For each health care provider consulted, list the name, full address, telephone number and dates.

**DETAILS**

|  | YES | NO |
|---|---|---|
| **37.** a. During the last 6 months have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury? | ☐ | ☑ |
| b. Have you ever requested or received payments, benefits, or a pension because of any injury, accident, sickness or disability? | ☐ | ☑ |

|  | YES | NO |
|---|---|---|
| **38.** a. Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide, or any hereditary disease? | ☐ | ☑ |
| b. Family History | | |

| | Age<br>If Living | Medical History or<br>Cause of Death | Age<br>at Death |
|---|---|---|---|
| Father | 70 | | |
| Mother | 63 | } parents | |
| Brothers or<br>Sisters | 38 | | |

DOC. REC'D
AS IS

|  | YES | NO |
|---|---|---|
| **39.** Have you lost weight in the past 6 months? | ☐ | ☑ |
| If yes, loss was _____ lbs. | | |
| Reason for weight loss _____ | | |

**40.** (Do not complete for Disability insurance)
If the insured is under age 1, what was the weight at birth? _____ lbs. _____ ozs.

|  | YES | NO |
|---|---|---|
| **41.** Have you ever been diagnosed as having or been treated for AIDS and/or ARC? | ☐ | ☑ |

**42.** Who is your regular or personal physician, doctor or health care provider? ☐ None
Name: Dr Patel, Sanil
Address: Queens Blvd.
City, State & Zip Code: Forest Hills NY 11375
Date last seen: 2-05  Phone number: 718 26F 1750
Reason: Check up

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signed in my presence  ►                                    ►  Kenneth E. Wilson
                                                                Signature of INSURED (or Parent/Guardian)
Signature of Licensed Agent/Registered Representative
05/29/2005
DATE SIGNED (mm/dd/yy)

98-60 (Insert) New YORK                                                              (page 2 of 2)

If you or your provider reside in a state requiring one or more changes to the provisions on page one of this form, then the identified provisions apply to your Authorization.

### Arizona
This Authorization is valid for 180 days from the date it is signed for HIV related information.

### California
This Authorization includes information on the diagnosis or treatment of AIDS and sexually transmitted diseases.

### Kansas
This Authorization is valid for 12 months from the date it is signed.

### Maine
This authorization excludes disclosure of the result of a test for HIV if the Insured has tested HIV positive but has not developed symptoms of the disease AIDS. Such test results shall not be discovered or published. Nothing in this caveat shall otherwise prohibit this Authorization from including other facts and information relative to the fact that the Insured has AIDS.

### Minnesota
This Authorization is valid for 26 months from the date it is signed. The Authorization excludes the release of information about HBV (Hepatitis B Virus), HCV (Hepatitis C Virus), or HIV (Human Immunodeficiency Virus) tests which were administered (1) to a criminal offender or crime victim as a result of a crime that was reported to the police; (2) to a patient who received the services of emergency medical services personnel at a hospital or medical care facility; (3) to emergency medical personnel who were tested as a result of performing emergency medical services. The term "emergency medical personnel" includes individuals employed to provide pre-hospital emergency services; licensed police officers, firefighters, paramedics, emergency medical technicians, licensed nurses, rescue squad personnel, or other individuals who serve as volunteers of an ambulance service who provide emergency medical services; crime lab personnel, correctional guards, including security guards, at the Minnesota security hospital, who experience a significant exposure to an inmate who is transported to a facility for emergency medical care; and other persons who render emergency care or assistance at the scene of an emergency, or while an injured person is being transported to receive medical care and who would qualify for immunity under the Good Samaritan law.

### New Jersey
This Authorization includes information on the diagnosis or treatment of AIDS and sexually transmitted diseases.

### New Mexico
"Confidential abuse information" means information about acts of domestic abuse or abuse status, the work or home address or telephone number of a victim of domestic abuse or the status of an applicant or insured as a family member, employer or associate of a victim of domestic abuse or a person with whom an applicant or insured is known to have a direct, close personal, family or abuse-related counseling relationship. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.
With respect to confidential abuse information, I may revoke this Authorization in writing, effective ten days after receipt by The Northwestern Mutual Life Insurance Company, but that doing so may result in an application or claim being denied or may otherwise adversely affect a pending insurance action.

