UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

MICHELLE WILSON                                        Civil Action No. 07 CV 2790
                                                       (CLB)
                           Plaintiff,


            -against-


NORTHWESTERN MUTUAL INSURANCE COMPANY,


                           Defendant.
-----------------------------------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF THE
NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT**




RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Attorneys for Defendant
The Northwestern Mutual Life
Insurance Company




Of Counsel:
Norman L. Tolle

## TABLE OF AUTHORITIES

### CASES

Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25 (2d Cir. 1996)...........................9

Andy Warhol Found. for the Visual Arts, Inc. v. Fed. Ins. Co., 189 F. 3d 208 (2d Cir. 1999)......2

Botway v. Amer. Int'l Assurance Co., 151 A.D.2d 288 (1st Dep't 1989) ......................................18

Breed v. Insurance Co. of N. Am., 46 N.Y. 2d 351 (1978)................................................3

Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208 (N.Y. 2002).................................3

Dicola v. American S.S. Owners Mut. Prot. & Indem. Ass'n Inc., 153 F. 3d 65 (2d. Cir. 1998)...2

Doyle v. Allstate Ins. Co., 1 N.Y.2d 439 (1956) ...........................................................................16

Drattel v. Toyota Motor Corp., 92 N.Y.2d 35 (N.Y. 1998)............................................................15

Gaidon v. The Guardian Life Ins. Co. of Amer., 94 N.Y.2d 330 (1999) ......................................11

Gold v. Nationwide Mutual Ins. Co., 273 A.D.2d 354 (2d Dep't 2000) .......................................16

Grennan v. Nassau County, 2007 U.S. Dist. LEXIS 23087 (E.D.N.Y. Mar. 27,2007).................10

Grimsey v. Lawyers Tit. Ins. Corp., 31 N.Y.2d 953 (1972)..........................................................16

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007)..........................................................................2

Hannex Corp. v. GMI, Inc., 1991 U.S. Dist. LEXIS 17809 (E.D.N.Y. 1991) ..............................10

Harary v. Allstate Ins. Co., 983 F. Supp. 95 (E.D.N.Y. 1997)......................................................12

Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2001) ...........................................2

Hooper Assoc. v. AGS Computers, 74 N.Y. 2d 487 (1989)................................................3

Kline v. Schaum, 173 Misc. 2d 108, 661 N.Y.S.2d 906 (App. Term 2d Dep't 1997)...................18

Kopec v. Hempstead Gardens, Inc., 264 A.D. 2d 714 (2d Dep't 1999)..............................18

Lauer v. City of New York, 95 N.Y. 2d 95 (N.Y. 2000)................................................15

M.S.R. Assoc. Ltd. v. Consol. Mut. Ins. Co., 58 A.D.2d 858, 396 N.Y.S.2d 684
(2d Dep't 1977) ..............................................................................................................................18

MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582 (E.D.N.Y. 1997)......................................12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106
S. Ct. 1348, 89 L. Ed. 2d 538 (1986)..................................................................................2

Mazzuoccolo v. Cinelli, 245 A.D.2d 245 (1st Dep't 1997) ..........................................16

Mighty Midgets v. Centennial Ins. Co., 47 N.Y.2d 12 (1979) ......................................16

Morano v. Oral Research Lab., Inc., 191 A.D.2d 258 (N.Y. App. Div. 1993) ..............19

Mount Vernon Fire Ins. Co. v. Belize N.Y. Inc., 277 F.3d 232 (2d Cir. 2002) ..............3

Munoz v. Puretz, 753 N.Y.S. 2d 463 (1st Dep't 2003)...................................................18

Natl Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520 (2d Cir. 2004)............9

New York University v. Continental Insurance, Co., 639 N.Y.S.2d 283 (N.Y.
1995).......................................................................................11, 12, 16, 18, 19

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
623 N.Y.S.2d 529 (1995)........................................................................11, 12

Philips v. Republic Ins. Co., 108 A.D.2d 845, 485 N.Y.S.2d 566 (2d Dep't 1985),
aff'd, 65 N.Y.2d 1000, 494 N.Y.S.2d 301 (1985)...........................................19

Pulka v Edelman, 40 N.Y.2d 781(1976) .......................................................................15

Rice v. Univ. of Rochester Med. Ctr., 2007 NY Slip Op 10297 (4th Dep't, Dec. 21, 2007).......18

RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406 (S.D.N.Y. 2004) ............9

Rocanova v Equitable Life Assurance Society, 83 N.Y.2d 603, 612
N.Y.S.2d 339 (1994)..............................................................................17, 20

Supreme Automotive Mfg. Corp. v. Cont. Cas. Co., 126 A.D.2d 153, 512
N.Y.S.2d 820 (1st Dep't 1987) ..................................................................20

Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769 (2d Dept. 1995)................................11, 12

Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114 (2d Cir. 1995) ....3

Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961)........................17, 19, 20

Western World Ins. Co. v. Stack Oil, 922 F.2d 118 (2d Cir. 1990) .................................2

World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F. 3d 154 (2d Cir. 2003)...........3

## STATUTES

Fed. R. Civ. P. 56(c) ........................................................................................................................2

N.Y.S. General Obligation Law § 15-301...............................................................13

N.Y.S. Insurance Law § 4226...............................................................14

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................................................................1

STATEMENT OF FACTS .............................................................................................1

STANDARD OF REVIEW.............................................................................................2

ARGUMENT.................................................................................................................2

