UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE WILSON,

        Plaintiff(s),

vs.

NORTHWESTERN MUTUAL INSURANCE
COMPANY,

        Defendant(s).

) Case No.: 07CV2790 (CLB)
) HON. CHARLES L BRIEANT
)
)
)
)
)
)
)
)
)

\*   \*   \*   \*

**PLAINTIFF's  MEMORANDUM OF  LAW  IN SUPPORT OF
FED. RULE 56(C)  MOTION  FOR  SUMMARY  JUDGMENT**

*Respectfully Submitted:*

*Douglas R. Dollinger*
*Attorney for Defendant*
*40 Matthews Street–Suite 101*
*Village of Goshen*
*Goshen, New York 10924*
*Tele. 845.294.2771*
*Fax. 845.294.2772*

**Law Office of Douglas R. Dollinger & Associates**
40 Matthews Street, Goshen, New York 10924\* Tele. 845.294.2771 Facs. 845.294.2772

Argument ................................................................ 24

POINT IV

KENNETH WILSON DID NOT CASH THE POLICY REFUND CHECK PRIOR TO HIS DEATH AND AS SUCH THE TERMINATION-CANCELLATION OF THE POLICY WAS BY OPERATION OF LAW REVOKED    27-29

Argument ................................................................ 28

POINT V

NORTHWESTERN's SERVICE OF ITS' ISA NOTICE DATED MAY 23, 2005, MUST BE CONSIDERED AN EXTENSION-OFFERING, TO EXERCISE MR. WILSON'S OPTION TO KEEP THE POLCIY BY MAKING PAYMENT WITHIN THE TERM POLICY'S 31 DAY GRACE PERIOD    29-31

Argument ................................................................ 30

POINT VI

NORTHWESTERN WAS REQUIRED TO NOTIFY THE INSURED OF THE CANCELLATION OF HIS POLICY AND THE TYPE AND AMOUNT OF ANY AUTOMATIC NONFORFEITURE BENEFIT IN FORCE UNDER THE WHOLE LIFE POLICY AND FIALED TO DO SO WHEREIN THE POLICY WAS NEVER PROPERLY CANCELED    31-34

Argument ................................................................ 32

CONCLUSION................................................................ 34

AFFIDAVIT OF SERVICE................................................ 35

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

Abuhamra v New York Mut. Underwriters, 170 A.D.2d 1003, 566 N.Y.S.2d 156................34

Angulo. v. Security Mutual Life Insurance Company of New York, 500 N.Y.S.2d 272; 118 A.D.2d
745 ....................33

Bank of N.Y. v. Kranis, 592 N.Y.S.2d 67 (N.Y.App. Div., 1st Dep't 1993 ..................15

Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991)..................10

Buchbinder Tunick & Co., As Successor To Buchbinder, Stein, Turick & Platkin.Manhattan National
Life Insurance Company. 631 N.Y.S.2d 148, 219 A.D.2d 463.................29

Caprino v. Nationwide Mut. Ins. Co., 34 A.D.2d 522, 308 N.Y.S.2d 624).................34

Celotex Corp. v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)..................9

Chemical Bank v Sepler, 60 N.Y.2d 289, 294, 469 N.Y.S.2d 609, 457 N.E.2d 714 ..................15

Chemical Bank v Wasserman, 37 N.Y.2d 249, 252, 371 N.Y.S.2d 919, 333 N.E.2d 187,, 159 A.D.2d
475, 552 N.Y.S.2d 347..................15

Clift v Moses, 112 N.Y. 426 ..................23

Corning v Walker, 100 N.Y. 547 ..................23

Evans v. 2168 Broadway Corp., 281 N. Y. 34..................28

Endervelt v. Slade, 162 Misc. 2d 975, 618 N.Y.S.2d 520 ..................24

Friedman v. Markman, 11 A.D.2d 57, 62..................16

Holcomb v Holcomb, 95 N.Y. 316, 325 ..................25

HPSC Inc. v. Matthews, 179 AD2d 974, 975..................16

Jaffe v. Paramount Communications, 644 N.Y.S.2d 43, 47 (N.Y.App. Div., 1st Dep't 1996..................15

Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 94 L.
Ed. 2d 762, 107 S. Ct. 1570 (1987) ..................10

Matter of Estate of Tremaine, 156 AD2d 862 ..................25

Melkon v Kirk & Co, 220 App Div 180)..................23

Mentz v. Newwitter, 122 NY 491, 497..................16

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

M&M Jewelry Creations v. Hartford Fire Ins. Co., 26 A.D. 816 ............................ 14

Norstar Bank v Prompt Process Serv., 117 A.D.2d 589, 590, 498 N.Y.S.2d 61 ......... 15

Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996 ................................................ 24

Royal Ins. Co. v 342 Madison Ave. Assocs., 208 A.D.2d 389, 390 ..................... 29, 32

Scottish Air Int'l, Inc v. British Caledonian Group, 867 F. Supp. 262, 266 (S.D.N.Y. 1994), aff'd, 81
      F.3d 1224 (2d Cir. 1996) ..................................................................... 10

Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991) .................... 10

Rubenstein v. Kleven, 261 F. 2d 921 ............................................................... 16

Twenty-Third St. Baptist Church v. Cornell, 117 N. Y. 601 .................................. 28

Van Vechten v Van Vechten, 20 N.Y.S. 140 ..................................................... 25

Warner & Whitney v. Union Camp Corp., 166 AD2d 776, 777 ............................. 17

William L. Mantha Co. v. De Graff, 242 App Div 666, aff'd 266 NY 581 ................. 25

**Statutes**                                                                                 **Page(s)**

Fed. R. Civ. P. 56(c) ............................................................................ 1,8,9

Federal Rule 56(e) ................................................................................... 24

Fed. R. Civ. P. 12(b)(6) ............................................................................. 2

Fed. Rule 803(6) ...................................................................................... 19

General Obligations Law §15-301; ............................................................ 14-15

General Obligations Law § 349 ..................................................................... 3

General Obligations Law § 5-701(a)(1)] ......................................................... 15

Insurance Law §3204 ............................................................................ 13, 14

Insurance Law §3211(a)(1) ......................................................................... 30

Insurance Law §3216 ................................................................................ 16

Insurance Law §4226 ................................................................................. 3

New York CPLR § 4519 ...................................................................... 23, 24, 25

Title 28, United States Code, §1332 ............................................................... 2

iv

## TABLE OF AUTHORITIES

**Treatisis**                                                                                                    **Page(s)**

Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4519:1, at 1652 ....... 25

Appleman, Insurance Law and Practice 6A § 4226, at 652 (Rev ed 1972)........................................ 25

CJS Insurance 45§ 513 (1993).......................................................................................... 25

Couch on Insurance 2d 17 § 67:144, at 603........................................................................... 25

J. Wigmore, Evidence 9§ 2400, at 4 (Chadbourn rev ed 1981 ...................................................... 18

Moore's Federal Practice, Vol. 10, Art. VI, § 601.06................................................................. 23

N. Y. Jur., 9 Contracts, § 28........................................................................................... 28

Restatement, Contracts, § 48, Comment a; .......................................................................... 28

v

## Preliminary Statement

This is an action by Plaintiff, MICHELLE WILSON ("**M. WILSON**") for recovery of the proceeds and payment of two life insurance policies, one whole life policy and one term life policy, totaling $500,000.00 in death benefits payable to her as named beneficiary on the death of her husband, the insured, Kenneth Wilson.

