# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHELLE WILSON,                              )   Case No.: 07CV2790 (CLB)
                                             )   HON. CHARLES L BRIEANT
                          Plaintiff(s),      )
             vs.                             )
                                             )
                                             )
NORTHWESTERN MUTUAL INSURANCE                )
COMPANY,                                     )
                                             )
                          Defendant(s).      )
                                             )
_____        )

\*    \*    \*    \*

## PLAINTIFF's MEMORANDUM OF LAW IN OPPOSITON TO THE DEFENDANT's FED. RULE 56(C) MOTION FOR SUMMARY JUDGMENT

*Respectfully Submitted:*

> *Douglas R. Dollinger*
> *Attorney for Plaintiff*
> *40 Matthews Street-Suite 101*
> *Village of Goshen*
> *Goshen, New York 10924*
> *Tele. 845.294.2771*
> *Fax. 845.294.2772*

# TABLE OF CONTENTS

Page(s)

Table of Authorities............................................. iii-v

Preliminary Statement............................................ 1

Background- Facts................................................ 2-6

POINT I                                                          7-15

    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    SHOULD BE DENIED BECAUSE THE MOVANT HAS
    FAILED TO ESTABLISH THAT THE POLICIES WERE
    CANCELED AS A MATTER OF LAW PRIOR TO THE
    DEATH OF THE INSURED, KENNETH WILSON

Standard of Review............................................... 7

Argument......................................................... 8

POINT II                                                         16-19

    DEFENDANT IS PRECLUDED FROM OFFERING ANY
    TESTIMONY OF CONVERSATIONS ITS' EMPLOYEES
    HAD WITH THE DECEDENT KENNETH WILSON,
    AND ITS RECORDS ARE UNCERTAIN AS TO THE
    ALLEGED AGREEMENT TO BACKDATE-
    TERMINATION-CANCELLATION OF THE POLICIES

Argument......................................................... 17

POINT III

    KENNETH WILSON DID NOT CASH THE POLICY          20-22
    REFUND CHECK PRIOR TO HIS DEATH AND AS
    SUCH THE TERMINATION-CANCELLATION OF THE
    POLICY WAS BY OPERATION OF LAW REVOKED

i

**Argument** ............................................................... 20

**POINT IV**                                                        23-24

NORTHWESTERN's SERVICE OF ITS' ISA NOTICE
DATED MAY 23, 2005, MUST BE CONSIDERED AN
EXTENSION-OFFERING TO EXERCISE MR. WILSON'S
OPTION TO KEEP THE POLCIY BY MAKING PAYMENT
WITHIN THE TERM POLICY'S 31 DAY GRACE PERIOD

**Argument** ............................................................. 23

**POINT V**                                                         25-27

NORTHWESTERN WAS REQUIRED TO NOTIFY THE
INSURED OF  THE CANCELLATION  OF HIS POLICY
AND  THE TYPE AND  AMOUNT Of ANY AUTOMATIC
NONFORFEITURE BENEFIT IN FORCE  UNDER  THE
WHOLE LIFE  POLICY AND FIALED TO DO SO WHEREIN
THE POLICY WAS NEVER   PROPERLY CANCELED

**Argument** ............................................................. 25

**POINT VI**

THE BUSINESS PRACTICES OF NORTHWESTERN VIOLATE
NEW YORK STATE GENERAL BUSINESS LAW §349 AND
NEW YORK STATE INSURANCE LAW §4226 AS SUCH
PLAINTIFF IS ENTITLED TO PAYMENT OF LEGAL FEES

**CONCLUSION**............................................................. 31

**AFFIDAVIT OF SERVICE**

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

Abuhamra v. New York Mut. Underwriters, 170 A.D.2d 1003, 566 N.Y.S.2d 156 ............................................ 7

Acquista v. New York Life Ins. Co., 285 AD2d at 81 ..................................................................29

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1609, 26 L Ed. 2d 142 (1970).......... 6

Andre Strishak & Assocs., P.C. v. Hewlett Packard Co., 300 AD2d 608, 609 (2002)..............................28

Angulo, v. Security Mutual Life Insurance Company of New York, 500 N.Y.S.2d 272; 118 A.D.2d 745......... 26

Bank of N.Y. v. Kranis, 592 N.Y.S.2d 67 (N.Y.App. Div., 1st Dep't 1993 ......................................... 10

Buchbinder Tunick & Co., As Successor To Buchbinder, Stein, Turick & Platkin, v.
Manhattan National Life Insurance Company, 631 N.Y.S.2d 148, 219 A.D.2d 463..............................23

Caprino v. Nationwide Mut. Ins. Co., 34 A.D.2d 522, 308 N.Y.S.2d 624).........................................7

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986)...................7

Chemical Bank v. Sepler, 60 N.Y.2d 289, 294, 469 N.Y.S.2d 609, 457 N.E.2d 714 ............................. 10

Chemical Bank v. Wasserman, 37 N.Y.2d 249, 252, 371 N.Y.S.2d 919; 159 A.D.2d 475 ..................... 10

Clift v. Moses, 112 N.Y. 426..........................................................................................16

Corning v. Walker, 100 N.Y. 547 ................................................................................. 16

Citipostal, Inc. v. Unistar Leasing, 283 AD2d 916, 918 (2001)......................................................28

Dornberger v. Metropolitan Life Ins. Co., 961 F Supp 506, 549.....................................................28

Endervelt v. Slade, 162 Misc. 2d 975, 618 N.Y.S.2d 520..........................................................17

Evans v. 2168 Broadway Corp., 281 N. Y. 34 ................................................................... 21

Friedman v. Markman, 11 A.D.2d 57, 62.............................................................................11

Herbert v. State Farm Mutual Automobile Ins. Co., 124 AD2d 958, 959 (1986)....................................29

Holcomb v. Holcomb, 95 N.Y. 316, 325.............................................................................18

HPSC Inc. v. Matthews, 179 AD2d 974, 975.........................................................................11

Hospital for Joint Diseases v. Nationwide Mut. Ins. Co., 284 AD2d 374, 726 N.Y.S. 443 [2001].............14,20

