UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

MICHELLE WILSON

                                  Plaintiff,

                 -against-

NORTHWESTERN MUTUAL INSURANCE COMPANY,

                                  Defendant.
-----------------------------------------------------------------------------------X

Civil Action No. 07 CV 2790
(CLB)


## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT


RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Attorneys for Defendant
The Northwestern Mutual Life
Insurance Company


Of Counsel:
Norman L. Tolle

## **PRELIMINARY STATEMENT**

The Northwestern Mutual Life Insurance Company (incorrectly named as Northwestern Mutual Insurance Company) (hereafter referred to as "Northwestern Mutual") respectfully submits this memorandum of law in further support of its motion for summary judgment dismissing plaintiff's Complaint in its entirety.

Michelle Wilson's ("plaintiff") Complaint seeks the proceeds of the two life insurance policies issued by Northwestern Mutual to her late husband, Kenneth Wilson -- Whole Life Policy No. 16,852,083 in the face amount of $150,000 (the "Whole Life Policy") and Term Life Policy No. 16,852,105 in the face amount of $350,000 (the "Term Life Policy") (collectively the "Policies"). However, as fully detailed by Northwestern Mutual in its January 31, 2008 moving papers, she is not entitled to the proceeds of either policy because Mr. Wilson knowingly and willingly allowed both policies to lapse effective as of three months prior to his death.

Plaintiff has now submitted a "Memorandum of Law in Opposition to The Defendants' Fed. Rule 56(C) Motion for Summary Judgment" (hereafter "Opposition"). Since this Opposition does not refute Northwestern Mutual's arguments concerning plaintiff's cause of action for "negligence, carelessness and/or recklessness" or her demand for punitive damages, it must be assumed that she is not pursuing these portions of her Complaint. Moreover, the Opposition provides neither a legal nor a factual basis for defeating Northwestern Mutual's motion with respect to plaintiff's breach of contract claim, her statutory allegations or her demand for attorneys' fees. Accordingly, Northwestern Mutual respectfully reiterates its request that plaintiff's Complaint be dismissed in its entirety.

2

## ARGUMENT

### I.    NORTHWESTERN MUTUAL'S RULE 56.1 STATEMENT OF MATERIAL FACTS MUST BE DEEMED ADMITTED

Local Rule 56.1 provides that:

> (b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.
>
> (c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

With respect to the opposing party's Rule 56.1(b) obligations, a recent Southern District case held that:

> A non-moving party's failure to adhere to Local Rule **56.1(b)** can prove fatal because "[c]ourts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party." Gadsden v. Jones Lang LaSalle Americas, Inc., 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) (collecting cases); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (summary judgment "appropriate" in light of non-moving party's failure to comply with Local Rule **56.1(b)**)); Dunkin' Donuts Inc., 242 F. Supp. at 298 (facts deemed admitted because non-moving party did not submit a proper counter-statement of facts and did not include citations to evidence in the statement it did submit).

Liles v. N.Y. City Dep't of Educ., 516 F. Supp. 2d 297, 308 (S.D.N.Y. Sept. 27, 2007).

*See, also* , Larsen v. JBC Legal Group, P.C., 2008 U.S. Dist. LEXIS 10488 (E.D.N.Y. Feb. 12, 2008) (because certain of the defendants had failed "to comply with Local Civil Rule 56.1(b), which requires the submission of a counter-statement of "material facts" in

opposition to a motion for summary judgment, see Local Civ. Rule 56.1, all of the facts in plaintiff's Rule 56.1 Statement that pertain to [those defendants] are deemed admitted").

In the case at hand, plaintiff has submitted no response to Northwestern Mutual's Statement of Material Facts, and the section of her Opposition entitled "Background-Facts" is not in the required numbered format and does not address Northwestern Mutual's Rule 56.1 Statement. Accordingly, Northwestern Mutual's Statement of Material Facts, submitted with its January 31, 2008 moving papers, must be deemed admitted in its entirety.