### New York
This Authorization includes information on the diagnosis or treatment of AIDS, ARC, and sexually transmitted diseases.

### Oklahoma
This Authorization is valid for 24 months from the date it is signed. We are required to inform you that the information you authorize for release may include records which may indicate the presence of communicable or venereal diseases, which may include, but are not limited to, diseases such as hepatitis, syphilis, gonorrhea and the human immunodeficiency virus, also known as Acquired Immune Deficiency Syndrome (AIDS).

### Oregon
This Authorization is valid for 24 months (or 180 days for HIV related information) from the date it is signed.

### Vermont
This Authorization is valid for 24 months from the date it is signed. It excludes the release of any information about previously administered tests for HIV antibodies, T-cell counts, AIDS or ARC. The proposed Insured IS NOT authorizing the Company to forward the results from any new test required by the Company to any outside, non-affiliated company or any entity not under specific contract to perform underwriting services.

**The signature on page one of this Authorization acknowledges that the entire Authorization includes the applicable state variations as listed above.**

SEND ORIGINAL WITH APPLICATION – GIVE A COPY TO PROPOSED INSURED
THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT

17-1278 Life and DI (04/03)    WORD 2000-E
(Page 2 of 2)

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 East Wisconsin Avenue, Milwaukee, WI 53202

### This Authorization complies with the HIPAA Privacy Rule

### Authorization for Release of Health-Related Information
### to The Northwestern Mutual Life Insurance Company

Kenneth  Wilson                                    12/31/1968

Name of Patient/Proposed Insured (please print)          Date of Birth (MM/DD/YYYY)

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided payment, treatment or services to me or on my behalf within the past 10 years ("My Providers") to disclose my entire medical record to The Northwestern Mutual Life Insurance Company (Northwestern Mutual) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

By signing below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This protected health information is to be disclosed under this Authorization so that Northwestern Mutual may: 1) underwrite my application for coverage, make eligibility, risk rating, policy issuance and enrollment determinations; 2) obtain reinsurance; 3) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 4) administer coverage; and 5) conduct other legally permissible activities that relate to any coverage I have or have applied for with Northwestern Mutual.

This Authorization shall remain in force for 30 months following the date of my signature below, and a copy of this Authorization is as valid as the original. I understand that I have the right to revoke this Authorization in writing, at any time, by sending a written request for revocation to Northwestern Mutual at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, Attention: Vice President New Business. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Northwestern Mutual has a legal right to contest a claim under an insurance policy or to contest the policy itself. I understand that information disclosed to Northwestern Mutual pursuant to this Authorization is no longer covered by the HIPAA Privacy Rule; and that in the course of conducting its business, Northwestern Mutual may release information it has about me to affiliates, reinsurers, and any person performing business or legal service for Northwestern Mutual and as permitted or required by law.

I understand that if I alter, revoke, or refuse to sign this Authorization to release my entire medical record, Northwestern Mutual may not be able to process my application, or if coverage has been issued may not be able to make any benefit payments. I further understand that My Providers cannot condition treatment, payment, enrollment, or eligibility for benefits on whether I sign this Authorization. I acknowledge by my signature below, that I have a right to receive, and have in fact received, a copy of this Authorization:

X Kenneth S. Wilson                                  05/22/2004

Signature of Patient/Proposed Insured  (or Parent or Guardian)          Date (MM/DD/YYYY)


Relationship to Patient/Proposed Insured


Address of Parent or Guardian, if signing

Some states' rules concerning Authorizations change the terms and provisions above. The terms and provisions on page two of this document are part of this Authorization and apply in the identified states.
SEND ORIGINAL WITH APPLICATION – GIVE A COPY TO PROPOSED INSURED
THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT

17-1276 Life and DI (0403)                                    WORD 2000-FE
                                                              (Page 1 of 2)



DOC. REC'D
AS IS

The Northwestern Mutual Life Insurance Company
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