I......THE UNAMBIGUOUS LANGUAGE IN THE POLICIES SHOULD BE ACCORDED ITS
PLAIN MEANING........................................................................................................2

II. ....MR. WILSON KNOWINGLY AND WILLINGLY ALLOWED BOTH POLICIES TO
TERMINATE PRIOR TO HIS DEATH ..........................................................................5

   A.   Mr. Wilson Elected to Have the Whole Life Policy Lapse As of February 28, 2005 .........6

   B.   Mr. Wilson Elected to Have the Term Policy Terminate As of February 28, 2005............7

III. ... SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON
PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF CONTRACT........................................9

IV.... SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON
PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF GBL § 349 ..................................11

V. .... SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON
PLAINTIFF'S CAUSES OF ACTION ALLEGING VIOLATION OF NEW YORK'S
GENERAL OBLIGATION LAW AND INSURANCE LAW .......................................................13

VI.... SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON
PLAINTIFF'S FIFTH CAUSE OF ACTION .............................................................................15

VII. ...SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL
ON PLAINTIFF'S SIXTH CAUSE OF ACTION......................................................................16

VIII. ...SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL
ON PLAINTIFF'S SEVENTH CAUSE OF ACTION ................................................................17

CONCLUSION ...........................................................................................................................21

2114832 v1

## PRELIMINARY STATEMENT

Michelle Wilson ("plaintiff") commenced this action against defendant, The Northwestern Mutual Life Insurance Company (incorrectly named as Northwestern Mutual Insurance Company) ("Northwestern Mutual") with the filing of a Summons and Verified Complaint on or about March 7, 2007 seeking the proceeds of two life insurance policies issued by Northwestern Mutual to her late husband, Kenneth Wilson -- Whole Life Policy No. 16,852,083 in the face amount of $150,000 (the "Whole Life Policy") and Term Life Policy No. 16,852,105 in the face amount of $350,000 (the "Term Life Policy") (collectively the "Policies"). On or about May 23, 2007, plaintiff filed a First Amended Complaint (the "Complaint"), a true and correct copy of which is annexed to the Affirmation of Norman L. Tolle as Exhibit "1." The Complaint alleges that Northwestern Mutual had untimely notified the plaintiff that it would not pay the proceeds of the Policies, engaged in misleading and deceptive practices in denying plaintiff's claim for the proceeds of the Policies, violated New York State's General Obligation Law and New York State Insurance Law, and is liable for negligence, carelessness and /or recklessness. The Complaint demands $500,000 as well as costs and attorneys' fees. On June 5, 2007, Northwestern Mutual served its Answer to Plaintiff's Complaint. A true and correct copy of Northwestern Mutual's Answer is annexed as Exhibit "2" to the Tolle Affirmation. In accordance with Judge Charles L. Brieant's Order issued at the Interim Pretrial Conference held on December 7, 2007, Northwestern Mutual now moves for summary judgment dismissing plaintiff's Complaint in its entirety.

## STATEMENT OF FACTS

The facts supporting this motion for summary judgment are contained in the Rule 56.1 Statement accompanying this Memorandum of Law, and are further supported by the

Affirmation of Norman L. Tolle, Esq,, the Affidavits of Cylvia Prince, Diane Knueppel, Joyce

Barrack and Paulette Getschman, and the exhibits annexed thereto. For purposes of this

memorandum, those factual assertions are not repeated, but are incorporated by reference as

though set forth at length herein.

## STANDARD OF REVIEW

Summary judgment must be granted where "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). Furthermore, "... mere speculation and

conjecture is insufficient to preclude the granting of the motion." Id. (*citing* Harlen Assocs. v.

Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Western

World Ins. Co. v. Stack Oil, 922 F.2d 118, 121 (2d Cir. 1990)).

In the case at hand, there are no issues as to material facts. The Whole Life Policy and

the Term Life Policy were both terminated at the direction of the insured, Kenneth Wilson, as of

February 28, 2005. Accordingly, there can be no sustainable cause of action for breach of

contract, for statutory violations or for negligence, and summary judgment dismissing plaintiff's

Complaint in its entirety must be granted to Northwestern Mutual.

## ARGUMENT

## I.    THE UNAMBIGUOUS LANGUAGE IN THE POLICIES
SHOULD BE ACCORDED ITS PLAIN MEANING

"We start our analysis with the premise than an insurance policy, like any contract, must

be construed to effectuate the intent of the parties as derived from the plain meaning of the

policy's terms." Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co., 189 F. 3d

208, 215 (2d Cir. 1999) (*citing* Dicola v. American S.S. Owners Mut. Protection & Indem.

2

Ass'n, Inc., 153 F. 3d 65, 77 (2d Cir. 1998). *See, also*, World Trade Ctr. Props., L.L.C. v.

Hartford Fire Ins. Co., 345 F. 3d 154, 184 (2d Cir. 2003) ("Applying New York law, we have

held that the cardinal principle for the construction and interpretation of insurance – as with all

contracts – is that the intentions of the parties should control. Unless otherwise indicated, words

should be given the meanings ordinary ascribed to them and absurd results should be avoided.");

Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 221-222 (N.Y. 2002) ("In

determining a dispute over insurance coverage, we first look to the language of the policy (see

Breed v Insurance Co. of N. Am., 46 N.Y.2d 351, 354, 413 N.Y.S.2d 352, 385 N.E.2d 1280

[1978]). We construe the policy in a way that "affords a fair meaning to all of the language

employed by the parties in the contract and leaves no provision without force and effect"

(Hooper Assoc. v AGS Computers, 74 NY2d 487, 493, 548 N.E.2d 903, 549 N.Y.S.2d 365

[1989])"; Mount Vernon Fire Ins. Co. v. Belize N.Y. Inc., 277 F. 3d 232, 236-37 (2d Cir. 2002)

(*quoting* Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F. 3d 114, 115 (2d Cir.