Defendant NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY ("**NORTHWESTERN**") the insurer, issued the Policies to Mr. Wilson in May 2004, but claims that prior to his death Mr. Wilson and **NORTHWESTERN** orally agreed to terminate-cancel the Policies.

**NORTHWESTERN** also claims-alleges that Mr. Wilson orally agreed that in the case of the Term Policy premiums, the premiums would be retroactively backdated with the result being that Mr. Wilson died without coverage because he died outside the Policy's 31 day grace period as a result of the backdating.

Plaintiff claims, notwithstanding the alleged oral agreement to backdate terminate-cancel the Term Policy, payment is due under the Policies' as a matter of law, each for separate reasons.

Plaintiff now moves this Court for entry of a an order granting her summary judgment holding her entitled to payment of the Policies as a matter of law pursuant to Fed. R. Civ. P. 56(c).

## Procedural Background

In or about April 2007 Defendant **NORTHWESTERN** filed a Petition for removal of Plaintiff's action from the Westchester County Supreme Court to this District Court pursuant to Title 28, United States Code, §1332. **[See, Exhibit "1".]** Opposition was presented to the Motion. **[See, Exhibit "2".]** The Petition was granted on the basis of the complete diversity of the parties. A discovery order was entered. **[See, Exhibit "3".]**

Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). **[See, Exhibit "4".]**

Thereafter, in or about May 2007, Plaintiff, filed her amended Complaint. **[See, Exhibit "5"** *Exhibits "A"-"F" annexed thereto,* and respectively being: *"A"*-ACL Whole Life Policy No. 16852083, provided insurance coverage in the amount of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS; and *"B"*-Term Insurance Policy No. 16852105, provided insurance coverage in the amount of THREE HUNDRED FIFTY THOUSAND ($350,000.00) DOLLARS issued to Kenneth Wilson by the Defendant **NORTHWESTERN**; and *"C"*-the Death Certificate of Kenneth Wilson with a date of death being June 6, 2005; *"D"*-a letter of disclaimer from **NORTHWESTERN** to Daniel Stein dated July 21, 2006; and *"F"*-letter dated May 23, 2005 correspondence identifying Mr. Stein as Mr. Wilson's Financial Representative.**]**

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax:. 845.294.2772

Defendant filed its' Answer in or about June 2007. **[See, Exhibit "6"** Admission-Denials, and its 5 Affirmative Defenses: "1. The Complaint fails to state a cause of action for violations of GBL§ 349"; "2. The Complaint fails to state a cause of action for violations of GOL§15-301"; "3. The Complaint fails to state a cause of action for violations of Insurance Law §4226"; "4. The Policies terminated before Kenneth Wilson's death on June 6, 2005"; "5. The Polices are contestable. Even if it were to be determined that the Policies were in force on June 6, 2005, proceeds of the Policies might not be payable if a material misrepresentation had been made in the application for each Policy"]; Discovery demands were made and responded to, including: Rule 26 Disclosure. **[See, Exhibit "7"** Plaintiff's Rule 26 Responses **Wilson 1-103;** and Defendant's Rule 26 Responses NML 1- 210.]; Rule 34 Disclosure **[See, Exhibit "8"** Plaintiff's Rule 34 Responses **Wilson 1-141;** and Defendant's Rule 34 Responses MNL –211-307.]; Interrogatories were exchanged and answered. **[See, Exhibit "9"];** Deposition were had of the Plaintiff **M. WILSON. [See, Exhibit "10".]** A deposition of Daniel Stein as produced for the Defendant **NORTHWESTERN** was also conducted. **[See, Exhibit "11".]** After the conclusion of Discovery Defendant's Counsel provided **form 18-1680 (1204),** a form used for policy cancellation, together with the admission that the form was not provided to Mr. Wilson as was the usual practice of **NORTHWESTERN. [See, Exhibit "12".]**

Plaintiff's  Memorandum  with  Points  and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax:. 845.294.2772

## Background- Facts

Kenneth Wilson was 36 years old at the time of his death. He left surviving his wife, Plaintiff **M. WILSON**, and two infant children, Jared-9 years old and Evan-6 years old.

Prior to his death of June 6, 2005, on or about May 22, 2004, Mr. Wilson purchased two (2) life insurance policies from **NORTHWESTERN**, ACL Whole Life Policy No. 16852083 (hereafter the "Whole Life Policy"), providing life insurance coverage in the amount of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS; and Term Insurance Policy No. 16852105 ("hereafter the Term Policy"), providing life insurance coverage in the amount of THREE HUNDRED FIFTY THOUSAND ($350,000.00) DOLLARS. **[See, Exhibit, 5,** *Exhibits "A" and "B" thereto.***]**

The Policies were sold to Mr. Wilson via their **NORTHWESTERN's** Agent Daniel Stein. Mr. Stein was also Mr. Wilson's Financial Advisor as provided by **NORTHWESTERN** and would have delivered the Polices to Mr. Wilson here in New York. **[See, Exhibit 5 ¶¶7-10 and Exhibit 11 at Page 66 lines 8-10.]**

Demand was timely made for payment on the Policies by **M. WILSON** as the named beneficiary thereto. **[See, Exhibit's 5-***Exhibits "A", "B" and "D" thereto.***]**

4

Plaintiff's Memorandum with Points and Authorities Case No.:07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924 Tele. 845.294.2771 Faes. 845.294.2772

Initially, payments were agreed to be made monthly, however, payment on the Policies was changed and the Company agreed to accept payments on each policy at different frequencies including either a monthly or a quarterly basis. **Exhibit 8 "NML 292-297".]**

**NORTHWESTERN** has refused to make payment on the Policies, claiming that Whole Life Policy lapsed with the consent of Mr. Wilson for non-payment of premiums with a paid to date of February 28, 2005.  **[See, Exhibit's 5–*Exhibit "D" thereto* and Exhibit 8 "NML 99-100".]**