Jaffe v. Paramount Communications, 644 N.Y.S.2d 43, 47 (N.Y.App. Div., 1st Dep't 1996 ................................ 9

Lendino v. Trans Union Credit Info. Co., 970 F.2d 1110, 1112 (2d Cir. 1992)................................8

# TABLE OF AUTHORITIES-Cont.

**Case**                                                                                          **Page**

Manhattan National Life Insurance Company,  631 N.Y.S.2d 148, 219 A.D.2d 463 ...........................25

Matter of Estate of Tremaine, 156 AD2d 862 ...................................................................18

Melkon v. Kirk & Co., 220 App Div 180) ........................................................................16

Mentz v. Newwitter, 122 NY 491, 497 ...........................................................................11

New York & Presbyt. Hosp. v. Allstate Ins. Co., 29 AD3d 547, 814 NYS2d, 687 (2006).................... 14,22

Norstar Bank v. Prompt Process Serv., 117 A.D.2d 589, 590, 498 N.Y.S.2d 61 ...............................12

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 NY2d 20, 26 (1995)..............28,29

Residential Holding Corp. v. Scottsdale Ins. Co., 286 AD2d 679, 729 NYS2d 776.................. 14,22

Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996 ...............................................................18

Royal Ins. Co. v. 342 Madison Ave. Assocs., 208 A.D.2d 389, 390. ........................................23, 25

Rubenstein v. Kleven, 261 F. 2d 921............................................................................11

Scavo v. Allstate Ins. Co., 238 AD2d 571 (2d Dept 1997)....................................................29

Twenty-Third St. Baptist Church v. Cornell, 117 N. Y. 601...................................................21

Van Vechten v. Van Vechten, 20 N.Y.S. 140 ..................................................................18

Warner & Whitney v. Union Camp Corp., 166 AD2d 776, 777 ...............................................11

William L. Mantha Co. v. De Graff, 242 App Div 666, affd 266 NY 581 ...................................18

## Rules

Fed. R. Civ. P. 56. ........................................................................................1, 3,19

## Statues

CPLR 4519..........................................................................................17,18,19, 20

New York Insurance Law §3211(a)(1)...........................................................................25

New York Insurance Law §3204...............................................................................10

New York Insurance Law §3216...............................................................................12

## TABLE OF AUTHORITIES-Cont.

**Statues**                                                                **Page**

New York Insurance Law §4226..............................................................................................12

New York Gen. Business Law §349........................................................................................28

New York Gen. Oblig. Law § 15-301(1)..........................................................................10,12

New York Gen. Oblig. Law § 5-701(a)(1)]....................................................................10,11,13


**Practice Commentaries**

Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4519:1, at 165............ 17

6A Appleman, Insurance Law and Practice § 4226, at 652 (Rev ed 1972)........................................ 19

45 CJS Insurance §513 (1993); 17 Couch on Insurance 2d § 67:144, at 603...................................... 19

Moore's Federal Practice, Vol. 10, Art. VI, § 601.06........................................................... 16

Restatement, Contracts, § 48, Comment a; 9 N. Y. Jur., Contracts, § 28......................................... 21

## **Preliminary Statement**

This is an action by Plaintiff, MICHELLE WILSON (**"M. WILSON"**) for recovery of the proceeds and payment of two life insurance policies, one whole life policy and one term life policy, totaling $500,000.00 in death benefits payable to her as named beneficiary on the death of her husband, the insured, Kenneth Wilson.

Defendant NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (**"NORTHWESTERN"**) the insurer, issued the Policies to Mr. Wilson in May 2004, but claims that prior to his death Mr. Wilson and **NORTHWESTERN** orally agreed to terminate-cancel the Policies.

**NORTHWESTERN** also claims-alleges that Mr. Wilson orally agreed that in the case of the Term Policy premiums, the premiums would be retroactively backdated with the result being that Mr. Wilson died without coverage because he died outside the Policy's 31 day grace period as a result of the backdating.

Plaintiff claims, notwithstanding the alleged oral agreement to backdate terminate-cancel the Term Policy, payment is due under the Policies' as a matter of law, each for separate reasons.

Defendant now moves this Court for entry of an order granting them summary judgment dismissing the Complaint as a matter of law pursuant to Fed. R. Civ. P. 56.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

## **Background- Facts**[1]

Kenneth Wilson was 36 years old at the time of his death. He left surviving his wife, Plaintiff **M. WILSON**, and two infant children, Jared-9 years old and Evan-6 years old.

Prior to his death of June 6, 2005, on or about May 22, 2004, Mr. Wilson purchased two (2) life insurance policies from **NORTHWESTERN,** ACL Whole Life Policy No. 16852083 (hereafter the "Whole Life Policy"), providing life insurance coverage in the amount of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS; and Term Insurance Policy No. 16852105 ("hereafter the Term Policy"), providing life insurance coverage in the amount of THREE HUNDRED FIFTY THOUSAND ($350,000.00) DOLLARS. **[See, Exhibit, 5,** *Exhibits "A" and "B" thereto***.]**

The Policies were sold to Mr. Wilson via their **NORTHWESTERN's** Agent Daniel Stein. Mr. Stein was also Mr. Wilson's Financial Advisor as provided by **NORTHWESTERN** and would have delivered the Polices to Mr. Wilson here in New York. **[See, Exhibit 5 ¶¶7-10 and Exhibit 11 at Page 66 lines 8-10.]**

---

[1] Plaintiff incorporates by reference Exhibits "1" through "12" of Volumes I and II- submitted in support of Plaintiff's Motion for Summary Judgment as though set forth here and again.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

2

Demand was timely made for payment on the Polices by **M. WILSON** as the named beneficiary thereto. **[See, Exhibit's 5-*Exhibits "A", "B" and "D" thereto*.]**

Initially, payments were agreed to be made monthly, however, payment on the Policies was changed and the Company agreed to accept payments on each policy at different frequencies including either a monthly or a quarterly basis. **Exhibit 8 "NML 292-297".]**