## II.    NORTHWESTERN MUTUAL MUST BE GRANTED SUMMARY JUDGMENT DISMISSING ALL CLAIMS RELATING TO THE WHOLE LIFE POLICY

Plaintiff does not refute the fact that Mr. Wilson elected to have the Whole Life Policy lapse effective February 28, 2005. Instead, plaintiff raises a "red herring" by alleging that Northwestern Mutual failed to provide Mr. Wilson with written notice of the policy's lapse. What she neglects to mention, however, is that Northwestern Mutual was not subject to the notice requirement of Insurance Law § 3211(a)(1) because Mr. Wilson had elected to pay the premiums for the Whole Life Policy on a monthly basis.

Although Insurance Law §3211(a)(1) requires an insurer to provide written notice that a policy of life insurance is going to "terminate or lapse by reason of default in payment of any premium," § 3211 (f) explicitly exempts from this notice requirement certain categories of policies, including "(2) Any policy of insurance requiring the payment of premiums monthly or at shorter intervals..." Since it is incontrovertible that Mr. Wilson had elected to pay his premiums on a monthly basis (see ISA form, annexed

as Exhibit "L" to the January 25, 2008 Affidavit of Cylvia Prince), Northwestern Mutual was not required to provide him with advance written notification of the Policy's termination.

The Appellate Courts in each department of New York State have held that where, as here, the insured elected to make monthly premium payments, the § 3211(f)(2) exception applies, and the insurer is not obligated to comply with the notice requirement of § 3211(a)(1). See, McGarr v. The Guardian Life Insurance Company of America, et al., 19 A.D.3d 254, 256 (1st Department 2005)("since premiums were paid on a monthly basis, section 3211(a)(1) does not apply…"); Gerold v. Companion Life Insurance Company, 819 N.Y.S. 2d 276, 278 (2d Dep't 2006) ("the defendant was not required to notify the plaintiff that the policy lapsed because the insured elected to pay the premiums on a monthly basis"); Elston v. Allstate Life Insurance Company of New York (274 A.D. 2d 938, 939(3rd Dep't 2000) ("Once the monthly automatic payment option for premiums was chosen, the language of Insurance Law § 3211 was triggered, thus obviating the requirement that defendant provide written notification of cancellation prior to its termination of the policy"); Reczek v. National Benefit Life Ins. Co., 20 A.D. 3d 887, 888 (4th Dep't 2005)("It is undisputed that decedent had elected to pay the premiums on a monthly basis. Having made that election, decedent thereafter was required to make monthly payments and the notice requirement of section 3211(a)(1) was rendered inapplicable").

All of the above cases involve fact patterns parallel to that in the case at hand. In each, the insured had elected to make monthly premium payments on his life insurance policy, the policy lapsed for nonpayment, the grace period passed, the insured died, and

the beneficiary or executor then sued for the policy's proceeds, arguing that the insurer had failed to provide the notice required by § 3211(a)(1). In each case, the court found in favor of the insurer, holding that §3211(a)(1) did not apply, that there were no triable issues, and that the insurer was not estopped from asserting the policy's lapse as of the premium due date.

Despite the plain language of Insurance Law § 3211 and the extensive case law interpreting it, plaintiff argues that "[o]nce the payment option for premiums was changed with the consent of Northwestern as evidence by their billing practices and acceptance of the premiums the language of Insurance Law § 3211 was triggered, thus creating the requirement that defendant provide written notification of cancellation prior to its termination of the policy." Plaintiff's Opposition at page 26. However, plaintiff cites to no evidence that "the payment option for premiums was changed" by either Mr. Wilson or Northwestern Mutual, or that the part of ISA form establishing a monthly billing pattern was ever rescinded. Accordingly, there can be no question that the §3211(f)(2) exception applies here. Since Northwestern Mutual was not subject to the notice requirements of §3211(a)(1), plaintiff has no basis for claiming entitlement to the proceeds of the Whole Life Policy and Northwestern Mutual's motion with respect to this Policy must be granted.

### III. NORTHWESTERN MUTUAL MUST BE GRANTED SUMMARY JUDGMENT DISMISSING ALL CLAIMS RELATING TO THE TERM LIFE POLICY

Northwestern Mutual's motion papers included affidavits from Northwestern Mutual employees and official business records establishing that Mr. Wilson: a) had telephoned Northwestern Mutual on May 23, 2005 to question why there was a $35 shortage in his ISA (Insurance Service Account), the account through which the Policies' premiums were paid; b) had been informed that he was required to pay the $35 policy charge because he no longer had multiple Northwestern Mutual policies; and c) had then requested that the last payment he had made for the Term Life Policy be reversed, and that he be refunded the entire amount of that payment. Since that last payment had been for the period of March through December 2005, reversing the ten monthly payments resulted in the Term Life Policy being paid up only through February 28, 2005.