Northwestern Long Term Care Insurance Company
Administration Office, P.O. Box 5709
Hopkins, Minnesota 55343-5709

# NEW YORK NOTICE AND CONSENT FOR AIDS-RELATED BLOOD OR SALIVA TESTING

To evaluate your insurability, the insurer named above (the insurer) has requested that you provide a sample of your blood or saliva for testing and analysis to determine the presence of human immunodeficiency virus (HIV) antibody or antigens. By signing and dating this form, you agree that this test may be done and that underwriting decisions will be based on the test results. A series of at least three tests will be performed by a licensed laboratory through a medically accepted procedure. These tests may include enzyme-linked immunosorbent assay tests and a Western blot test.

## MEANING OF POSITIVE TEST RESULT

The test is not a test for AIDS. It is a test for antibodies to or antigens of HIV, the causative agent for AIDS, and shows whether you have been exposed to the virus. A positive test result does not mean that you have AIDS, but that you are at significantly increased risk of developing problems with your immune system. The HIV test is very sensitive and specific. Errors are very rare, but they could occur. If your test result is positive, you may wish to consider further independent testing. Your private physician, a public health clinic, or an AIDS information organization in your city might provide you with further information on the medical implications of a positive test. Positive HIV test results mean that your insurance application will be declined.

## CONFIDENTIALITY OF TEST RESULTS

All test results will be treated confidentially. They will be reported by the laboratory to the insurer. When necessary in connection with insurance you have applied for with the insurer, the insurer may disclose test results to others such as its affiliates, reinsurers or employees. If your HIV test is abnormal, a generic code signifying a nonspecific blood or saliva abnormality may be made known to the Medical Information Bureau (MIB, Inc.) as described in the notice given at the time of application. The fact that the test has been done and the results of the test will not otherwise be disclosed except as may be required by law or as authorized by you.

## NOTIFICATION OF TEST RESULTS

If your test results are negative, no routine notification will be sent to you. If your test results are other than normal, you are entitled to that information if you so desire. You are asked to designate a physician to receive abnormal test results. This physician can best discuss the test results with you and explain their significance. Please provide the following information about your personal physician (or other person to whom you would like positive test results disclosed):

| PHYSICIAN'S NAME | | STREET ADDRESS | |
|---|---|---|---|
| CITY | | STATE | ZIP CODE |

If you would prefer to have the test results sent to you at the address given below, initial here.  [ *kw* ]

## FURTHER INFORMATION

For further information about AIDS, the meaning of AIDS-related test results, and the availability and location of AIDS-related counseling services, contact the Department of Health through its state-wide toll-free telephone number, 1-800-541-AIDS.

## CONSENT

I have read and I understand this Notice and Consent for AIDS-Related Blood or Saliva Testing. I voluntarily consent to provide a sample of blood or saliva from me, the testing of that blood or saliva and the disclosure of the test results as described above. A photocopy or facsimile of this form will be as valid as the original. I further acknowledge receipt of a copy of this form signed by me.

| *Kenneth E. Wilson* (signature) | 05/89/04 |
|---|---|
| SIGNATURE OF PROPOSED INSURED (OR PARENT/GUARDIAN) | DATE SIGNED (MM/DD/YY) |

| NAME OF PROPOSED INSURED (PRINT) | | | DATE OF BIRTH (MM/DD/YY) |
|---|---|---|---|
| Kenneth   Wilson | | | 12/31/196P |
| STREET ADDRESS | CITY | STATE | ZIP CODE |
| 70  Brookside  Place | New Rochelle | NY | 10801 |

TX-9366 (PRINT) New York     SEND ORIGINAL WITH APPLICATION/EXAM — GIVE A COPY TO PROPOSED INSURED
THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT     WORD 3-FE

**REPLICA**

It is recommended that you . . .

read your policy.

notify your Northwestern Mutual agent or the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**TERM LIFE POLICY**

**Participating**

Insurance payable on death of Insured before Expiry Date. Convertible on or before the Final Conversion Date. Premiums are payable to the Expiry Date shown on page 3.

RS.TERM.(042000)

 Northwestern Mutual