1995) ("The New York approach to the interpretation of contracts of insurance is 'to give effect

to the intent of the parties as expressed in the clear language of the contract.'"

In the case at hand, the terms of the Policies are clear and unambiguous, and so must be

accorded their plain meanings. A replica of the Whole Life Policy is annexed as Exhibit "J" to

the Affidavit of Cylvia Prince, a Northwestern Mutual Research Specialist. The terms of the

Whole Life Policy provide that premiums may be paid every 3, 6 or 12 months or on any other

frequency approved by Northwestern Mutual. The provision of the Whole Life Policy which so

state are set forth at pg. 8 of the Whole Life Policy as follows:

> **Frequency.** Premiums may be paid every 3, 6 or 12 months at the
> published rates of the Company. A change in premium frequency will
> take effect when the Company accepts a premium on a new frequency.

3

> Premiums may be paid on any other frequency approved by the
> Company.

Mr. Wilson elected to pay the premiums for the Whole Life Policy on a monthly basis.

*See* Exhibit "L" to the Prince Affidavit.

The Whole Life Policy provides for a 31-day grace period during which the policyholder

can pay a premium that was not paid on its due date, and further provides that the policy will

terminate if the premium is not paid within that grace period. The provisions of the Whole Life

Policy which so state are set forth at pg. 8 of the Whole Life Policy as follows:

> **Grace Period.** A grace period of 31 days will be allowed to pay a
> premium that is not paid on its due date. The Policy will be in full
> force during this period. If the Insured dies during the grace period,
> any overdue premium will be paid from the proceeds of the policy.
>
> If the premium is not paid within the grace period, the policy will
> terminate as of the due date unless it continues as extended term or
> paid-up insurance under Sections 7,2 or 7.3.[1]

A copy of the Term Life Policy is annexed as Exhibit "K" to the Prince Affidavit. The

Term Life Policy also provides that premiums may be paid every 3, 6 or 12 months or on any

other frequency approved by Northwestern Mutual. The provisions of the Term Life Policy

which so state are set forth at pg. 6 of the Term Life Policy as follows:

### 3.3 FREQUENCY

> Premiums may be paid every 3, 6 or 12 months at the published rates
> of the Company. A change in premium frequency will take effect
> when the Company accepts a premium on a new frequency. Premiums
> may be paid on any other frequency approved by the Company.

Mr. Wilson elected to pay the premiums on the Term Life Policy on a monthly basis.

*See* Exhibit "L" to the Prince Affidavit.

---

[1] The Policy did not continue as extended term or paid-up insurance.

The Term Life Policy also provides for a 31-day grace period during which the policyholder can pay a premium that was not paid on its due date, and it, too, further provides that the policy will terminate if the premium is not paid within the grace period. The provisions of the Term Life Policy which so state are set forth at pg. 6 of the Term Life Policy as follows:

3.4 GRACE PERIOD

> A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The policy will be in full force during this period. If the Insured dies during the grace period, any overdue premium will be paid from the proceeds of the policy.
>
> If the premium is not paid within the grace period, the policy will terminate as of the due date.

## II.     MR. WILSON KNOWINGLY AND WILLINGLY ALLOWED BOTH POLICIES TO TERMINATE PRIOR TO HIS DEATH

Northwestern Mutual offers its policyholders the option of opening an Insurance Service Account ("ISA") through which to pay the premiums on their insurance policies. Kenneth Wilson elected to set up an ISA (the "Wilson ISA"), and to have funds electronically transferred each month from his bank account into the ISA to pay the premiums for both the Whole Life Policy and the Term Life Policy. Annexed as Exhibit "L" to the Prince Affidavit is a copy of the ISA PLUS Request form signed by Mr. Wilson on May 22, 2004. On four occasions between August 2004 and May 2005, the ISA was closed, and the premium payments reversed, because the electronic funds transfer ("EFT") was rejected by Mr. Wilson's bank. On three of those occasions, a subsequent EFT payment was made, the ISA was reopened, and the premiums were ultimately paid. See ¶¶ 11 – 18 of the Prince Affidavit.

5

## A.    Mr. Wilson Elected to Have the Whole Life Policy Lapse As of February 28, 2005

On April 7, 2005, the premium payments for the Policies that had been due on February 28, 2005 and March 29, 2005 were reversed because there was a negative balance in the Wilson ISA. See Prince Affidavit at ¶ 20. The Policies were removed from the ISA and the ISA was closed on April 12, 2005.

On April 27, 2005, Mr. Wilson telephoned Northwestern Mutual and spoke to Melissa Nowak, a Customer Service Representative in the Policyowner Services Department. *See* Affidavit of Paulette Getschman at ¶ 4.  That telephone call was memorialized, in accordance with the Northwestern's usual business practice, on Northwestern's Casetracker system. Getschman Affidavit at ¶ 3.  During the April 27, 2005 telephone call, Mr. Wilson requested that his ISA be reopened, but only for the Term Life Policy, and that sufficient funds be transferred from his bank account to the ISA, via a one-time draft, to pay the premiums on the Term Life Policy to December 28, 2005.  Id.  In accordance with Mr. Wilson's request to Ms. Nowak, the Wilson ISA was reopened, with only the Term Life Policy put on the account. See Prince Affidavit at ¶ 22.