On or about 29, April 2005 **NORTHWESTERN** received electronic wire payment from Mr. Wilson for payment on his Term Policy in the sum of $215.60. The funds were paid to his Insurance Service Account ("IAS") for the premium payments to the end of the year, December 2005. **[See, Exhibits 8 "M. Wilson 130" and Exhibit 8 "NML 169" and "292-297".]**

**NORTHWESTERN** also claims that on May 23, 2005, just 14 days prior to his death Mr. Wilson and **NORTHWESTERN** orally agreed to terminate-cancel the Term Policy and that Mr. Wilson "requested a refund of his last payment", which they claim was an agreement to backdate the Term Policy to February 28, 2005, thus relieving **NORTHWESTERN** of its obligation for payment under the Term Policy's 31 day grace period. [See, **Exhibit 5–*Exhibit "D" thereto*, and see Exhibit 8 "NML 99-100".]**

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Faxs. 845.294.2772

The specific facts concerning the oral agreement to terminate the Term Policy being, as **NORTHWESTERN** claims, that on May 23, 2005, Mr. Wilson called making inquires concerning an alleged shortage in his IAS-Account of $35.00.

**NORTHWESTERN** claims the shortage was the result of the loss in companion status related to the Whole Life Policy, and that they advised Mr. Wilson of the reason for the shortage in his ISA-Account and that there would be an additional charge of $35.00 as a result of the loss of the companion status of the Whole Life Policy.

Defendant also claims that after advising Mr. Wilson of the additional $35.00 charge, **NORTHWESTERN** agreed a refund the Term Policy premiums to his last payment. **[See, Exhibit 5- Exhibit "D" thereto, and see Exhibit 8 "NML 99-100".]** **[See, Exhibit 8 "NML 227 Pages 1 of 7".]**

In response **NORTHWESTERN** issued its refund check of $154.07 on May 31, 2005, which said sum was a refund of premiums for the months of June 2005 through December 2005. **[Exhibit 8 Wilson "NML 154", 227 Pages 1 of 7" and NML "292"- "297".]**

This check was received by **M. Wilson** after Mr. Wilson's death. **[See, Exhibit 10 "Page 33- Line 16 continuing to Page 37 Line 16".]**

However, **NORTHWESTERN** also claims that after the premium payment of $154.07 was agreed to be refunded, they offered to terminated-canceled the Term

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fues. 845.294.2772

6

Policy and in fact backdate the premium payment to February 28, 2005. They claim to have issued a second check in the sum of $81.03 on May 31, 2005. Significantly, it appears this check was not delivered prior to Mr. Wilson's death, nor was it ever received by M. Wilson. In fact, this check has never been cashed. **See, Exhibit 10** **"Page 33- Line 16 continuing to Page 37 Line 16".]**

Notwithstanding the claim that a check in the sum of $81.03 was mailed on May 31, 2005, after being manually backdated on Memorial Day 2005, prior thereto, on or about May 23, 2005 **NORTHWESTERN** mailed Mr. Wilson notice that his Term Policy was paid to May 29, 2005 and that the grace period under the Policy expired on June 29, 2005. **[See, Exhibit 5 *Exhibit "E" annexed thereto*** - letter dated May 23, 2005, stating that Mr. Wilson's ISA Account had been closed but was paid to May 29, 2005, with a "Grace Period" to expire on June 29, 2005.]

**NORTHWESTERN** also claims that on May 31, 2005, after having manually backdated the Policy's paid to date, on Memorial Day that on day May 31, 2005 they mailed two (2) checks to Mr. Wilson. **[See Exhibit 8 "NLM 99- 100, 218", and NML 307".]**

Based on these alleged mailings **NORTHWESTERN** claims that the Term Policy was terminated-cancelled prior to the death of Mr. Wilson with as effective date of February 28, 2005. **[See, Exhibit 8 "NLM 99-100".]**

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

7

* * *

Plaintiff claims that **NORTHWESTERN** failed to provide the proper and timely statutory notice for cancellation of the Whole life Policy No.: 16852083.

And, concerning the Term Policy, she claims that the oral agreement to modify the insurance contract was void, and that Mr. Wilson died during the coverage period because he died on June 6, 2005, within the thirty-one (31) day grace period provided for under Policy.

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

8

# POINT I

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE THE ANSWER, ITS' ADMISSIONS, DENIES, THE AFFIRMATIVE DEFENSES, DISCOVERY, RESPONSES INTERROGATORIES AND THE DEPOSITION TESTIMONY OBTAINED DO NOT CREATE GENUINE ISSUES OF TRIABLE FACT**

## <u>Standard of Review</u>

A Rule 56 (c) motion for summary judgment is an "integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

However, to the end purpose of the Rule there are limitations. Indeed, summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); <u>Silver v. City Univ. of New York</u>, 947 F.2d 1021, 1022 (2d Cir. 1991).

Consistent with the limitation of Rule in considering a motion for summary judgment, a court is not to resolve contested issues of fact, but rather, it is to determine the existence of any disputed issues of material fact presented in support of the parties

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Faxs. 845.294.2772

adverse claims. See, Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 94 L. Ed. 2d 762, 107 S. Ct. 1570 (1987).

However, the existence of a genuine issue of material fact depends on both the genuineness and the materiality of the issues raised and not simply the existence of disputed or contested facts between the parties. See, Scottish Air Int'l, Inc v. British Caledonian Group, 867 F. Supp. 262, 266 (S.D.N.Y. 1994), aff'd, 81 F.3d 1224 (2d Cir. 1996).

If, when "viewing the evidence produced in the light most favorable to the nonmovant . . . a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." See, Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991).

## Argument

**NORTHWESTERN's** 4th Affirmative Defense states:

"4.    The Policies[1] terminated before Kenneth Wilson's death on June 6, 2005." **[See, Exhibit 6.]**

Upon application of these rules of law in opposition to the facts supporting this affirmative defense the Court may grant Plaintiff summary judgment on Plaintiff's claims as a matter of law because there is no genuine issue of material fact concerning the

10

---

[1] This argument is limited to Term Policy 16852105. Plaintiff addresses the ACL Whole life Policy below at Point V.

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

alleged oral termination-cancellation of the Term Policy, for the reason that the law does not allow-provide for the enforcement of oral modifications to the written terms of a life insurance policy.