**NORTHWESTERN** has refused to make payment on the Policies, claiming that Whole Life Policy lapsed with the consent of Mr. Wilson for non-payment of premiums with a paid to date of February 28, 2005. **[See, Exhibit's 5-*Exhibit "D" thereto* and Exhibit 8 "NML 99-100".]**

On or about 29, April 2005 **NORTHWESTERN** received electronic wire payment from Mr. Wilson for payment on his Term Policy in the sum of $215.60. The funds were paid to his Insurance Service Account ("IAS") for the premium payments to the end of the year, December 2005. **[See, Exhibits 8 "M. Wilson 130" and Exhibit 8 "NML 169" and "292-297".]**

**NORTHWESTERN** also claims that on May 23, 2005, just 14 days prior to his death Mr. Wilson and **NORTHWESTERN** orally agreed to terminate-cancel the Term

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924• Tele. 845.294.2771 Facs. 845.294.2772

3

Policy and that Mr. Wilson "requested a refund of his last payment", which they claim was an agreement to backdate the Term Policy to February 28, 2005, thus relieving **NORTHWESTERN** of its obligation for payment under the Term Policy's 31 day grace period. [See, Exhibit 5-*Exhibit "D" thereto*, **and see Exhibit 8 "NML 99-100".**]

The specific facts concerning the oral agreement to terminate the Term Policy being, as **NORTHWESTERN** claims, that on May 23, 2005, Mr. Wilson called making inquires concerning an alleged shortage in his IAS-Account of $35.00. **[See, Affidavit Diane Knueppel ¶¶4-6 and Exhibit "A" thereto.]**

**NORTHWESTERN** claims the shortage was the result of the loss in companion status related to the Whole Life Policy, and that they advised Mr. Wilson of the reason for the shortage in his ISA-Account and that there would be an additional charge of $35.00 as a result of the loss of the companion status of the Whole Life Policy. **[See, Affidavit Diane Knueppel¶¶4-6 and Exhibit "A" thereto.]**

Defendant also claims that after advising Mr. Wilson of the additional $35.00 charge, **NORTHWESTERN** agreed to refund the Term Policy premiums to his last draft. [See, Exhibit 5- *Exhibit "D" thereto*, **and see Exhibit 8 "NML 99-100".] [See, Exhibit 8 "NML 227 Pages 1 of 7".]**

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

4

In response **NORTHWESTERN** issued its refund check of $154.07 on May 31, 2005, which said sum was a refund of premiums for the months of June 2005 through December 2005. **[Exhibit 8 Wilson "NML 154", 227 Pages 1 of 7" and NML "292"-"297".]**

This check was received by **M. WILSON** after Mr. Wilson's death. **[See, Exhibit 10 "Page 33- Line 16 continuing to Page 37 Line 16".]**

However, **NORTHWESTERN** also claims that after the premium payment of $154.07 was agreed to be refunded, they offered to terminate-cancele the Term Policy and in fact backdate the premium payment to February 28, 2005. They claim to have issued a second check in the sum of $81.03 on May 31, 2005. Significantly, it appears this check was not delivered prior to Mr. Wilson's death, nor was it ever received by **M. WILSON.** In fact, this check has never been cashed. **See, Exhibit 10 "Page 33- Line 16 continuing to Page 37 Line 16".]**

Notwithstanding the claim that a check in the sum of $81.03 was mailed on May 31, 2005, after being manually backdated on Memorial Day 2005, prior thereto, on or about May 23, 2005 **NORTHWESTERN** mailed Mr. Wilson notice that his Term Policy was paid to May 29, 2005 and that the grace period under the Policy expired on June 29, 2005. **[See, Exhibit 5 *Exhibit "E" annexed thereto* - letter dated May 23,

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

5

2005, stating that Mr. Wilson's ISA Account had been closed but was paid to May 29, 2005, with a "Grace Period" to expire on June 29, 2005.]

**NORTHWESTERN** also claims that on May 31, 2005, after having manually backdated the Policy's paid to date, on Memorial Day May 31, 2005 they mailed two (2) checks to Mr. Wilson.  **[See Exhibit 8 "NLM  99- 100, 218",  and NML 307". [ And See, Affidavit Diane Knueppel¶¶4-6 and Exhibit "A" thereto.]**

Based on these alleged mailings **NORTHWESTERN** claims that the Term Policy was terminated-cancelled prior to the death of Mr. Wilson with as effective date of February 28, 2005.  **[See, Exhibit 8 "NLM  99-100".]**

Plaintiff claims that **NORTHWESTERN** failed to provide the proper and timely statutory notice for cancellation of the Whole life Policy No.: 16852083.   **[See, Exhibit "5" Plaintiff Complaint.]**

And, concerning the Term Policy, she claims that the oral agreement to modify the insurance contract was void, and that Mr. Wilson died during the coverage period because he died on June 6, 2005, within the thirty-one (31) day grace period provided for under Policy.  Hence, **NORTHWESTERN** is in breach of contract.   **[See, Exhibit "5" Plaintiff Complaint.]**

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

6

## POINT I

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE MOVANT HAS FAILED TO ESTABLISH THAT THE POLICIES WERE CANCELED AS A MATTER OF LAW PRIOR TO THE DEATH OF THE INSURED, KENNETH WILSON

## Standard of Review

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.   See, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).   The movant may discharge this burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case on an issue which that party would have the burden of proof at trial. See, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

In this case, as the party that seeks to rely upon cancellation of the policy, defendant has the burden of proving as a matter of law that the policy was canceled prior to the date of the death of Plaintiff's husband in relation to Plaintiffs breach of contract claim.  See, Abuhamra v New York Mut. Underwriters, 170 A.D.2d 1003, 566 N.Y.S.2d 156; Caprino v Nationwide Mut. Ins. Co., 34 A.D.2d 522, 308 N.Y.S.2d 624).
[See, Exhibit "5" Plaintiff Complaint.]

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

7

As the Second Circuit has noted, "it has long been the rule that on summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." See, Lendino v. Trans Union Credit Info. Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (quotation omitted).