Despite the unambiguous evidence submitted by Northwestern Mutual, plaintiff, nevertheless, contends that Northwestern Mutual is not entitled to summary judgment on the Term Life Policy because: 1) the reversal of Mr. Wilson's payments constituted a "prohibited oral change to the express terms" of the Policy; 2) the Dead Man's Statute prohibits "any testimony by Northwestern as an interested party concerning the decedent Kenneth Wilson against his surviving spouse, M. Wilson"; 3) Mr. Wilson's failure to cash the policy refund check prior to his death revokes the "termination-cancellation" of the policy; and 4) Northwestern Mutual's May 23, 2005 notice "must be considered an extension-offering to exercise Mr. Wilson's option to keep the policy…" None of these arguments have any validity.

### A. There Was No Oral Agreement to Modify the Written Terms of the Term Life Policy

Plaintiff argues that she is entitled to the proceeds of the Term Life Policy because "the modification to the Term Policy at issue was void for the reason that the modification involves a prohibited oral change to the express terms of that Policy, meaning the Policy's grace period and the rights associated with that term." Plaintiff's Opposition at Page 8. While it is true that verbal agreements to change the written terms of a contract are generally impermissible, this argument has absolutely no relevance here because there were no modifications, oral or otherwise, to the written terms of the Term Life Policy, including to the "Policy's grace period and the rights associated with that term."

The provisions of the Term Life Policy to which plaintiff refers state as follows:

> 3.4 Grace Period
> A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The policy will be in full force during this period. If the insured dies during the grace period, any overdue premium will be paid from the proceeds of the policy.
>
> **If the premium is not paid within the grace period, the policy will terminate as of the due date.**
> (emphasis added)

Because the Policy elsewhere states that "'[a]ny change of [the[ policy require[d] the written consent of an executive officer'" (plaintiff's opposition at page 10), plaintiff argues that "[u]nder New York Law [New York Gen. Oblig. Law § 15-301 and New York Insurance Law § 3204[1]] the legal effect of this provision in the policy specifically requiring that notice be given in writing for anything that derogates from written notice to

---

[1] The Court must disregard Plaintiff's arguments concerning General Obligations Law § 5-701 since no violation of that section of the statute was alleged in her Complaint.

the terms of the policy must be in writing and if it is not it is unenforceable or void."
Plaintiff's Opposition at page 9. However, plaintiff has cited to nothing in Northwestern
Mutual's handling of Mr. Wilson's request that violated the terms of the Policy.

The reversal, at his express request, of Mr. Wilson's last ten-month payment for
the Term Life Policy meant that the Policy was only paid up through February 28, 2005.
The 31-day grace period therefore expired effective March 31, 2005 and, in accordance
with the terms of the Policy, the Term Life Policy lapsed as of February 28, 2005. (See
January 22, 2008 Affidavit of Diane Knueppel and its exhibits, submitted with
Northwestern Mutual's January 31, 2008 Motion for Summary Judgment).

Plaintiff also tries to argue that the official business records submitted by
Northwestern Mutual[2] are not clear since they only reflect that Mr. Wilson requested the
"'refunding his last payment' as to May 29, 2005, as opposed to the claim that the refund
was being made to his last 'draft' with a retroactive termination to February 28, 2005."
Plaintiff's Opposition at page 14. This is nothing but a "red herring" since there was
never was a "last payment as to May 29, 2005." Mr. Wilson's last "payment" was his
last "draft," and that draft covered March 1, 2005 through December 31, 2005.

Accordingly, there is no basis to plaintiff's argument concerning violations of the
General Obligations Law and the Insurance Law, and it must be rejected.