Since Mr. Wilson elected not to add the Whole Life Policy to the ISA, it is undisputable that the premium for the Whole Life Policy was only paid through February 28, 2005. Accordingly, the 31-day grace period provided for in the Whole Life Policy ended on March 31, 2005, and, in accordance with the terms of the policy, the Whole Life Policy terminated effective February 28, 2005.

Moreover, Mr. Wilson unquestionably knew that the Whole Life Policy had lapsed.  Not only did he specifically direct Ms. Nowak to add only the Term Life Policy to the ISA (Getschman Affidavit at ¶ 4), but when Mr. Wilson called Northwestern Mutual on May 23,

6

2005, he was informed that the $35 policy fee had been charged to his ISA because he no longer

had multiple policies with Northwestern Mutual due to the termination of the Whole Life Policy.

Mr. Wilson did not contest the fact that the Whole Life Policy had terminated. *See* Affidavit of

Diane Knueppel at ¶ 5. Accordingly, Mr. Wilson was certainly aware, on May 23, 2005, that the

Whole Life Policy had terminated.

### B.    Mr. Wilson Elected to Have the Term Policy Terminate As of February 28, 2005

The EFT payment that Mr. Wilson authorized on April 27, 2005 paid the premiums on

the Term Life Policy for the ten monthly periods ending March 29, April 29, May 29, June 29,

July 29, August 29, September 29, October 29, November 29 and December 29, 2005. The

balance in the ISA Account after paying these premiums on April 29, 2005 was $0.00.

Getschman Affidavit at ¶ 5;  Prince Affidavit at ¶ 23. On May 9, 2005 a premium adjustment of

$35 was made to the ISA account, resulting in a negative balance in that account. Affidavit of

Cylvia Prince at ¶ 24.

On May 23, 2005, Mr. Wilson telephoned Northwestern Mutual and spoke to Diane

Knueppel who was, at that time, a Senior Customer Service Representative. *See* Affidavit of

Diane Knueppel at ¶¶ 1 and 3. Mr. Wilson called to inquire why there was a shortage in his ISA

when he had authorized payment of the premiums on his Term Policy to the end of the year.

Knueppel Affidavit at ¶ 3. In accordance with the Northwestern's usual business practice, that

conversation was memorialized on Northwestern's Casetracker system. Knueppel Affidavit at ¶

4.

Ms. Knueppel researched Northwestern Mutual's records, and called Mr. Wilson back on

the same day, May 23, 2005, to inform him that there was a shortage in his ISA because a policy

fee had been charged to that account. She further explained to Mr. Wilson that the $35 policy

7

fee is waived for those individuals who have more than one Northwestern Mutual policy, but that, since Mr. Wilson's Whole Life Policy had terminated, he currently had only one policy with Northwestern Mutual, and therefore had to pay the $35 policy fee. Knueppel Affidavit at ¶ 5.

In response to the information provided by Ms. Knueppel, Mr. Wilson requested that Northwestern Mutual refund his last premium payment for the Term Life Policy (the payment that covered March through December 2005), and let the Term Life Policy lapse. Ms. Knueppel informed Mr. Wilson that she would discuss his request with Northwestern Mutual Field Representative, Daniel Stein, and would call him back. Ms. Knueppel's conversation with Mr. Wilson was memorialized, as per the usual business practice of Northwestern Mutual, in the Casetracker system. Knueppel Affidavit at ¶ 6.

On the same day, Ms. Knueppel called Mr. Stein who stated that Mr. Wilson's request was fine with him. Ms. Knueppel's conversation with Mr. Stein was also memorialized in the Casetracker system. Knueppel Affidavit at ¶ 7. Ms. Knueppel called Mr. Wilson back on May 23, 2005 and advised him that she would refund the last draft for the Term Life Policy as per his request. Ms. Knueppel's conversation with Mr. Wilson was memorialized, as per the usual business practice of Northwestern Mutual, in the Casetracker system. Knueppel Affidavit at ¶ 8.

On May 23, 2005, in accordance with Mr. Wilson's request, Ms. Knueppel closed the Wilson ISA, and proceeded to take the necessary steps to refund Mr. Wilson's premium payment for the Term Life Policy for the ten-month period of March through December 2005. Knueppel Affidavit at ¶¶ 9-13. Northwestern Mutual's records reflect that seven of the ten premium payments for the Term Life Policy were reversed on May 23, 2005 and $154.07 was refunded to Mr. Wilson by check dated May 31, 2005. Prince Affidavit at ¶ 25. The remaining three

8

premium payments were reversed on May 27, 2005 and a check for $81.03 was issued to Mr. Wilson on May 31, 2005. Affidavit of Joyce Barrack at ¶¶ 5 and 6; Prince Affidavit at ¶ 29.

Since all the premium payments for the Term Life Policy for the periods ending March 29 through December 29, 2005 had been reversed at Mr. Wilson's request, the last premium paid was for the period ending February 28, 2005. Therefore, the 31-day grace period expired on March 31, 2005, and, in accordance with its terms, the Term Life Policy lapsed as of February 28, 2005.

### III. SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF CONTRACT

It is black letter law that: "[t]o establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach. Natl Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520, 525 (2d Cir. 2004) (citing RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004. See, also Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996) ("Two elements give rise to a breach of contract claim: (i) a contract between the parties and (ii) an act allegedly in violation of that agreement. Both are necessary elements of the claim; neither is sufficient by itself.").