Based on a claimed oral agreement with Mr. Wilson to modify the Policy terms related to the Policy's express grace period of 31 days, **NORTHWESTERN** has refused to make payment on the Term Policy claiming that the agreement for termination-cancellation of the Term Policy is valid because the oral agreement is to backdate the premium paid to date, meaning as claimed that this is an agreement for a change in premium due date and is not part of the Policy coverage-terms related to the grace period. Hence, they claim the oral modification is valid. **[See, Exhibit 8 "NML 99-100"]**

Of course this proposition completely ignores the fact that the Policy's grace period was a specific term of the Policy, or that the law treats it as such. **[See, Exhibit 5- *Exhibit "B" page(s) 6, Section 3.4.]***

In support of its' defense, by it discovery responses, and specifically in a letter dated July 26, 2006 **[See, Exhibit 8 "NML 99-100"]** directed to Mr. Stein concerning **M. Wilson's** demand for payment on the Policies, **NORTHWESTERN** claims that on May 23, 2005, they received a telephone call from Kenneth Wilson who was making inquiry related to an alleged $35.00 shortage in his ISA account and that he is

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax. 845.294.2772

requesting a refund of his last payment and to allow the TERM Policy to lapse.[2]    [See,

**Exhibit "8" NML 227 Pages 1 of 7.]**

**NORTHWESTERN's** July 26, 2005 letter also states:

May 23, 2005 Mr. Wilson called the Home Office questioning the shortage in his Insurance Service Account (ISA). We explained an additional fee of $35.00 was added to the payment due to the loss of the companion policy status. After hearing this, Mr. Wilson requested a refund of his last payment and allowed policy 16852105 to lapse. **Our records indicate that we contacted you, Mr. Stein, and you agreed that this would be fine."** [Emphasis added.] [Exhibit 8 "NML 99-100".]

The letter also states that they contacted Mr. Stein on May 23, 2005, relative to his approval concerning the alleged request for termination- cancellation of the Term Policy.

The letter indicates **MR. STEIN** gave his consent to cancel the policy. [ **But see POINT III below for contradiction.]**

In addition to its letter of July 26, 2005, **NORTHWESTERN's** has provided their business records-internal memorandum in support of the alleged conversations its' employees had with Kenneth Wilson on May 23, 2005.

In pertinent part the records state:

" Client is inquiring as to why there is a shortage on the ISA as he requested draft for amount to get him paid to end of year. Negotiated call back so I may review. Phone: 914-682-5546." [See, Exhibit 8 NML 137.]

---

[2] **NORTHWESTERN's** discovery responses fail to provide any type of notice which was sent to Mr. Wilson prior to his death to indicate how he was alerted to the alleged $35.00 shortage. A notice relative to $35.00 shortage was sent on June 13, 2007. [See, Exhibit 8 NML 262.] However, this was after Mr. Wilson's death and it does not explain how Mr. Wilson discovered the shortage. Moreover, as will be shown below, the NORTHWESTERN representative who it is claimed had the conversation with Mr. Wilson is surprised that a shortage existed. According to her notes, the shortage should not have been "charged until the policy lapsed, after May 29, 2005.

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax; 845.294.2772

"The notes indicate: case id -2115131960 Communication Type-Phone Call created Date-05/23/2005 02:4...Page 1 of 1" **[See, Exhibit 8 NML 234.]**

"Spoke with client. Informed him that the $35 is a policy fee that was previously waived due to the companion status on the policy. Once his ACL lapsed this policy is no longer a companion policy so the fee is no longer waived. Client indicated the amount quoted to pay IAS to December included this fee. Explained that the fee would not have charged until policy lapsed, thereafter the amount quoted to reactivate ISA did not include the policy fee." **[See, Exhibit 8 NML 234.]**

"Client is now asking to be refunded his last payment and let the policy lapse. Negotiated call back so I may contact FR discuss." **[See, Exhibit 8 NML 234.] [Emphasis added][3]**

Defendant claims that based on these conversations it offered to retroactively terminate-cancel Mr. Wilson's Term Policy No. 16852105 to the same date as the termination of his Whole Life Policy No. 16852983 to February 28, 2005, wherein a refund of $81.03 was allegedly issued on May 31, 2005, Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed. [4] **[See, Exhibit 8 "NML 99-100".]**

**New York Gen. Oblig. Law § 15-301- Insurance Law §3204**

Ordinarily, conversations of this nature, assuming that they did occur, would raise a triable issue of fact. See, M&M Jewelry Creations v. Hartford Fire Ins. Co. 26

---

[3] Mr. Wilson's IAS account was paid quarterly and was billed internally monthly. On May 31, 2005, a premium refund check in the sum of $154.07 was drafted [NML]. Its' actual mailing date is a matter of dispute and will be discussed below. The check was chased by Plaintiff in late June 2005 approximately three (3) weeks after Mr. Wilson's death. Of interest to the Court should be the fact that the check represents a premium refund on Mr. Wilson's Term Policy 16852105 to May 29, 2005, meaning of course that the 31 day grace period did not expire until at least June 29, 2005.

[4] Although **NORTHWESTERN** claims to have manually backdated the premium on Memorial Day, May 30, 2005 and to have issued Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed on May 31 2005, Plaintiff denies ever receiving the check. What's more, the check has never been cashed. [See, Exhibit 8 "NML 99-100".]

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Faxs, 845.294.2772

13

A.D. 816. Here, however, the Court must find that the purported retroactive termination-cancellation of the Policies was ineffective as a matter of law, even accepting the fact that the conversations took place.

This is because **NORTHWESTERN's** discovery responses, and internal memoranda are insufficient to satisfy New York Gen. Oblig. Law § 15-301. Likewise, in application of Insurance Law §3204 the changes to the terms of the policy are void for any such writing.

And, the consequence-effect of the law is to eviscerate **NORTHWESTERN's 4**[th] Affirmative Defense that the Term Policy was terminated-cancelled and backdated to February 28, 2005, such that no genuine issue of fact exists wherein a trial would be required.

This is because pursuant to the policy's terms, "[a]ny change of [the] policy require[d] the written consent of an executive officer". **[See, Exhibit 8 "M. Wilson-5"** **Section 1.3.]** Under New York law the legal effect of this provision in the policy specifically requiring that notice be given in writing for a change to the terms of the policy means that anything that derogates from written notice to the terms of the policy must be in writing and if it is not it is unenforceable. See, New York Gen. Oblig. Law § 15-301 (contractual requirement of written notice is enforceable and cannot be waived except in writing), see, e.g., Jaffe v. Paramount Communications, 644 N.Y.S.2d 43, 47

14

(N.Y.App. Div., 1st Dep't 1996) (where contract required written notice, presence or absence of a writing is dispositive; extrinsic evidence is immaterial under New York Gen. Oblig. Law §15-301); Bank of N.Y. v. Kranis, 592 N.Y.S.2d 67 (N.Y.App. Div., 1st Dep't 1993) (same: contract "with a no-oral-modification clause is not amenable to oral termination.) See also, Chemical Bank v Sepler, 60 N.Y.2d 289, 294, 469 N.Y.S.2d 609, 457 N.E.2d 714; Chemical Bank v Wasserman, 37 N.Y.2d 249, 252, 371 N.Y.S.2d 919, 333 N.E.2d 187·, 159 A.D.2d 475, 552 N.Y.S.2d 347; Norstar Bank v Prompt Process Serv., 117 A.D.2d 589, 590, 498 N.Y.S.2d 61).