## Argument

First, addressing the Term Policy and its retroactive termination-cancellation, Plaintiff claims that the record before the Court demonstrates that there is sufficient evidence to grant summary judgment in her favor and that in the alternative there exists a genuine issue of fact as to whether **NORTHWESTERN** is in breach of its insuring agreement-Term Policy. This is because the modification to the Term Policy at issue was void for the reason that the modification involves a prohibited oral change to the express terms of that Policy, meaning the Policy's grace period and the rights associated with that term.

Plaintiff Complaint alleges that changes involving retroactive termination-cancellation of a life insurance policy must be accompanied by writing subscribed to by both the insured and also an authorized officer for the Defendant, **NORTHWESTERN**. [See, Exhibit 5, *Exhibit "B"* page(s) 6, Section 3.4.]

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

8

Defendant claims that "[n]either Policy contains a provision forbidding oral termination...." **[See, Defendant's Memorandum of Law at page 13.]**

Of course this proposition completely ignores the fact that the Term Policy specifically provides that changes to the policy were required to be in writing and approved by an officer of **NORTHWESTERN**[2]. Likewise, it ignores the fact that the grace period was a specific term of the Policy, or that the law treats any change not in writing as void. **[See, Exhibit 5- *Exhibit "B"* page(s) 6, Section 3.4.]**

Pursuant to the Policy's terms, "[a]ny change of [the] policy require[d] the written consent of an executive officer". **[See, Exhibit 8 "M. Wilson-5" Section 1.3. "ENTIRE CONTRACT; CHANGES"]**

Under New York law the legal effect of this provision in the policy specifically requiring that notice be given in writing for a change to the terms of the policy means that anything that derogates from written notice to the terms of the policy must be in writing and if it is not it is unenforceable or void. See, New York Gen. Oblig. Law § 15-301 (contractual requirement of written notice is enforceable and cannot be waived except in writing); see, e.g., Jaffe v. Paramount Communications, 644 N.Y.S.2d 43, 47

---

[2] While Defense Counsel asserts that the neither Policy prohibits oral modification this is a misstatement of the express language of the Term Policy.   [See, Defendant's Memorandum of Law at page 13.] and [See, Exhibit 5- *Exhibit "B"* page(s) 6, Section 3.4.]

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

9.

(N.Y.App. Div., 1st Dep't 1996) (where contract required written notice, presence or absence of a writing is dispositive; extrinsic evidence is immaterial under New York Gen. Oblig. Law §15-301); <u>Bank of N.Y. v. Kranis,</u> 592 N.Y.S.2d 67 (N.Y.App. Div., 1st Dep't 1993) (same: contract "with a no-oral-modification clause is not amenable to oral termination.) See also, <u>Chemical Bank v Sepler,</u> 60 N.Y.2d 289, 294, 469 N.Y.S.2d 609, 457 N.E.2d 714; <u>Chemical Bank v Wasserman,</u> 37 N.Y.2d 249, 252, 371 N.Y.S.2d 919, 333 N.E.2d 187;, 159 A.D.2d 475, 552 N.Y.S.2d 347; <u>Norstar Bank v Prompt Process Serv.,</u> 117 A.D.2d 589, 590, 498 N.Y.S.2d 61.

Likewise, New York Insurance Law §3204 prohibits the oral modification of insurance agreements other than by an instrument signed by the party to be charged with the modification. [See, Insurance Law §3204].

Since the conditions-terms allegedly modified are part of the written agreement, **[See, Premiums-Grace Periods at 3.4]**, both Sections 15-301(1) of the General Obligations Law of New York and §3204 of the Insurance Law of New York prohibit proof of any modification of the agreement unless in a writing signed by Kenneth Wilson, which in this case does not exists.

And, because the obligation to pay life insurance premiums are to continued until the instant of death, the Statute of Frauds-General Obligations Law, § 5-701, subd. 1 is

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

10

also applicable to this insurance agreement in that in no event can performance be completed within a year or before the end of a lifetime. See, <u>Friedman v. Markman</u>, 11 A.D.2d 57, 62; and see also, <u>Rubenstein v. Kleven</u>, 261 F. 2d 921.

In accordance with the foregoing proposition, the law is that an agreement which "[b]y its terms is not to be performed within one year from the making thereof" is **void** unless it is in writing and "subscribed by the party to be charged therewith." **|General Obligations Law § 5-701(a)(1)|.** [Emphasis added.]

Simply put, under the circumstances, because the contract at issue herein by definition cannot be performed within one year of its making, the claimed modification must be in the form of a written memorandum or note.

In order for a written memorandum or note to meet the requirements imposed by the Statute of Frauds, it must, in addition to being "subscribed by the party to be charged therewith" **|General Obligations Law § 5-701(a)|** [also] "contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is." See, <u>HPSC Inc. v. Matthews</u>, 179 AD2d 974, 975, quoting <u>Mentz v. Newwitter</u>, 122 NY 491, 497; see, <u>Warner & Whitney v. Union Camp Corp.</u>, 166 AD2d 776, 777.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

11

Notwithstanding    the    admitted    oral    nature    of    the    alleged    agreement, **NORTHWESTERN** is attempting to overcome the bar produced by the failure to have a writing signed by Mr. Wilson by claiming that their business records reflect the alleged oral modification and are sufficient for retroactive termination-cancellation of the Policy because the modification is for a change in premium due date and does not effect the terms of the Policy. **[But, see Insurance Law §3216 (d)(1)(c) providing that grace periods are governed by statute as a term of any life insurance policy issued in New York.]**

In support of its' Motion, by the Affidavit of Diane Knueppel and it Exhibits, **NORTHWESTERN** claims that on May 23, 2005, they received a telephone call from Kenneth Wilson who was making inquiry related to an alleged $35.00 shortage in his ISA account and that he was requesting a refund of his "**last payment** and to allow the **Term Policy to lapse**."[3] **[See, Exhibit "8" NML 227 Pages 1 of 7.]**

Ms. Knueppel Affidavit provides at Exhibit "A", "Casetracker notes", that the notes were made in the regular course of business.