**B.    The "Dead Man's Statute" Does Not Preclude Testimony Regarding
       Conversations between Northwestern Mutual employees and Mr.
       Wilson**

Plaintiff's Opposition contends that "[t]he principal issue to be determined by the

---

[2] Plaintiff's Opposition does not contest Northwestern Mutual's position that the business records
submitted with Northwestern Mutual's motion papers comply with the business records exception to Fed.
Rule 803(6).

Court is whether any testimony offered by Northwestern as an interested party concerning the decedent Kenneth Wilson against his surviving spouse, M. Wilson, is prohibited under New York law." Plaintiff's Opposition at page 16. There is, however, no issue to be determined in this respect because the case law has consistently held that: a) the beneficiary of a life insurance policy is not protected by the dead man's statute since beneficiaries do not "derive[] their 'title or interest from, through or under a deceased person' " (Ward v. New York Life Ins. Co., 225 NY 314, 319 (N.Y. 1919); and b) a mere employee of the insurance company cannot be considered "a person interested in the event."

Although FRE 601 generally governs the competency of potential witnesses in federal cases, New York C.P.L.R. § 4519 (the so called "Dead Man's Statute") must be applied here because FRE 601 provides that: "[i]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State Law." Sun Life Assur. Co. v. Deborah Ann Gruber, 2007 U.S. Dist. LEXIS 92141 at *47, n. 56 (S.D.N.Y. Dec. 14, 2007) (*citing* Rosenfeld v. Basquiat, 78 F. 3d 84, 88 (2d Cir. 1996) and H. R. Rep. No. 650, 93rd Cong., 1st. Sess. 9 (1973) (noting that FRE 601 was amended to require the application of state competency rules to avoid "rendering inapplicable in the federal courts the so-called Dead Man's statutes").

"CPLR 4519 disqualifies parties interested in litigation from testifying about personal transactions or communications with deceased or mentally ill persons" (Poslock v. Teachers' Retirement Bd., 88 N.Y. 2d 146, 150 (N.Y. 1996) (*citing* **Prince, Richardson on Eviden**ce § 6-121) in order to "'protect the estate of the deceased from

10

claims of the living who, through their own perjury, could make factual assertions which

the decedent could not refute in court'" (Poslock, *quoting* Matter of Wood, 52 NY2d 139,

144 (1981)).  However, not only is the operable term "parties **interested** in litigation,"

but a number of exceptions to this rule have also been carved out by the courts of New

York.

There has been considerable controversy surrounding the "Dead Man's Statutes"

enacted by many states, and a large body of case law analyzing and interpreting such

statutes has evolved.  For the purposes of the matter at hand, the most important New

York ruling is that by the Court of Appeals in Ward v. New York Life Ins. Co., 225 NY

314 (N.Y. 1919) which created an exception for testimony relating to life insurance

policies.  As pointed out by the Court of Appeals in 1996, "Ward itself, decided in 1919,

has stood the test of time, common-law developments and legislative change... "

Poslock, *supra,* at 152.

> In *Ward,* this Court narrowly bypassed the predecessor statutory prohibition
> (*see,* former Code Civ Pro § 829). The linchpin of the Court's holding was
> the language in former Code of Civil Procedure § 829 (now CPLR § 4519),
> that the statute only applied when the persons against whom the testimony
> was being offered "derived their 'title or interest from, through or under a
> deceased person' " ( *Ward v New York Life Ins. Co., supra,* at 319, quoting
> former Code Civ Pro § 829). To solve the dilemma there, the Court
> examined the nature of those life insurance proceeds. It determined that
> they did not come "from, through or  under" the deceased person, because
> "[t]he great body of authority makes it plain ... that when section 829
> speaks of deriving title or interest from, through or under a deceased person
> it contemplates property or an interest *which belonged to the deceased in*
> *his lifetime* and the title to which has passed by assignment or otherwise
> through him to the party who is protected by the section" ( *id.,* at 319-320
> [emphasis added]). The proceeds of a life insurance policy, the Court
> declared, "never belonged to the deceased and ... did not come into
> existence until his death" ( *id.,* at 320).

Poslock at 151-152. *See, also*, 81 **Am. Jur**. 2d Witnesses § 658 ("The beneficiary in a life insurance policy or benefit certificate is not protected by a dead man's statute when sued by one seeking to recover the proceeds or impress a trust upon them, or when made a party to an interpleader action by the insurer or benefit society, as no right of the deceased passed to the beneficiary and any interest he or she may have came into existence upon the death of the insured as an original obligation").