In the case at hand, plaintiff alleges that Northwestern Mutual committed breach of contract because "on or about July 21, 2006, in writing the defendant Northwestern, without cause, reason or legal justification, untimely notified the plaintiff, through its agent of its refusal to pay the claims." Complaint at ¶¶ 14-15. Although it is difficult to surmise whether plaintiff's allegation is based on Northwestern's timing or its refusal of the claim, there is no breach of contract in either case because there was no extant contract at the time Mr. Wilson died. See,

9

Hannex Corp. v. GMI, Inc., 1991 U.S. Dist. LEXIS 17809 (S.D.N.Y. 1991) ("An essential element of a breach of contract claim under the law of any jurisdiction is the existence of the contract in the first place").

In a breach of contract claim, the burden of establishing the existence of a contract clearly rests with the plaintiff. *See, e.g.*, Grennan v. Nassau County, 2007 U.S. Dist. LEXIS 23087 (E.D.N.Y. Mar. 27,2007). Plaintiff here has failed to meet that burden. Although she alleges that "Defendant did insure Kenneth Wilson, Deceased from a time prior to June 6, 2005, up to and including June 29, 2005, in a combined amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS in the event of his death," (Complaint at ¶ 8), the reality, as documented in Northwestern Mutual's records, is that both policies had terminated, at Mr. Wilson's direction, as of February 28, 2005, over three months prior to his death.

As detailed above, on April 27, 2005, Mr. Wilson chose to reinstate only the Term Life Policy and to allow the Whole Life Policy to remain lapsed. Getschman Affidavit at ¶ 4. He was again reminded that the Whole Life Policy had terminated when he called Northwestern Mutual on May 23, 2005 to inquire as to the $35 policy fee that had been charged, and he did not seek to reinstate the Whole Life Policy. Accordingly, it is indisputable that Mr. Wilson voluntarily, and with full knowledge, chose to allow the Whole Life Policy to terminate as of February 28, 2005. Knueppel Affidavit at ¶ 5.

Mr. Wilson chose to terminate the Term Life Policy retroactive to February 28, 2005 rather than pay the $35 fee he had been charged once he no longer owned two Northwestern Mutual policies. His instruction to Ms. Knueppel were unambiguous – "Mr. Wilson asked Northwestern Mutual to refund his last premium payment for the term life policy and let the policy lapse." Knueppel Affidavit at ¶ 5. Moreover, Ms. Knueppel confirmed that Mr. Wilson

10

wanted the entire last premium payment refunded when she returned his phone call after speaking to Mr. Stern and "informed client that I am working on refunding the last draft that was done on the ISA." Exhibit "C" to the Knueppel Affidavit. Since he knew that this draft covered the period from March to December 2005, Mr. Wilson also had to know that refunding that draft would result in the policy terminating as of February 28, 2005.

Accordingly, it is indisputable that both Policies lapsed as of February 28, 2005, over three months prior to Mr. Wilson's death on June 6, 2005. Since there was no active policy as of the date of Mr. Wilson's death, there was no contract, and, therefore, no breach of contract, and summary judgment must be granted to Northwestern Mutual on that Cause of Action.

## IV.    SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF GBL § 349

Although Count II of plaintiff's Complaint alternately alleges violation of General Business Law "§349 (h)" and "§ 4226," it will be assumed for the purposes of this brief that her intention was to allege violation of General Business Law ("GBL") § 349 since there is no GBL § 4226 and GBL § 349(h) references only the damages which may be sought under § 349.

To maintain a Cause of Action under GBL §349, a plaintiff must show (1) that the defendant's conduct is "consumer oriented"; (2) that the defendant is engaged in a "deceptive act or practice"; and (3) that the plaintiff was injured by this practice. New York University v. Continental Insurance, Co., 639 N.Y.S.2d 283, 290 (N.Y. 1995); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 623 N.Y.S.2d 529 (1995). Significantly, the conduct complained of must be "aimed at the general public." See Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 775 (2d Dept. 1995). Accordingly, in Gaidon v. The Guardian Life Ins. Co. of Amer., 94 N.Y.2d 330, 344 (1999), the Court of Appeals specifically held that a GBL §349 claim "must be predicated on a deceptive act or practice that is "consumer oriented" and is in "contrast to a private contract dispute

as to policy coverage." The case at hand clearly involves a private dispute, the type of dispute that the Court of Appeals irrefutably placed outside the reach of a GBL §349 claim.

It is well settled that to state a claim under GBL §349, a plaintiff must, "as a threshold matter, ... charge conduct of the defendant that is consumer-oriented," Oswego Laborers, supra, 623 N.Y.S.2d at 532. "Consumer-oriented behavior is defined as conduct that "potentially affect[s] similarly situated consumers." Id. at 533. The plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large." Id. at 532. Accordingly, "[p]rivate contract disputes between the parties", do not "fall within the ambit of the statute." Id.; accord, New York Univ., supra, 87 639 N.Y.S.2d at 290; see, also, Teller, supra, 630 N.Y.S.2d at 772 ("[T]he deceptive act or practice may not be limited to just the parties."); MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("[t]he injury must be to the public generally as distinguished from the plaintiff alone."); Harary v. Allstate Ins. Co., 983 F. Supp. 95, 98 (E.D.N.Y. 1997) (private contractual disputes do not fall within GBL §349 because they are "unique to the parties").