Likewise, Insurance Law §3204 prohibits the oral modification of insurance agreements other than by an instrument signed by the party to be charged with the modification. [See, Insurance Law §3204].

Since the conditions-terms allegedly modified are part of the written agreement, [See, Premiums-Grace Periods at 3.4], both Sections 15-301(1) of the General Obligations Law of New York and §3204 of the Insurance Law of New York prohibit proof of any modification of the agreement unless in a writing signed by Kenneth Wilson which in this case does not exists.

New York General Obligations Law, § 5-701, subd. 1

Likewise, because the obligation to pay life insurance premiums are to continued until the instant of death, the Statute of Frauds-General Obligations Law, § 5-701, subd.

15

1 is applicable to this insurance agreement in that in no event can performance be completed within a year or before the end of a lifetime. See, Friedman v. Markman, 11 A.D.2d 57, 62; and see also, Rubenstein v. Kleven, 261 F. 2d 921.

In accordance with the foregoing proposition, the law is that an agreement which "[b]y its terms is not to be performed within one year from the making thereof" is **void** unless it is in writing and "subscribed by the party to be charged therewith." **[General Obligations Law § 5-701(a)(1).** ]Emphasis added.]

Simply put, under the circumstances, because the contract at issue herein by definition cannot be performed within one year of its making, the claimed modification must be in the form of a written memorandum or note.

And, in order for a written memorandum or note to meet the requirements imposed by the Statute of Frauds, it must, in addition to being "subscribed by the party to be charged therewith" **[General Obligations Law § 5-701(a)]** [also] "contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is." See, HPSC Inc. v. Matthews, 179 AD2d 974, 975, quoting Mentz v. Newwitter, 122 NY 491, 497; see, Warner & Whitney v. Union Camp Corp, 166 AD2d 776, 777.

Notwithstanding the admitted oral nature of the alleged agreement, **NORTHWESTERN** is attempting to overcome the bar produced by the failure to have

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924 4th Tele. 845.294.2771 Fass. 845.294.2772

a writing signed by Mr. Wilson by claiming that their business records reflect the alleged oral modification and are sufficient for retroactive termination-cancellation of the Policy because the modification is for a change in premium due date and does not effect the terms of the Policy. **[But see Insurance Law §3216 (d)(1)(c) providing that grace periods are governed by statute as a term of any life insurance policy issued in New York.]**

In support of the allegations of its Affirmative Defense, **NORTHWESTERN** has served voluminous Discovery Responses consisting of in excess of 307 Exhibits and again admits that the alleged agreement was oral. **[See Exhibit 8 "NML 99-100".]**

However, notwithstanding, the Discovery Responses, all 307 of them, or the admission that the contract was oral, **NORTHWESTERN** has failed to provide a memorandum or series of memorandums subscribed by the Defendant, which either separately or cumulatively satisfy the Statue of Frauds such that the terms as claimed by Plaintiff may be proven, objectively. **[General Obligations Law § 5-701(a)(1)].**

In spite of the Discovery provided it is not at all clear from the documentary evidence submitted whatsoever, assuming that there was oral an agreement to terminate-cancel and backdate the Term Policy to February 28, 2005 as claimed, whether Plaintiff made any agreement to modify the terms of the Policy beyond backdating his "last payment" of May 2005 as evidenced by the premium refund check of $154.07

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924 Tele. 845.294.2771 Facs. 845.294.2772

representing the months of June 2005 through December 2005.

The proof presented in **NORTHWESTERN's** Discovery Responses is in speculative. Since the alleged statements do not prove the existence of the agreement with the terms as claimed by **NORTHWESTERN** and do not in the slightest way refer to the terms alleged the Court should reject the subscription assigned to there meaning offered by **NORTHWESTERN** concerning any agreement to backdate the termination-cancellation of the Term Policy to February 28, 2005 and, if giving them any meaning at all, the Court should give them the clear meaning that **NORTHWESTERN's** records reflect that the policy was paid to May 29, 2005.

At this point, the parole evidence rule presents itself to prohibit the claimed modification. With the understanding that the parole evidence rule "is in no sense a rule of evidence, but a rule of substantive law." 9 J. Wigmore, Evidence § 2400, at 4 (Chadbourn rev ed 1981); parole evidence cannot be used to vary or contradict the express terms of the writing concerning the rights of a parties unless a writing exist which was signed by the party to be charged. And, because none exist there is no genuine issue of traible fact concerning the alleged oral modification.

18

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

## POINT II

### THE COURT SHOULD REJECT NORTHWESTERN'S DISCOVERY RESPONSES AS BUSINESS RECORDS AS A MATTER OF LAW

Beyond the foregoing, this Court should consider the manner with which NORTHWESTERN recorded the claims that they and Mr. Wilson agreed to backdate and terminate-cancel the Life Term Policy to February 28, 2005.

### Argument

The business records exception Fed. Rule 803(6) permits the admission of the business record as evidence of the truth of the matters stated if it was made at or about the time of the event by a person with knowledge, and was made and kept in the course of a regularly conducted business activity.  **[See, Fed. Rule 803(6).]**

Fed. Rule 803(6) recognizes that business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations. The business records exception permits the admission of the business record as evidence of the truth of the matters stated if it was made at or about the time of the event by a person with knowledge, and was made and kept in the course of a regularly conducted business activity. **[See, Fed. Rule 803(6).]**

On this point, upon an examination of the claimed events leading to the alleged backdating of the Term Policy the Court may reject the claims set forth in NORTHWESTERN's letter of July 26, 2005 and its Discovery Responses "NML 1-

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)<br>Law Office of Douglas R. Dollinger & Associates<br>40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

19

307" as a matter of law because the letter was not made in the regular course of business at or about the time of the event and by a person with personal knowledge.

And, as will be shown below, they are not trustworthy.