---

[3] Despite **NORTHWESTERN's** claims that Mr. Wilson "called . . . . . to find out why he had been notified that there was a shortage in the ISA", **NORTHWESTERN** has fail to provide any type of notice which was sent to Mr. Wilson prior to his death to indicate how he was alerted to the alleged $35.00 shortage. A notice relative to $35.00 shortage was sent on June 13, 2005. **[See, Exhibit 8 NML 262.]** However, this was after Mr. Wilson's death and it does not explain how Mr. Wilson discovered the shortage. Moreover, as will be shown below, the **NORTHWESTERN** representative Diane Knueppel who it is claimed had the conversation with Mr. Wilson is surprised that a shortage existed. According to her notes, the shortage should not have been "charged until the policy lapsed", after May 29, 2005.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

12

In pertinent part the Casetracker notes state:

" Client is inquiring as to why there is a shortage on the ISA as he requested draft for amount to get him paid to end of year. Negotiated call back so I may review. Phone: 914-682-5546." [See, **Knueppel Affidavit Exhibit "A".**]

"Spoke with client. Informed him that the $35 is a policy fee that was previously waived due to the companion status on the policy. Once his ACL lapsed this policy is no longer a companion policy so the fee is no longer waived. Client indicated the amount quoted to pay IAS to December included this fee. Explained that the fee would not have charged until policy lapsed, thereafter the amount quoted to reactivate ISA did not include the policy fee." [See, **Knueppel Affidavit Exhibit "B".**]

"Client is now asking to be refunded his **last payment and let the policy lapse.** Negotiated call back so I may contact FR discuss." [See, **Knueppel Affidavit Exhibit "B".**] [Emphasis added.]

The notes go on to state:

"Informed client that I am working on refunding **last draft** that was done on ISA." [See, **Knueppel Affidavit Exhibit "C".**] [Emphasis added.]

Defendant claims that based on these conversations it retroactively terminated-canceled Mr. Wilson's Term Policy No. 16852105 to the same date as the termination of his Whole Life Policy No. 16852983 to February 28, 2005, wherein a refund of $81.03 was allegedly issued on May 31, 2005, Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed. [4] [See, **Knueppel Affidavit Exhibit "E".**]

---

[4] Although **NORTHWESTERN** claims to have manually backdated the premium on Memorial Day, May 30, 2005 and to have issued Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed on May 31 2005, Plaintiff denies ever receiving the check. What's more, the check has never been cashed. [See, Exhibit 8 "NML 99-100".]

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

13

In spite of the these notes, and even the claimed act of Ms. Knueppel in "sending" the premium refund check there is a lack of proof of mailing as required, and as such the Court should reject the claim that  Check number 03241514, sequence number 1510015 in the sum of $81.03 was ever mailed.  **[See, Knueppel Affidavit ¶11.]**  See, e.g. <u>New York & Presbyt. Hosp. v. Allstate Ins. Co.</u>, 29 AD3d 547, 814 NYS2d, 687 [2006]; <u>Residential Holding Corp. v. Scottsdale Ins. Co.</u>, 286 AD2d 679, 729 NYS2d 776 ; <u>Hospital for Joint Diseases v. Nationwide Mut. Ins. Co.</u>, 284 AD2d 374, 726 N.Y.S. 443 [2001].

Likewise, it is not at all clear whatsoever from the content contained in the notes, even assuming that there was oral an agreement to terminate-cancel the Term Policy, whether Mr. Wilson made any agreement to modify the terms of the Policy beyond "**refunding his last payment**" as to May 29, 2005, as opposed to the claim that a refund was being made to his last **"draft"** with a retroactive termination to February 28, 2005. [5]

The distinction is real because the meaning assigned to the notes is speculative and self serving for the reason that they do not reflect what Mr. Wilson agreed to or

---

[5] Mr. Wilson's IAS account was billed quarterly and was billed internally monthly.  On May 31, 2005, a premium refund check in the sum of $154.07 was drafted. **[See, Exhibit 8-NML 251]**  Its' actual mailing date is a matter of dispute and will be discussed below.  The check was cashed by Plaintiff in late June 2005 approximately three (3) weeks after Mr. Wilson's death.  Of interest to the Court should be the fact that the check represents a premium refund on Mr. Wilson's Term Policy 16852105 to May 29, 2005, meaning of course that the 31 day grace period did not expire until at least June 29, 2005.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

14

requested with any sort of reliable specificity.   Since the alleged statements-records do not prove the existence of the agreement with the terms as claimed by **NORTHWESTERN** and do not in the slightest way refer to the terms alleged the Court should reject the meaning assigned to them by **NORTHWESTERN** concerning any agreement to backdate the termination-cancellation of the Term Policy to February 28, 2005 finding that any cancellation was ineffective or alternatively that a question of fact exists as to what Mr. Wilson meant concerning his direction to **"refund his last payment and let the policy lapse". [See, Exhibit "8" NML 227 Pages 1 of 7.]**  and [See, Knueppel Affidavit Exhibits "B" and "C".]

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

15

## POINT II

## DEFENDANT IS PRECLUDED FROM OFFERING ANY TESTIMONY OF CONVERSATIONS ITS' EMPLOYEES HAD WITH THE DECEDENT KENNETH WILSON, AND ITS RECORDS ARE UNCERTAIN AS TO THE ALLEGED AGREEMENT TO BACKDATE-TERMINATION-CANCELLATION OF THE POLICIES

Beyond the foregoing, meaning **NORTHWESTERN's** failure to obtain any writing from Mr. Wilson, is the prohibition imposed by New York's Dead Man's Statute in relation to any oral testimony to be offered in support of **NORTHWESTERN's** claimed agreement. [6]

The principal issue to be determined by the Court is whether any testimony offered by **NORTHWESTERN** as an interested party concerning the decedent Kenneth Wilson against his surviving spouse, **M. WILSON** is prohibited under New York law. See, CPLR 4519; Clift v Moses, 112 N.Y. 426; Corning v Walker, 100 N.Y. 547; Melkon v Kirk & Co., 220 App Div 180).