As a result of thus interpreting the Dead Man's Statute, the Court of Appeals in Ward held that the wife's testimony concerning her deceased husband's change of life insurance beneficiary should have been admissible in the interpleader action commenced by the insurance company. Similarly, the Southern District, in New York Life Ins. Co. v. Cross, 7 F. Supp. 130, 131 (S.D.N.Y. 1934), relying on Ward, held that "under the construction of section 347 of the Civil Practice Act by the New York Court of Appeals, which, of course, controls me, on the competency of witnesses the testimony [of one of three claimants to the proceeds of a life insurance policy] is admissible, for the reason that under the decision in that case the other respondents are not persons who derived their title or interest "from, through or under a deceased person * * * by assignment or otherwise.").

Thus, the Court of Appeal's decision in Ward is a binding "exception to the general statutory principle" (Poslock at 152) which indisputably allows the admission of testimony by Northwestern Mutual employees in which they relate their conversations with Mr. Wilson. However, even without the Ward exception, the Dead Man's Statute would not apply here because an insurance company employee is clearly not "a person interested in the event."

The following standard has been set forth by the courts for evaluating whether a potential witness is "interested" for purposes of invoking the Dead Man's Statute:

> The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent.

In re Estate of Rosenblum, 284 A.D.2d 820, 821 (3rd Dep't 2001), *appeal denied*, 97 N.Y.2d 604 (2001) (*quoting* Friedrich v. Martin, 294 N.Y. 588, 595 (N.Y. 1945) *quoting* 1 Greenleaf on Evidence, section 390.)). *See also*, Stay v. Horvath, 177 A.D.2d 897, 899 (3rd Dep't 1991) (internal citations omitted) ("We note initially that the party claiming that a witness is a person "interested in the event" (CPLR 4519) carries the burden of proving that the witness's testimony is subject to this statutory exclusion"); Duncan v. Clarke, 308 N.Y. 282, 285 (N.Y. 1955) ("the 'interest' which renders a witness incompetent under section 347 [now 4519] is only such as results from the 'direct legal operation of the judgment'"); Croker v. New York Trust Co., 245 N.Y. 17, 22 (N.Y. 1927) (*quoting* Albany Co. Sav. Bank v. McCarty, 149 N. Y. 71, 84 (1896)) ("An interest in the question is not enough to disqualify as that is not an interest in the event. 'Unless the witness will gain or lose by the event, either directly, as in money, or indirectly, because the record could be used as evidence for or against him, he is not disqualified.' A witness might be biased. He might be solicitous for the success of the party for whom he testified or he might feel a deep interest in the result of a trial. His credibility might be thereby affected but he was not disqualified for interest.")

Thus, for instance, the court in Stay v. Horvath, *supra*, held that, with regard to a witness who had a money judgment against the plaintiff, "[i]nasmuch as defendants have

not proved that Morrell's interest is "'present, certain, and vested' " as opposed to " 'uncertain, remote or contingent' " (Friedrich v Martin, supra, at 595), it was error to exclude his testimony as to any transaction or communication with Sturges (see, Croker v. New York Trust Co., 245 NY 17, 22)" Id. at 899.  Similarly, in Trotti et al v. Estate of Lynn P. Buchanan, 272 A.D. 2d 660 (3rd Dep't 2000), the court held that testimony by the son of the store-owner to whom the deceased was indebted did not violate CPLR § 4519.  Although the defendants claimed that plaintiff's son could not authenticate the business receipts documenting the decedent's debts to his mother's store because he was an 'interested" person, the court held that he could not "be said to be a 'person interested in the event,'" and it, therefore, accepted his testimony that these records were kept "regularly, systematically, routinely and contemporaneously." Id at 661.