Plaintiff's Second Cause of Action fails to allege consumer-oriented behavior by Northwestern Mutual. The Complaint's allegations that Northwestern Mutual's actions were "misleading and otherwise deceptive" pertain only to Northwestern Mutual's specific dealings with Mr. Wilson, not with the general public. Since the dispute here plainly is "unique to the parties," summary judgment dismissing plaintiff's cause of action for violation of GBL § 349 must be granted to Northwestern Mutual.

## V.  SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S CAUSES OF ACTION ALLEGING VIOLATION OF NEW YORK'S GENERAL OBLIGATION LAW AND INSURANCE LAW

Counts III and IV of Plaintiff's Complaint allege, in identical language, that Northwestern Mutual violated New York's General Obligation Law § 15-301 and New York's Insurance Law.[2] Specifically, plaintiff alleges that: "Northwestern's act of backdating the Policies termination dates is void-voidable as against public policy, and under the circumstances a violation of New York States General Obligation Law § 15-301 as well as New York State Insurance Law requiring advance written notice of cancellation of a life insurance policy…" Complaint at ¶¶ 29 and 32.

General Obligations Law § 15-301 addresses those contracts containing provisions that the contract cannot be changed orally and/or cannot be terminated orally. In this regard, both of Mr. Wilson's Policies contain only the following provision:

### ENTIRE CONTRACT; CHANGES

> This policy with the attached application in the entire contract. Statements in the application are representations and not warranties. A change in the policy is valid only if it is approved by an officer of Company. The Company may require that the policy be sent to it for endorsement to show a change. No agent has the authority to change the policy or to waive any of its terms.

Whole Life Policy at Section 1.2; Term Life Policy at Section 1.3

Neither Policy contains a provision forbidding oral termination by either party, and the Complaint does not identify any action by Northwestern which would constitute a "change" in the Policy. Although plaintiff alleges that Northwestern's "act of backdating the Policies

---

[2] Plaintiff does not identify what section of the Insurance Law she is alleging in either Count III or Count IV. Since she alleges violation of § 4226 in Count VI of the Complaint, it will be assumed for the purposes of this motion that § 4226 is the section to which she is referring in her earlier Causes of Action.

termination dates" is both against public policy and a violation of the General Obligation Law,

she does not provide a legal basis for this claim. She does not cite any public policy which has

been violated, and there can be no violation of the General Obligation Law found in

Northwestern's actions since the Policies unambiguously state that: If the premium is not paid

within the grace period, **the policy will terminate as of the due date**." Whole Life Policy at

Section 4.1; Term Life Policy at Section 3.4. Here, Mr. Wilson chose to allow the Whole Life

Policy to lapse as of February 28, 2005 and requested a refund of premiums he had paid for the

Term Life Policy so that it lapsed as of that same date. Therefore, in accordance with the exact

terms of each Policy, the Policies terminated as of February 28, 2005. Since there were no

deviations from the written terms of the Policies, there are no grounds for alleging violation of

the General Obligation Law.

      In a similar fashion, plaintiff has no basis for alleging a violation of New York State

Insurance Law § 4226. This section of the Insurance Law prohibits "Misrepresentations,

misleading statements and incomplete comparisons by insurers" in: "any illustration, circular,

statement or memorandum misrepresenting the terms, benefits or advantages of any of its

policies or contracts" (§ 4226(a)(1), "any estimate of the dividends or share of surplus or

additional amounts to be received on such policies or contracts" ((a)(2)), "any false or

misleading statement of the dividends or share of surplus or additional amounts paid by any such

insurer on similar policies or contracts" ((a)(3)), "make or deliver to any person or persons any

incomplete comparison of any such policies or contracts for the purpose of inducing, or tending

to induce, such person or persons to lapse, forfeit or surrender any insurance policy or contract"

((a)(4)), "replace the individual life insurance policies or individual annuity contracts by an

insurer by the same or different insurer without conforming to the standards promulgated by

regulation by the superintendent" ((a)(5)).  Since plaintiff here does not allege any

misrepresentations by Northwestern in regard to its advertising practices, its estimates of

dividends, its financial condition or its replacement of policies with other policies, she has not

alleged a violation of Insurance Law § 4226.  Since plaintiff has failed to allege a violation of

either New York's General Obligation Law § 15-301 or New York's Insurance Law § 4226,

summary judgment must be granted to Northwestern Mutual on Counts III and IV of the

Complaint.

## VI.    SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S FIFTH CAUSE OF ACTION

Plaintiff's Fifth Cause of Action alleges that Northwestern is "liable for the acts of

negligence, carelessness, and/or recklessness in issuing said letter of May 23, 2005, and in failing

to take action or otherwise withdraw and/or rescind said letters prior to June 6, 2005."  There is

no recognized civil Cause of Action for "carelessness" or "recklessness" under New York law,

and plaintiff has not pled the elements needed to sustain a claim for negligence.  Accordingly,

summary judgment must be granted dismissing plaintiff's fifth Cause of Action in its Entirety.

"[A] leading treatise in the law of torts identifies the elements of a negligence cause of

action as first a "duty … requiring the person to conform to a certain standard of conduct" and

second, a "failure on the person's part to conform to the standard required" (Prosser and Keeton,

Torts § 30, at 164 [5th ed] .  Drattel v. Toyota Motor Corp., 92 N.Y.2d 35, 56 (N.Y. 1998).