Again, notwithstanding the fact that any change to the Term Policy must be made in writing, **NORTHWESTERN's** disclaimer letter dated July 26, 2006, states that the following events occurred, which as a consequence of these events no coverage existed at the time of Mr. Wilson's death on June 6, 2005:

"May 29, 2004 Policy 16852083 issued (Adjustable Complife/ACL) Policy 16852105 issued companion Term 75."

"April 2005     Based on our records Mr. Wilson decided to drop the coverage on the ACL policy 16852083 which caused a loss of the companion status. This created a $35.00 policy fee to be added to the remaining policy."

No date is actually provided, nor is there any information given relative to Mr. Wilson notifying **NORTHWESTERN** of his decision to drop the ACL coverage.

And, there is no reference to this statement present in NORTHWESTERN's Discovery Responses. **[See, Exhibits 7-8 "NML 1-307".]**

The letter continues on:

"May 23, 2005 Mr. Wilson called the Home Office questioning the shortage in his Insurance Service Account (ISA). We explained an additional fee of $35.00 was added to the payment due to the loss of the companion policy status. After hearing this, **Mr. Wilson requested a refund of his last payment** and allowed policy 16852105 to lapse. **Our records indicate that we contacted you, Mr. Stein, and you agreed that this would be fine." [Emphasis added.]**

Of interest to the Court should be the fact that there is virtually no record

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fines. 845.294.2772

information provided by **NORTHWESTERN** to indicate how Mr. Wilson was alerted to the shortage in his IAS account. The only notice to have been generated concerning this alleged shortage appears to be a letter dated June 13, 2005. The letter was allegedly sent after Mr. Wilson's death.

Moreover, **NORTHWESTERN** representative who it is claimed had the conversation with Mr. Wilson is surprised that a shortage existed in his ISA Account. According to the notes, the shortage should not have been "charged until the policy lapsed, after May 29, 2005. **[See Exhibit "NML 274".]**

The Court should also be aware that although this letter is directed to Mr. Stein, Mr. Stein denies receiving the letter, nor does he recall the conversation with **NORTHWESTERN** wherein he allegedly authorized the termination-cancellation and backdating of the Term Policy. **[See Exhibit "NML 115".]**

More importantly, however, is the fact that Mr. Stein admits he never had a conversation with Mr. Wilson concerning this alleged backdating and termination-cancellation or his authority to act on behalf of Mr. Wilson. What's more the Policy prohibits the Agent for entering into a change in the Policy with the insured, again, unless in writing. **[See, Exhibit 8 "M. Wilson-5" Section 1.3.]**

Next the letter states:

"May 23, 2005    An automated ISA termination letter dated May 23, 2005, is mailed to Mr. Wilson. This letter shows the premium paid to date of May 29, 2005. This termination letter also stated that the end of the grace period was July 29, 2005.

21

(This information is prior to refunding the February payment.)"

Without question, the statement related to the IAS letter being sent prior to refund is meaningless. The fact is that no other notice was set to Mr. Wilson to notify or cure the inferred error and as such **NORTHWESTERN** is bound by the plain meaning of the letter and is unsupported by any **NORTHWESTERN's** business record "Exhibit 8

"MNL 1-307". **[See, Point V. below.]**

Moving on to the next point:

"May 30, 2005 Premium is manually backdated to February 28, 2005, as Mr. Wilson requested."

Simply put, this statement is a complete fabrication. This is because May 30, 2005 was a Monday it was also Memorial Day weekend. Clearly, no one could have "manually backdated" the premium as claimed.

Under these circumstances the Court may reject the letter of July 6, 2005 as offered by **NORTHWESTERN** in their entirety.

22

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fines. 845.294.2772

## POINT III

**DEFENDANT IS PRECLUDED FROM OFFERING ANY TESTIMONY OF CONVERSATIONS ITS' EMPLOYEES HAD WITH THE DECEDENT KENNETH WILSON, AND ITS RECORDS ARE UNCERTAIN AS TO THE ALLEGED AGREEMENT TO BACKDATE-TERMINATION-CANCELLATION OF THE POLICIES**

Beyond the foregoing, meaning **NORTHWESTERN's** failure to obtain any writing from Mr. Wilson, is the prohibition imposed by New York's Dead Man's Statute in relation to any oral testimony to be offered in support of **NORTHWESTERN's** claimed agreement. [5]

The principal issue to be determined by the Court is whether any testimony offered by **NORTHWESTERN** as an interested party concerning the decedent Kenneth Wilson against his surviving spouse, **M. WILSON** is prohibited under New York law. See, CPLR 4519; Clift v Moses, 112 N.Y. 426; Corning v Walker, 100 N.Y. 547; Melkon v Kirk & Co., 220 App Div 180).

In instances of death and witness competency, as are before the Court, when state law supplies the substantive rule of decision, federal courts apply state "Dead Man's Statutes" to determine witness competency. See, Moore's Federal Practice, Vol. 10, Art. VI, § 601.06.

---

[5] Notwithstanding its' duty to do so **NORTHWESTERN** failed to follow it own protocols an obtain the documentation **NORTHWESTERN POLICY CANCELLATION FORM 12**, in relation to the alleged termination-cancellation of the Policy. Likewise, no facsimile or even an e-mail exist in relation to the **NORTHWESTERN's** claims.

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924 Tele. 845.294.2771 Fax; 845.294.2772

The statute in question, New York CPLR § 4519 provides:

"Upon the trial of an action * * *, a party or person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator or survivor of a deceased person * * *, or a person deriving his title or interest from, through or under a deceased person * * * by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person * * *." [Emphasis added.]

<u>Argument</u>

The intent of the statute is to prevent false testimony, by an interested person, which can be given without possibility of contradiction. See, <u>Endervelt v. Slade</u>, 162 Misc. 2d 975, 618 N.Y.S.2d 520 [Sup. Ct. 1994]; Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4519:1, at 165.

Because federal rule 56(e) requires exclusion of evidence on summary judgment motions which the dead man's statute would exclude at trial, as will be shown below, Plaintiff is entitled to summary judgment as a matter of law because **NORTHWESTEN's** business records are inconclusive without additional testimony.

Under New York's "Dead Man's Statute" **NORTHWESTERN** cannot testify as to transactions or communications with Mr. Wilson, meaning **NORTHWESTERN** must rely on it records as provided in its discovery responses.    See, C.P.L.R. §4519; see generally <u>Rosenfeld v. Basquiat</u>, 78 F.3d 84 (2d Cir. 1996).