In instances of death and witness competency, as are before the Court, when state law supplies the substantive rule of decision, federal courts apply state "Dead Man's Statutes" to determine witness competency. See, Moore's Federal Practice, Vol. 10, Art.

---

[6] Notwithstanding its' duty to do so **NORTHWESTERN** failed to follow it own protocols and obtain the documentation **NORTHWESTERN POLICY CANCELLATION FORM**. See, **Exhibit 12**, in relation to the alleged termination-cancellation of the Policy. Likewise, no facsimile or even an e-mail exists in relation to the **NORTHWESTERN's** claims.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

16

VI, § 601.06.

The statute in question, New York CPLR § 4519 provides:

> "Upon the trial of an action * * *, a party or person interested in the event *
> * * shall not be examined as a witness in his own behalf or interest * * *
> against the executor, administrator <u>or survivor of a deceased person</u> * * *, or
> a person deriving his title or interest from, through or under a deceased
> person * * * by assignment or otherwise, concerning a personal transaction
> or communication between the witness and the deceased person * * *."
> **[Emphasis added.]**

## <u>Argument</u>

The intent of the statute is to prevent false testimony, by an interested person,
which can be given without possibility of contradiction.  See, <u>Endervelt v. Slade</u>, 162
Misc. 2d 975, 618 N.Y.S.2d 520 [Sup. Ct. 1994]; Alexander, Practice Commentaries,
McKinney's Cons Laws of NY, Book 7B, CPLR C4519:1, at 165.

Because federal rule 56(e) requires exclusion of evidence on summary judgment
motions which the dead man's statute would exclude at trial, as will be shown below,
Defendant is not entitled to summary judgment as a matter of law because
**NORTHWESTERN's** business records are inconclusive without additional testimony.

Under New York's "Dead Man's Statute" **NORTHWESTERN** cannot testify as
to transactions or communications with Mr. Wilson, meaning **NORTHWESTERN**
must rely on it records as provided in its discovery responses and the Affidavits

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

17

submitted in support of its motion.    See, C.P.L.R. §4519; see generally <u>Rosenfeld v. Basquiat</u>, 78 F.3d 84 (2d Cir. 1996).

And, while **NORTHWESTERN** may offer testimony concerning the authentication of their business records consisting of their description, the manner and method of recording transactions, an independent act which cannot be considered testimony "concerning a personal transaction or communication" with decedent (CPLR 4519; see, <u>Matter of Estate of Tremaine</u>, 156 AD2d 862, 863; <u>William L. Mantha Co. v. De Graff</u>, 242 App Div 666, affd 266 NY 581, they may not offer testimony about what was intended by the decedent. See, <u>Van Vechten v Van Vechten</u>, 20 N.Y.S. 140 and see also. <u>Holcomb v Holcomb</u>, 95 N.Y. 316, 325.

On this point, the legal weight which the Court may give to any documents produced by **NORTHWESTERN**, Plaintiff claims, that because any testimony that Kenneth Wilson orally agreed to accept their offer to change the termination-cancellation date of his Term Policy with a retroactive date of discharge to February 28, 2005, would require further explanation concerning the conversations related to the Casetraker Notes, they would be excluded at trial for the reason that the records forming the claim oral agreement for retroactive requests in termination-cancellation of the policy are not unequivocal and absolute concerning statements offered by **NORTHWESTERN** as made by Mr. Wilson.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

18

The vagueness of the statements cannot be reconciled with the certainty which is required under the law unless supported by direct testimony concerning the transactions-negotiations. See, 6A Appleman, Insurance Law and Practice § 4226, at 652 (Rev ed 1972); see also 45 CJS Insurance § 513 (1993); 17 Couch on Insurance 2d § 67:144, at 603.

The result being that **NORTHWESTERN** will be unable to provide competent evidence of Mr. Wilson's alleged agreement to retroactively terminate-cancel the Term Life Policy, Policy No. 16852105, relating to the expiration of the grace period as provided, June 29, 2005, even when viewing **NORTHWESTERN's** records in the light most favorable to them.

In the end, **NORTHWESTERN's** business records fail to document that Mr. Wilson agreed to the backdating of the Life Term Policy to February 28, 2005 and as **NORTHWESTERN** was obligated to make payment to Plaintiff as beneficiary of the Term Policy and is in breach of contract.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

19

### POINT III

### KENNETH WILSON DID NOT CASH THE POLICY REFUND CHECK PRIOR TO HIS DEATH AND AS SUCH THE TERMINATION-CANCELLATION OF THE POLICY WAS BY OPERATION OF LAW REVOKED

**NORTHWESTERN** claims to have generated and mailed two (2) separate refund checks to Mr. Wilson on May 31, 2005; the checks were allegedly recorded as Check number:03241514, sequence number 1510014 in the sum of $154.07, and as indicated as check 2 of 2; the second check which is Check number 03241514, sequence number 1510015 in the sum of $81.03, and as indicated is check 1 of 2 checks mailed.

**M. WILSON** testified during her deposition on November 2, 2007, that she cashed check number 03241514 in the sum of $154.07, after Kenneth's death because she thought it was a refund on his policy for the reason that he died in the beginning of June 2005.  **[See, Exhibit "10".]** She also testified she never received check number 03241515 in the sum of $81.03. **NORTHWESTERN's** own records confirm that the check for $81.03 has never cashed.  **[See, Cylvia Price Affidavit ¶30.]**

### Argument

Based on these facts, the legal consequences of Mr. Wilson's death are such that the termination-cancelation was revoked on his death as a matter of law.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

20.

The reason for the legal effect as aforesaid is that the offer to backdate and terminate-cancel the Policy, if made, was revocable, for the reason that it was not in writing, no consideration was given or received, it was not in such form as to make the promise binding irrespective of consideration, and there was no agreement not to revoke for a stated time. See, cf. Evans v. 2168 Broadway Corp., 281 N. Y. 34.

Clearly, even if all that **NORTHWESTERN** claims is true, the final determination-act to proceed with the backdating-termination was placed with Mr. Wilson.