In Matter of Stacer v Newman et al., 13 A.d. 2d 164 (4th Dep't 1961 (*quoting* Matter of Behan, 159 Misc. 337, 339 Surr. Ct. Kings Cty 1936), the attorney who was named as executor in one of the wills executed by the deceased was allowed to testify on the basis that "'a testamentary fiduciary has no such interest in the event, by reason of a prospective potential right to commissions, as to render him an incompetent witness under section 347 of the Civil Practice Act.'"  Along similar lines, the Surrogates Court of Orleans County allowed a wife to testify concerning a multi-million dollar transaction between the deceased and her husband although she clearly had a potential financial interest in the outcome of the case.  In re Freeman's Will, 23 Misc. 2d 846 (Sur. Ct. Orleans Cty 1960).

14

The Northwestern Mutual employee, Diane Knueppel, who spoke to Mr. Wilson[3] clearly will neither gain nor lose personally by the outcome of this case, and therefore cannot be deemed to have an interest in the outcome of this litigation "present, certain, and vested" such that her testimony would be barred by the Dead Man's Statute. As demonstrated by the cases cited above, since the courts have permitted individuals with significantly more direct interest in the outcome of their respective cases to testify, there is no absolutely no basis for invoking the Dead Man's statute here. Accordingly, Ms. Knueppel's testimony concerning her conversations with Mr. Wilson must be admitted.

## C.    Plaintiff's Denial That Kenneth Wilson Received The Refund Check Does Not Rebut The Presumption That It Was Mailed

Plaintiff argues that "there is a lack of proof of mailing as required, and as such the Court should reject the claim that Check Number 03241514, sequence number 1510015 in the sum of $81.03 was ever mailed." Plaintiff's Opposition at page 14. However, as confirmed by the very cases plaintiff herself cites:

> New York law recognizes a rebuttable presumption that when . . . there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. **The mere denial of receipt does not rebut that presumption.**

Manigault v. Macy's East, LLC, 506 F. Supp. 2d 156, 161 (E.D.N.Y. 2007) (*citing* Meckel v. Continental Resources Co., 758 F.2d 811, 817 (2d Cir. 1985) (emphasis added).

*See, also*, McGuire v. City of New York, 142 Fed. Appx. 1, 4 (2d Cir. 2005) internal citations omitted) ("As a rule, a presumption of receipt applies to properly addressed notices mailed in accordance with regular office procedures"); Akey v. Clinton County,

---

[3] The testimony of the other Northwestern Mutual employees whose affidavits serve to authenticate Northwestern Mutual's business records had no direct dealings with Mr. Wilson and therefore could not, under any circumstances, be subject to the Dead Man's Statute.

375 F.3d 231, 235 (2d Cir. 2004)(internal citations omitted) ("Where, as here, the County

provides evidence that the notices of foreclosure were properly addressed and mailed in

accordance with regular office procedures, it is entitled to a presumption that the notices

were received"); Kleyman v. Cont'l Cas. Co., 2007 U.S. Dist. LEXIS 247 (E.D.N.Y.

2007) (internal citations omitted) ("In general, proof of mailing under New York law can

be established either by testimony from the person who actually did that mailing or 'by

showing that it was the regular office practice and procedure to mail such a letter'");

Residential Holding Corp. v. Scottsdale Ins. Co., 286 A.D.2d 679, 680 (N.Y. App. Div.

2001) ("The presumption [that the item was received by the addressee] may be created by

either proof of actual mailing or proof of a standard office practice or procedure designed

to ensure that items are properly addressed and mailed"); New York & Presbyt. Hosp. v.

Allstate Ins. Co., 2006 NY Slip Op 3558, 1-2 (N.Y. App. Div. 2006)("The presumption

[that the item was received by the addressee] may be created by either proof of actual

mailing or proof of a standard office practice or procedure designed to ensure that items

are properly addressed and mailed"); Bossuk v. Steinberg, 58 N.Y.2d 916, 919, 447

N.E.2d 56, 460 N.Y.S.2d 509 (1983) ("[U]nder New York law, personal knowledge is

required only to establish regular office procedure, not the particular mailing."

  Accordingly, the court in Manigault held that "[t]he declarations of Federated's

personnel responsible for employee mailings have established a rebuttable presumption

that Manigault received the Program information allegedly mailed to her" and the court

in Kleyman held that:

> Such a showing is established here by Gleicher's statement
> that the "letters sent by PACE to Kleyman are typical and
> customary of the letters sent both prior to and after the
> expiration for all [CCC policies] . . ." that are administered

by PACE." This statement is supported by his assertion of
personal knowledge that the practices were followed in this
case, even though he may not have been the person to actually
mail the letters.