Moreover, "[t]his brings us directly to an essential element of any negligence case: duty. Without

a duty running directly to the injured person there can be no liability in damages, however

careless the conduct or foreseeable the harm (see, Pulka v Edelman, 40 NY2d 781, 785, rearg

denied 41 NY2d 901; see also Prosser and Keeton, Torts § 53, at 357 [5th ed]; 3 Harper, James

and Gray, Torts § 18.1, at 650 [2d ed])" Lauer v. City of New York, 95 N.Y.2d 95, 100 (N.Y.

2000).

       In the case at hand, no duty ran from Northwestern Mutual to plaintiff during the time

frame referenced by plaintiff in her Complaint. Once the Policies terminated, there was no

contract, and therefore any duty that might have previously existed terminated as of the date the

Policies lapsed. Since there is no civil Cause of Action for carelessness or recklessness and no

basis for alleging negligence, summary judgment dismissing plaintiff's fifth Cause of Action

must be granted to Northwestern Mutual.

## VII.   SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S SIXTH CAUSE OF ACTION

       "It is well established that an insured may not recover the expenses incurred in bringing

an affirmative action against an insurer to settle its rights under the policy." New York

University, 87 N.Y.2d at 324 (citing Mighty Midgets v. Centennial Ins. Co., 47 N.Y.2d 12, 21

(1979), Grimsey v. Lawyers Tit. Ins. Corp., 31 N.Y.2d 953 (1972) and Doyle v. Allstate Ins. Co.,

1 N.Y. 2d 439 (1956); see also Mazzuoccolo v. Cinelli, 245 A.D.2d 245, 248 (1st Dep't 1997)

("No fees are recoverable where, as here, it is the insured who initiated legal action to determine

its rights under the policy."); Gold v. Nationwide Mutual Ins. Co., 273 A.D.2d 354, 354 (2d

Dep't 2000). As the Court of Appeals explained in Mighty Midgets:

> It is a rule in New York that such a recovery may not be had in an
> affirmative action brought by the assured to settle its rights, but
> only when he has been cast in a defensive posture by the legal
> steps an insurer takes in an effort to free itself from its policy
> obligations.

Mighty Midgets, 47 N.Y.2d at 21. Plaintiff, having initiated this suit against Northwestern,

cannot claim to have been cast into a "defensive posture." Accordingly, summary judgment

dismissing her demand for attorneys' fees must be granted.

## VIII. SUMMARY JUDGMENT MUST BE GRANTED TO NORTHWESTERN MUTUAL ON PLAINTIFF'S SEVENTH CAUSE OF ACTION

Plaintiff's Seventh Cause of Action essentially repeats the causes of action previously alleged, and then demands punitive damages. This cause of action must dismissed because the allegations in the Complaint simply do not meet the standards set by the New York courts for the recovery of punitive damages.

As an initial matter, three of the Complaint's causes of action are statutory, and punitive damages are not awarded for statutory violations unless such damages are specifically provided for in the statute itself. Plaintiff has not cited any provision in New York State General Business Law § 349, New York State Insurance Law § 4226 or New York State General Obligation Law § 15-301 that provides for the imposition of punitive damages. With respect to plaintiff's remaining causes of action – breach of contract and negligence – plaintiff's allegations do not rise to the level of misconduct required for the granting of punitive damages.

In <u>Rocanova v Equitable Life Assurance Society,</u> 83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994), the Court of Appeals made it clear both that damages in connection with a breach of a contract claim are generally limited to the contract damages, and that punitive damages are only recoverable where necessary to vindicate a public, not private, right. Accordingly, the elements of a claim for punitive damages were enumerated the next year by the Court of Appeals as follows:

> (1) defendant's conduct must be actionable as an independent tort;
> (2) the tortious conduct must be of the egregious nature set forth in <u>Walker v. Sheldon</u>, 10 N.Y. 2d 401, 404-405, 223 N.Y.S. 2d 488;
> (3) the egregious conduct must be directed to plaintiff; and
> (4) the conduct must be part of a pattern directed at the public generally . . .

17

N.Y. Univ. v. Cont. Ins. Co. et al., 87 N.Y.2d 308, 316, 639 N.Y.S.2d, 283, 287 (1995)

(internal citations omitted).  If even one element is missing, the Court must dismiss the claim

regardless of whether the other required elements have been properly pleaded.  See Kline v.

Schaum, 173 Misc. 2d 108, 110, 661 N.Y.S.2d 906, 908 (App. Term 2d Dep't 1997).   In this

case, plaintiff has failed to adequately allege any of these elements.

      Plaintiff clearly has failed to allege the commission of an "independent tort" sufficient

to support an award of punitive damages.  As an initial matter, it is well-established law that

"punitive damages are not available for ordinary negligence."  Rice v. University of

Rochester Med. Ctr., 2007 NY Slip Op 10297, 2 (4th Dep't December 21, 2007) (*quoting*

Munoz v Puretz, 753 N.Y.S.2d 463 (1st Dep't 2003).  *See, also* Kopec v. Hempstead Gardens,

Inc., 264 A.D.2d 714 (2d Dep't 1999) (holding that the Supreme Court had erred in failing to

grant summary judgment dismissing the plaintiffs' claims for punitive damages against all the

defendants because punitive damages "are not appropriate where, as here, only ordinary

negligence is involved.")

      Secondly, plaintiff has failed to allege any tortious conduct by Northwestern Mutual.