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

And, while **NORTHWESTERN** may offer testimony concerning the authentication of their business records consisting of their description, the manner and method of recording transactions, an independent act which cannot be considered testimony "concerning a personal transaction or communication" with decedent (CPLR 4519; see, Matter of Estate of Tremaine, 156 AD2d 862, 863; William L. Mantha Co. v. De Graff, 242 App Div 666, affd 266 NY 581, they may not offer testimony about what was intended by the decedent. See, Van Vechten v Van Vechten, 20 N.Y.S. 140 and see also. Holcomb v Holcomb, 95 N.Y. 316, 325.

On this point, the legal weight which the Court may give to any documents produced by **NORHTWESTERN**, Plaintiff claims there is no genuine issue of fact, because any testimony that Kenneth Wilson orally agreed to accept their offer to change the termination-cancellation date of his Term Policy with a retroactive date of discharge to February 28, 2005, would be excluded at trial for the reason that the records forming the claim oral agreement for retroactive requests in termination-cancellation of the policy are not unequivocal and absolute concerning statements offered by **NORTHWESTERN** as made by Mr. Wilson.

The vagueness of the statements cannot be reconciled with the certainty which is required under the law unless supported by direct testimony concerning the transactions-negotiations. See, 6A Appleman, Insurance Law and Practice § 4226, at

25

652 (Rev ed 1972); see also 45 CJS Insurance § 513 (1993); 17 Couch on Insurance 2d

§ 67:144, at 603.

The result being that **NORTHWESTERN** will be unable to provide competent

evidence of Mr. Wilson's alleged agreement to retroactively terminate-cancel the Term

Life Policy, Policy No. 16852105, relating to the expiration of the grace period as

provided, June 29, 2005, even when viewing **NORTHWESTERN's** records in the light

most favorable to them.

In the end, **NORTHWESTERN's** business records fail to document that Mr.

Wilson agreed to the backdating of the Life Term Policy to February 28, 2005 and as

such **NORTHWESTERN's** 4th Affirmative Defense should be rejected and Plaintiff

should be granted summary judgment on the issue of payment to her as beneficiary of

the Term Policy.

26

## POINT IV

### KENNETH WILSON DID NOT CASH THE POLICY REFUND CHECK PRIOR TO HIS DEATH AND AS SUCH THE TERMINATION-CANCELLATION OF THE POLICY WAS BY OPERATION OF LAW REVOKED

**NORTHWESTERN** by its June 26, 2005 letter and Rule 34 Response NML states:

"May 31 2005 The premium refund check in the amount of $81.03 is mailed to Mr. Wilson."

**NORTHWESTERN** claims to have generated and mailed two (2) separate refund checks to Mr. Wilson on May 31, 2005; the checks were allegedly recorded as Check number:03241514, sequence number 1510014 in the sum of $154.07, and as indicated as check 2 of 2; the second check which is Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed.

**M. WILSON** testified during her deposition on November 2, 2007, that she cashed check number 03241514 in the sum of $154.07, after Kenneth's death because she thought it was a refund on his a policy for the reason that he died in the beginning of June 2005. See, Exhibit 10 She also testified she never received check number 03241515 in the sum of $81.03. **NORTHWESTERN's** own records confirm that the check for $81.03 has never cashed.

27

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

## Argument

Based on these facts, the legal consequences of Mr. Wilson's death are such that the termination-cancelation was revoked on his death as a matter of law.

The reason for the legal effect as aforesaid is that the offer to backdate and terminate-cancel the Policy, if made, was revocable, for the reason that it was not in writing, no consideration was given or received, it was not in such form as to make the promise binding irrespective of consideration, and there was no agreement not to revoke for a stated time. See, cf. Evans v. 2168 Broadway Corp., 281 N. Y. 34.

Clearly, even if all that **NORTHWESTERN** claim is true, the final determination-act to proceed with the backdating-termination was placed with Mr. Wilson.

And, "[t]he death . . . of the offeree in effect terminates a revocable offer because it thereby becomes impossible to accept it". (Restatement, Contracts, § 48, Comment a; 9 N. Y. Jur., Contracts, § 28; Twenty-Third St. Baptist Church v. Cornell, 117 N. Y. 601.

What's more the is no legal effect to be given to the fact that **M. WILSON** cashed the refund check for $154.07. Keeping in mind that the sum of $215.60 was deposited to Mr. Wilson's ISA in April 2005, for the monthly payments on his Term Life Policy from February 2005 through December 2005, the cashing of the second

28

check in the sum of $154.07 has no legal effect because the check is a refund from the end of May 2005 to December 2005, meaning the grace period for the policy remained in effect until at least June 29, 2005, and because Mr. Wilson died within the grace period any premium due would be paid under the terms of the policy and deducted from the death benefit payment to M. WILSON. [See, Exhibit 5-Exhibit "B" thereto at "Section 3.4 Grace Period". This section provides that the policy remains in "full force" during the grace period and also provides that in the event of death during the grace period "any overdue premium will be paid from the proceeds of the policy."]

## POINT V

**NORTHWESTERN's SERVICE OF ITS' ISA NOTICE DATED MAY 23, 2005, MUST BE CONSIDERED AN EXTENSION-OFFERING TO EXERCISE MR. WILSON'S OPTION TO KEEP THE POLCIY BY MAKING PAYMENT WITHIN THE TERM POLICY'S 31 DAY GRACE PERIOD**

Ambiguities in an insurance contract are to be construed favorably to the insured and strictly against the insurer See, Royal Ins. Co. v 342 Madison Ave. Assocs, 208 A.D.2d 389, 390.

Notices relative to the terms-offerings of a policy are considered an extension of the policy for purposes of ambiguities. See, Buchbinder Tunick & Co., As Successor To Buchbinder, Stein, Turick & Platkin, v. Manhattan National Life Insurance Company, 631 N.Y.S.2d 148, 219 A.D.2d 463.

## Argument

The Notice dated May 23, 2005 sent by **NORTHWESTERN** to Mr. Wilson, stated that: "Your Insurance Service Account (IAS) Has Been Closed". The reason given was that all of the policies in the account had been removed. [**See, Exhibit 8 M. Wilson 130.**]

The Notice also advised Mr. Wilson: "This policy remains in effect until the end of its grace period." [The notice indicates the end of the grace period was June 29, 2005.] The Notice then advises Mr. Wilson that at the end of the grace period: "…, if payment has not been received, the policy's no-payment provision becomes effective." [**See, Exhibit 8 M. Wilson 130.**]

**NORTHWESTERN's** claims that the letter was written prior to the refund of $81.03 and that the letter has no legal effect:

> May 23, 2005 · An automated ISA termination letter dated May 23, 2005, is mailed to Mr. Wilson. This letter shows the premium paid to date of May 29, 2005. This termination letter also stated that the end of the grace period was July 29, 2005. (**This information is prior to refunding the February payment.**) [Emphasis added.]