And, "[t]he death . . . . of the offeree in effect terminates a revocable offer because it thereby becomes impossible to accept it". (Restatement, Contracts, § 48, Comment a; 9 N. Y. Jur., Contracts, § 28; Twenty-Third St. Baptist Church v. Cornell, 117 N. Y. 601.

What's more there is no legal effect to be given to the fact that **M. WILSON** cashed the refund check for $154.07. Keeping in mind that the sum of $215.60 was deposited to Mr. Wilson's ISA in April 2005, for the monthly payments on his Term Life Policy from February 2005 through December 2005, the cashing of the second check in the sum of $154.07 has no legal effect because the check is a refund from the end of May 2005 to December 2005, meaning the grace period for the policy remained in effect until at least June 29, 2005, and because Mr. Wilson died within the grace

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

21

period any premium due would be paid under the terms of the policy and deducted from the death benefit payment to **M. WILSON**. [See, **Exhibit 5-***Exhibit "B" thereto* at "**Section 3.4 Grace Period**".] This section provides that the policy remains in "full force" during the grace period and also provides that in the event of death during the grace period "any overdue premium will be paid from the proceeds of the policy."]

Hence, because there is no offer or regularity in relation to the mailing, **NORTHWESTERN** is in breach of the insuring agreement. **[See, Knueppel Affidavit ¶11.]** See, e.g. New York & Presbyt. Hosp. v. Allstate Ins. Co., 29 AD3d 547, 814 NYS2d, 687 [2006]; Residential Holding Corp. v. Scottsdale Ins. Co., 286 AD2d 679, 729 NYS2d 776, supra ; Hospital for Joint Diseases v. Nationwide Mut. Ins. Co., 284 AD2d 374, 726 N.Y.S. 443 [2001].

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

22

## POINT IV

## NORTHWESTERN's SERVICE OF ITS' ISA NOTICE DATED MAY 23, 2005, MUST BE CONSIDERED AN EXTENSION-OFFERING TO EXERCISE MR. WILSON'S OPTION TO KEEP THE POLCIY BY MAKING PAYMENT <u>WITHIN THE TERM POLICY'S 31 DAY GRACE PERIOD</u>

Ambiguities in an insurance contract are to be construed favorably to the insured and strictly against the insurer See, <u>Royal Ins. Co. v 342 Madison Ave. Assocs.</u>, 208 A.D.2d 389, 390.

Notices relative to the terms-offerings of a policy are considered an extension of the policy for purposes of ambiguities. See, <u>Buchbinder Tunick & Co., As Successor To Buchbinder, Stein, Turick & Platkin, v. Manhattan National Life Insurance Company</u>, 631 N.Y.S.2d 148, 219 A.D.2d 463.

### Argument

The Notice dated May 23, 2005 sent by **NORTHWESTERN** to Mr. Wilson, stated that: "Your Insurance Service Account (IAS) Has Been Closed". The reason given was that all of the policies in the account had been removed. **[See, Exhibit 8 M. Wilson 130.]**

The Notice also advised Mr. Wilson: "This policy remains in effect until the end of its grace period." [The notice indicates the end of the grace period was June 29, 2005.] The Notice then advises Mr. Wilson that at the end of the grace period: "..., if

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

23

payment has not been received, the policy's no-payment provision becomes effective."
**[See, Exhibit 8 M. Wilson 130.]**

Under the circumstances, the mailing of the May 23, 2005 letter is ambiguous in and of itself, and although they knew otherwise, **NORTHWESTERN** did nothing to advise Mr. Wilson that the offer was rescinded or that it was no longer effective because of the claimed retroactive backdating of the policy termination-cancellation.

If the letter was mailed on May 23, 2005, and the checks were allegedly sent on May 31, 2005, **NORTHWESTERN** should have acted to cure the ambiguity within that time or within a reasonable time thereafter.

Construing the communication strictly against the insurer and favorably for the insured compels the conclusion, assuming Mr. Wilson received the May 23, 2005 letter prior to his death that Mr. Wilson reasonably believed that **NORTHWESTERN** was offering him the chance to keep the policy at his option and that because he died with the Policy's grace period as provided there was no cancellation of the Policy.

The general public policy against discontinuing insurance policies mandates the notice, which was generated on May 23, 2005 containing the language indicated must be construed to act as an invitation to maintain the policy, and because the check for $81.03 was never negotiated the Policy remain paid until at least June 29, 2005.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

24

## POINT V

## NORTHWESTERN WAS REQUIRED TO NOTIFY THE INSURED OF THE CANCELLATION OF HIS POLICY AND THE TYPE AND AMOUNT Of ANY AUTOMATIC NONFORFEITURE BENEFIT IN FORCE UNDER THE WHOLE LIFE POLICY AND FIALED TO DO SO WHEREIN THE POLICY WAS NEVER PROPERLY CANCELED

Insurance Law §3211(a)(1) requires an insurer to issue a written notice of cancellation prior to terminating a life insurance policy for a default in the payment of a premium.

There is, however, an exception to the notice requirement concerning policies of insurance requiring the payment of premiums monthly or at shorter intervals. That is so long as, in the case of life insurance, the insurer mails written notice within six months of termination stating the type and amount of any automatic nonforfeiture benefit in force no notice of cancellation for non-payment of premiums is required. **[See, Insurance Law §3211.]**

## Argument

Once again the Court is faced with an ambiguity caused by the business practices of **NORTHWESTERN** and as such the ambiguity must be resolved in the insured's favor. See, <u>Royal Ins. Co. v 342 Madison Ave. Assocs.</u>, 208 A.D.2d 389, 390.

As admitted by the Defendants the Whole life Policy provides that "[the] interval of payment for future payments may be changed to annual, semi-annual, or quarterly *

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

25

* * Any such change shall be effective upon acceptance by the Company of payment of the premium for the new interval or upon receipt by the Company of written request for such change."

Once the payment option for premiums was changed with the consent of **NORTHWESTERN** as evidence by their billing practices and acceptance of the premiums the language of Insurance Law §3211 was triggered, thus creating the requirement that defendant provide written notification of cancellation prior to its termination of the policy.