In a similar manner, the Affidavit of Northwestern Mutual Print/Mail Support

Specialist, Joan Ahangar, establishes that the $81.03 Refund Check dated May 31, 2005

was printed and mailed to Mr. Wilson in accordance with Northwestern Mutual's usual

business practices. Accordingly, as established by the above cited case law, there is a

presumption that it was received at the address listed on the check register attached to

Diane Knueppel's Affidavit as Exhibit "G".

Plaintiff, in turn, has submitted absolutely nothing to overcome the presumption

of mailing except her statement that she did not receive the check. As the court held in

Kleyman, "his denial is insufficient and there would remain no issues of fact to decide on

summary judgment." Here, too, plaintiff's denial is insufficient and her argument must

therefore be rejected by this Court.

**D.      Neither Mr. Wilson's Failure to Deposit the Refund Check Nor The
          Mailing of Northwestern Mutual's May 23, 2005 Notice Serve to
          Refute the Fact That the Term Life Policy Terminated Effective
          February 28, 2005**

As a last-ditch effort to salvage her case with respect to the Term Life Policy,

Points III and IV of Plaintiff's Opposition present a series of rambling contract law

arguments that are neither relevant nor appropriate to the instant case, and which do not

alter the indisputable fact that the Term Life Policy terminated, at Mr. Wilson's direct

request, effective February 28, 2005.

Plaintiff contends that plaintiff's failure to deposit the second refund check serves

to revoke Northwestern Mutual's "offer to backdate and terminate-cancel the Policy."

17

Plaintiff's Opposition at page 21. This argument simply has no basis in either fact or law. First, Northwestern Mutual did not make an "offer" to plaintiff; rather it was plaintiff who initiated the telephone call and made a request to Northwestern Mutual. Secondly, the telephone conversation between Ms. Knueppel and Mr. Wilson was not a negotiation to enter into a contract; rather it was a request to terminate the existing contract between the parties. As such, it did not need to be in writing[4] and no consideration was required. Thus, neither the cited treatises nor the cited cases have any applicability, and this argument must be rejected.

Similarly without merit is plaintiff's argument that Northwestern Mutual's May 23, 2005 notice "must be construed as an invitation to maintain the policy." Plaintiff's Opposition at page 24.

Mr. Wilson had given Northwestern Mutual's representative explicit directions to terminate his Term Life Policy and refund all premium payments past February 28, 2005. He had later received a telephone call confirming that his request would be fulfilled. The May 23, 2005 notice did not proclaim itself to be "an invitation to maintain the policy," but, rather, stated in unequivocal terms that "Your Insurance Service Account (IAS) Has Been Closed." Since there clearly was no offer, there was no obligation on Northwestern Mutual's part "to advise Mr. Wilson that the offer was rescinded" (Plaintiff's Opposition at page 24) and absolutely no basis for Mr. Wilson to have "reasonably believed that Northwestern was offering him the chance to keep the policy at his option." (Id.) Additionally, as explained in the February 26, 2008 Affidavit of Diane Knueppel submitted with Northwestern Mutual's motion papers, the refund of Mr. Wilson's premiums for the Term Life policy was conducted in two stages – first the future

---

[4] The Policy contains no provision requiring that cancellation of the Policy be in writing.

premiums for June through December 2005 were refunded, and then the refund of the premiums for the past months of March, April and May 2005 were generated. At the conclusion of the first stage, the May 23, 2005 notice was automatically generated. This notice, however, became moot once the premiums for the three past months were refunded. Since that notice did not constitute an "invitation," and since Mr. Wilson obviously knew that he had requested a refund of the premiums to February 28, 2005, there were no reasonable expectations created, and plaintiff's argument fails as a matter of law.