The mere use of words such as "grossly negligent, recklessness, malicious…activated by evil

or reprehensible motives" is patently insufficient to support a claim of tortious conduct or a

demand for punitive damages.  Botway v. Amer. Int'l Assurance Co., 151 A.D.2d 288, 290

(1st Dep't 1989) ("In the absence of any allegations to support a finding of 'wanton

dishonesty as to imply a criminal indifference to civil obligations, punitive damages may not

be recovered"); M.S.R. Assoc. Ltd. v. Consol. Mut. Ins. Co., 58 A.D.2d 858, 859, 396

N.Y.S.2d 684, 685 (2d Dep't 1977) (dismissing claim seeking punitive damages predicated

upon defendant insurer's drafting of a policy that allegedly was "intentionally" and "maliciously" weighted against the insured).

Indeed, even an allegation of bad faith failure to fulfill contractual obligations is insufficient under New York law to justify an award of punitive damages. Morano v. Oral Research Lab., Inc., 191 A.D.2d 258 (N.Y. App. Div. 1993) (dismissing claim for extra-contractual damages on the basis that such damages "cannot be granted for failure to perform the obligations of a private agreement, even if the failure to perform was purposeful and in bad faith"); Philips v. Republic Ins. Co., 108 A.D.2d 845, 846, 485 N.Y.S.2d 566, 567-68 (2d Dep't 1985), aff'd, 65 N.Y.2d 1000, 494 N.Y.S.2d 301 (1985) (holding that "[t]he mere showing of bad faith by establishing a dishonest failure to carry out a contract is not sufficient to award punitive damages. . .") Since plaintiff's allegations here are clearly insufficient to establish an independent tort, her Seventh Cause of Action and accompanying request for punitive damages must be dismissed.

Moreover, even if plaintiff's Complaint had adequately alleged an independent tort, which it clearly does not, it still fails as a matter of law to allege the other elements required to support a claim for punitive damages. The law is clear that by no means does every tort support a claim for punitive damages. In New York University, 87 N.Y.2d at 315-16, 639 N.Y.S.2d at 287, the Court of Appeals summarized the standard set forth in Walker v. Sheldon, 10 N.Y.2d 401, 404, 223 N.Y.S.2d, 488, 490 (1961), stating that:

> [p]unitive damages are available only in those limited circumstances where it is necessary to deter [the insurer] and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "such wanton dishonesty as to imply a criminal indifference to civil obligations.

The Complaint does not plead any egregious conduct by Northwestern Mutual, as is required by Walker and New York University in order to sustain a claim for punitive damages. Rather, it simply alleges a failure to pay death benefits. Plaintiff's claim for punitive damages is based solely on general conclusory allegations, and cites no facts that raise a triable issue as to whether Northwestern Mutual's actions were "activated by evil or reprehensible motives..." Complaint at ¶ 49.

Furthermore, the Court of Appeals has held that what needs to be asserted to support a claim for punitive damages is "not an isolated transaction incident to an otherwise legitimate business, but a **gross and wanton fraud upon the public.**" Walker, 10 N.Y.2d at 406, 223 N.Y.S.2d at 492 (emphasis added). See also, Supreme Automotive Mfg. Corp. v. Cont. Cas. Co., 126 A.D.2d 153, 155, 512 N.Y.S.2d 820, 822 (1st Dep't 1987) ("It is firmly established in this State that, in an action to recover on an insurance policy, punitive or exemplary damages may not be obtained 'unless there is a showing of . . . morally culpable conduct directed at the general public, a public as opposed to a mere private wrong.'" (internal citations omitted).

Plaintiff simply has not alleged any such conduct directed at the public by defendant, nor could she in these circumstances. As discussed *supra* in connection with plaintiff's Second Cause of Action, the Complaint alleges nothing more than a dispute between plaintiff and Northwestern Mutual over the interpretation of the Policies, and certainly does not allege a "gross and wanton fraud upon the public." Since her allegations fall far short of meeting the standards set by the Court of Appeals, plaintiff's cause of action for punitive damages must be dismissed. See Rocanova v. Equitable Life Assoc. Soc., 83 N.Y.2d 603, N.Y.S.2d 339 (dismissing punitive damage claim where plaintiff failed to allege a pattern of conduct directed toward the public, even though plaintiff alleged numerous difficulties he had with insurer).

## **CONCLUSION**

For all the reasons stated herein and in the accompanying Affidavits, Northwestern

Mutual's motion for summary judgment dismissing plaintiff's Complaint in its entirety must be

granted.

Dated: Uniondale, New York
      January 31, 2008

                            Respectfully submitted,

                            RIVKIN RADLER LLP

                            Attorneys for Defendant
                            The Northwestern Mutual Life
                            Insurance Company

By: _____
                            NORMAN L. TOLLE (NLT –5081)
                            926 RexCorp Plaza
                            Uniondale, New York 11556-0926
                            (516) 357-3000

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                         ) SS. :
COUNTY OF NASSAU         )

    I, Lisa Sullo being sworn, say:

    I am not a party to the action, am over 18 years of age and reside in West Babylon, New York.

    On January 31, 2008, I served the within **Memorandum of Law in Support of Northwestern Mutual Life Insurance Company's Motion for Summary Judgment** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

    Douglas R. Dollinger & Associates
    40 Matthews Street, Suite 101
    Village of Goshen
    Goshen, New York  10924

Lisa Sullo

Sworn to before me this
31st day of January, 2008

Notary Public

DIANA DORSEY
Notary Public, State of New York
No. 01DO6067959
Qualified in Nassau County
Commission Expires December 24, 20 09