The mailing of the May 23, 2005 letter is ambiguous in and of itself, and although they knew otherwise, **NORTHWESTERN** did nothing to advise Mr. Wilson that the offer was rescinded or that it was no longer effective because of the claimed retroactive backdating of the policy termination-cancellation.

30

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-I (CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax: 845.294.2772

If the letter was mailed on May 23, 2005, and the checks were allegedly sent on May 31, 2005, **NORTHWESTERN** should have acted to cure the ambiguity within that time or within a reasonable time thereafter.

Construing the communication strictly against the insurer and favorably for the insured compels the conclusion, assuming Mr. Wilson received the May 23, 2005 letter prior to his death that **NORTHWESTERN** reasonably believed that **NORTHWESTERN** was offering him the chance to keep the policy at his option.

Thus, the general public policy against discontinuing insurance policies mandates the notice, which was generated on May 23, 2005 containing the language indicated must be construed to act as an invitation to maintain the policy, and because the check for $81.03 was never negotiated the Policy remain paid until at least June 29, 2005.

## POINT VI

**NORTHWESTERN WAS REQUIRED TO NOTIFY THE INSURED OF THE CANCELLATION OF HIS POLICY AND THE TYPE AND AMOUNT OF ANY AUTOMATIC NONFORFEITURE BENEFIT IN FORCE UNDER THE WHOLE LIFE POLICY AND FIALED TO DO SO WHEREIN THE POLICY WAS NEVER PROPERLY CANCELED**

Insurance Law §3211(a)(1) requires an insurer to issue a written notice of cancellation prior to terminating a life insurance policy for a default in the payment of a premium.

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Faxs. 845.294.2772

There is, however, an exception to the notice requirement concerning policies of insurance requiring the payment of premiums monthly or at shorter intervals. That is so long as, in the case of life insurance, the insurer mails written notice within six months of termination stating the type and amount of any automatic nonforfeiture benefit in force no notice of cancellation for non-payment of premiums is required. **[See, Insurance Law §3211.]**

## Argument

Once again the Court is faced with an ambiguity caused by the business practices of **NORTHWESTERN** and as such the ambiguity must be resolved in the insured's favor. See, <u>Royal Ins. Co. v 342 Madison Ave. Assocs.</u>, 208 A.D.2d 389, 390.

Mr. Wilson, in accord with the terms of the Policy **"Section 4.1 PREMIUM PAYMENT. Frequency"**, allegedly chose to make monthly payments wherein the payments were made to his IAS account and deducted on a monthly basis, it also appears that the actual payments were indeed billed by the company for payment on a quarterly basis. **[See, Exhibit 5-Exhibit "A" Section 4.1.]**

What's more, the Whole life Policy provides that "[the] interval of payment for future payments may be changed to annual, semi-annual, or quarterly * * * Any such change shall be effective upon acceptance by the Company of payment of the premium

32

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fax;. 845.294.2772

for the new interval or upon receipt by the Company of written request for such change."

Once the payment option for premiums was changed with the consent of **NORTHWESTERN** as evidence by their billing practices and acceptance of the premiums the language of Insurance Law §3211 was triggered, thus creating the requirement that defendant provide written notification of cancellation prior to its termination of the policy.

Beyond the foregoing, **NORTHWESTERN** has failed to provide the statutory notice prior to the cancellation of Mr. Wilson's ACL-Whole Life Policy; as required, no notice was ever generated and mailed to Mr. Wilson relative the type and amount of any automatic nonforfeiture benefit in force under the Whole Life Policy.

Hence, for the failure of **NORTHWESTERN** to follow the forgoing statutory mandates means that the Policy was never properly canceled and payment is due because where the insure fails to provide the proper notice the Policy remains in force for at least one-year.  See, Angulo, v. Security Mutual Life Insurance Company of New York, 500 N.Y.S.2d 272; 118 A.D.2d 745.

And see, **Exhibit 5-***Exhibit "A" thereto* at "**Section 4.1 Grace Period**".  This section provides that the policy remains in "full force" during the grace period and also provides that in the event of death during the grace period "any overdue premium will

Plaintiff's Memorandum with Points and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

33

be paid from the proceeds of the policy."]

As the party that seeks to rely upon cancellation of the policy, defendant has the burden of proving as a matter of law that the policy was canceled prior to the date of the death of plaintiff's husband. See, Abuhamra v New York Mut. Underwriters, 170 A.D.2d 1003, 566 N.Y.S.2d 156; Caprino v Nationwide Mut. Ins. Co., 34 A.D.2d 522, 308 N.Y.S.2d 624).

The consequences of the foregoing are that Mr. Wilson died within the grace period because he died within one year of the claimed cancelation date wherein the policy by statute and agreement remained in full force.

## CONCLUSION

Based on the above, Plaintiff respectfully requests that this Court grant her Motion for Summary Judgment.

By: _____

DOUGLAS R. DOLLINGER, ESQ.
Attorney for Plaintiff
40 Matthews Street
Village of Goshen
Goshen, New York 10924
Tele.  845.294.2771
Fasc.  845.294.2772

TO:

RIVKIN RADLER LLP
Attorneys for Defendant
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333

Plaintiff's  Memorandum  with  Points  and Authorities Case No.: 07CV2790-(CLB)
Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Fasc. 845.294.2772

## PROOF OF SERVICE

STATE OF NEW YORK )
COUNTY OF ORANGE)

I, EDWARD McCARTHY maintain my offices in the City of Newburgh, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings. My business address is 40 Matthews Street, Village of Goshen, Goshen, New York 10924.

On January, 31st 2008 I served the Annexed documents: Plaintiff's Notice of Motion-Declaration of Douglas R. Dollinger and Memorandum of Law in Support of the Plaintiff's Motion for Summary Judgment Pursuant to Fed. Rule 56 (c) on all interested parties at the addresses that follow:

*** PLEASE SEE ATTACHED SERVICE LIST***

## X  VIA OVERNIGHT MAIL:

By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

## ___ VIA U.S. MAIL:

By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on _____ with postage thereon fully paid at the local post office in Newburgh, New York.

## ___ VIA PERSONAL DELIVERY:

By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

## X  VIA FACSIMILE:

By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

Executed this 31st day of January 2008, Village of Goshen, County of Orange, State of New York.

EDWARD McCARTHY

<u>SERVICE LIST</u>

<u>WILSON V. NORTHWESTERN</u> Case No.: <u>07cv2790-(CLB)</u>

RIVKIN RADLER LLP
Attorneys for Defendant
Attn: Norman L. Tolle, Esq., of Counsel
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333