**NORTHWESTERN** has failed to provide the statutory notice prior to the cancellation of Mr. Wilson's ACL-Whole Life Policy; as required, no notice was ever generated and mailed to Mr. Wilson relative the type and amount of any automatic nonforfeiture benefit in force under the Whole Life Policy.

Hence, for the failure of **NORTHWESTERN** to follow the forgoing statutory mandates means that the Policy was never properly canceled and payment is due because where the insurer fails to provide the proper notice the Policy remains in force for at least one-year.  See, <u>Angulo, v. Security Mutual Life Insurance Company of New York,</u> 500 N.Y.S.2d 272; 118 A.D.2d 745.  [And see, **Exhibit 5**-*Exhibit "A" thereto* at **"Section 4.1 Grace Period"**.  This section provides that the policy remains in "full force" during the grace period and also provides that in the event of death

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

26

during the grace period "any overdue premium will be paid from the proceeds of the policy."]

The consequences of the foregoing are that Mr. Wilson died within the grace period because he died within one year of the claimed cancelation date wherein the policy by statute and agreement remained in full force with premium payment to be deducted for the policy proceeds.

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

27

## POINT VI

## THE BUSINESS PRACTICES OF NORTHWESTERN VIOLATE NEW YORK STATE GENERAL BUSINESS LAW §349 AND NEW YORK STATE INSURANCE LAW §4226 AS SUCH PLAINTIFF IS ENTITLED TO PAYMENT OF LEGAL FEES

General Business Law §349 prohibits deceptive business practices See, Andre Strishak & Assocs., P.C. v Hewlett Packard Co., 300 AD2d 608, 609 [2002]). "The elements of a cause of action for deceptive business practices under General Business Law § 349 are a consumer-oriented act or practice that is misleading in a material way, and that causes injury to the plaintiff." See, Citipostal, Inc. v Unistar Leasing, 283 AD2d 916, 918 [2001]; Andre Strishak & Assocs., P.C., 300 AD2d at 609.

Significantly, when determining whether a representation or omission is a deceptive act, "the test is whether such act is likely to mislead a reasonable consumer acting reasonably under the circumstances." See, Andre Strishak & Assocs. P.C., 300 AD2d at 609, quoting Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 26 [1995].

General Business Law § 349 claims have been characterized as similar to fraud claims, (e.g., Dornberger v Metropolitan Life Ins. Co., 961 F Supp 506, 549 [SDNY 1997]). In contrast to common law fraud, General Business Law § 349 is a creature of

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

28

statute based on broad consumer–protection concerns. See, <u>Oswego Laborers Local 214 Pension Fund v Marine Midland Bank, NA</u>, 85 NY2d 20, 24–25).

The Complaint at *"COUNT VII"* alleges violations of General Obligations Law § 15-301; General Business Law § 349 and Insurance Law 4226, arising from the act of orally backdating termination-cancellation dates because it involves bad faith concerning a material omissions to the rights of insured and beneficiaries intended to deny any recovery under the policy.

To demonstrate a breach of the insurer's duty of good faith, a plaintiff must "make the extraordinary showing of a disingenuous or dishonest failure by the defendant to carry out its contract." See, <u>Herbert v. State Farm Mutual Automobile Ins. Co.</u>, 124 AD2d 958, 959 (1986)(citations omitted); see also, <u>Scavo v. Allstate Ins. Co.</u>, 238 AD2d 571 (2d Dept 1997). Once a showing of bad faith is made, a plaintiff can recover "consequential damages beyond the limits of the policy for the claimed breach of contract." See, <u>Acquista v. New York Life Ins. Co.</u>, 285 AD2d at 81.

Here, the record contains facts to supporting a claim for breach of the duty of good faith. Specifically, and contrary to Defendant's claims evidence that this practice, the practice of oral modifications concerning retroactive termination-cancellation of life insurance policies exists in violation of New York State law and was intended to deny

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

29

any recovery under the policy. The allegations are supported by deposition testimony of Plaintiff, **M. WILSON**. **[See, Exhibit "10" at   page 58 line 24 and continuing page 59 lines 1-8., and see also Volumes I and II Plaintiff's Exhibits 1-12.]**

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

30

## **CONCLUSION**

Based on the above, Plaintiff respectfully requests that this Court should deny

Defendant's Motion for Summary Judgment.

By:

DOUGLAS R. DOLLINGER, ESQ.
Attorney for Plaintiff
40 Matthews Street
Village of Goshen
Goshen, New York 10924
Tele.   845.294.2771
Fasc.  845.294.2772

TO:

RIVKIN RADLER LLP
Attorneys for Defendant
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333

Plaintiff's Memorandum with Points and Authorities
For An Order Denying Defendant's Motion For Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

31

## PROOF OF SERVICE

STATE OF NEW YORK )
COUNTY OF ORANGE)

    I, EDWARD McCARTHY maintain my offices in the City of Goshen, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings. My business address is 40 Matthews Street, Village of Goshen, Goshen, New York 10924.

    On February 29, 2008 I served the Annexed documents: Declaration of Douglas R. Dollinger, Plaintiff's Memorandum of Law in Opposition of the Defendant's Motion for Summary Judgment Pursuant to Fed. Rule 56 on all interested parties at the addresses that follow:

### *** PLEASE SEE ATTACHED SERVICE LIST***

\_\_\_ **VIA OVERNIGHT MAIL:**

    By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

**X VIA U.S. MAIL:**

    By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on _____ with postage thereon fully paid at the local post office in Goshen, New York.

\_\_\_\_ **VIA PERSONAL DELIVERY:**

    By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

**X VIA FACSIMILE:**

    By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

    I declare under penalty of perjury under the laws of the United States of America that the above is true ad correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

    Executed this 29th day of February 2008, Village of Goshen, County of Orange, State of York.

EDWARD McCARTHY

## SERVICE LIST

### WILSON V. NORTHWESTERN Case No.: 07cv2790-(CLB)

RIVKIN RADLER LLP
Attorneys for Defendant
Attn: Norman L. Tolle, Esq., of Counsel
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333