**IV.    NORTHWESTERN MUTUAL MUST BE GRANTED SUMMARY JUDGMENT DISMISSING PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF GBL § 349 AND HER DEMAND FOR PAYMENT OF HER LEGAL FEES**

As plaintiff acknowledges "'[t]he elements of a cause of action for deceptive business practices under General Business Law § 349 are a consumer-oriented act or practice that is misleading in a material way, and that causes injury to the plaintiff.'" Plaintiff's Opposition at page 28. However, nowhere in Plaintiff's Complaint does she allege a "consumer-oriented act or practice" by Northwestern Mutual. Since the Complaint's allegations of "misleading and otherwise deceptive" behavior pertain only to Northwestern Mutual's specific dealings with Mr. Wilson, this clearly is "a private contract dispute as to policy coverage" (Gaidon v. The Guardian Life Ins.Co. of Amer., 94 N.Y. 2d 330, 344 (1999) and therefore outside the perimeter set by the Court of Appeals for a GBL § 349 cause of action.

19

In a similar fashion, "[i]t is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." New York University v. Continental Ins. Co., 87 N.Y.2d 308, 324 (1995) (citing Mighty Midgets v. Centennial Ins. Co., 47 N.Y.2d 12, 21 (1979), Grimsey v. Lawyers Tit. Ins. Corp., 31 N.Y.2d 953 (1972) and Doyle v. Allstate Ins. Co., 1 N.Y. 2d 439 (1956).

As the Court of Appeals explained in Mighty Midgets:

> It is a rule in New York that such a recovery [for
> the expenses of bringing the action] may not be
> had in an affirmative action brought by the assured to
> settle its rights, but only when he has been cast in a
> defensive posture by the legal steps an insurer takes
> in an effort to free itself from its policy obligations.

Mighty Midgets, 47 N.Y.2d at 21.

In the years since the Court of Appeals' seminal decision in Mighty Midgets, the New York courts have consistently held that attorneys' fees, costs and other disbursements are not recoverable by an insured who chooses to take the offensive and initiate a legal action. *See, e.g.,* U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y. 3d 592, 597-98 (N.Y. 2004); City of New York v. Zurich-American Ins. Group, 2006 N.Y. Slip Op. 2156 at *2 (2d Dep't 2006); Hedaya Home Fashions, Inc. v. Am. Motorists Ins. Co., 12 A.D. 3d 639, 640-41 (2d Dep't 2004); Kramarik v. Travelers, 2006 NY Slip Op 278 at *3 (3d Dep't 2006); Goode v. Charter Oak Fire Ins. Co., 2005 NY Slip Op 51245U at *4-5 (App. Div. 1st Term 2005); Gold v. Nationwide Mutual Ins. Co., 273 A.D.2d 354, 354 (2d. Dep't 2000).

In the case at hand, there can be no question that plaintiff took the offensive and initiated this "affirmative action against an insurer to settle [her] rights under the policy." New York University, *supra*. Since Northwestern Mutual did not initiate any legal action against her, she was not forced to defend herself. Accordingly, the law of New York State requires that her contention that she "is entitled to payment of legal fees" be rejected and her request for attorneys' fees denied.

## CONCLUSION

Plaintiff has failed to establish that she is entitled to the proceeds of either the Whole Life Policy or the Term Life Policy. Therefore, for all the reasons stated herein, it is respectfully requested that this Court issue an Order granting Northwestern Mutual's motion for summary judgment and granting such other relief as it deems appropriate.

Dated:    Uniondale, New York
          March 14, 2008

Respectfully submitted,

By: _____
Norman L. Tolle, Esq.
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3242
Attorneys for Defendant
The Northwestern Mutual Life
Insurance Company

2128423 v1

21

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK          )
                           ) SS. :
COUNTY OF NASSAU           )

I, Virginia A. Donlon, being sworn, say:

I am not a party to the action, am over 18 years of age and reside in Nassau County, New York.

On March 14, 2008, I served the within **Memorandum of Law in Further Support of The Northwestern Mutual Life Insurance Company's Motion for Summary Judgment** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

Douglas R. Dollinger & Associates
40 Matthews Street, Suite 101
Village of Goshen
Goshen, New York 10924

Virginia A. Donlon

Sworn to before me this
14th day of March, 2008

Notary Public

**THERESA DIMARZO**
**Notary Public, State of New York**
No. 01DI5048418
Qualified in Nassau County
Commission Expires August 21, 20 09