UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE WILSON,

          Plaintiff(s),

vs.

NORTHWESTERN MUTUAL INSURANCE COMPANY,

          Defendant(s).

Case No.: 07CV2790 (CLB)
HON. CHARLES L BRIEANT

\* \* \* \*

**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO THE DEFENDANT'S OPPOSITION FED. RULE 56(C) MOTION FOR SUMMARY JUDGMENT**

*Respectfully Submitted:*

*Douglas R. Dollinger*
*Attorney for Plaintiff*
*40 Matthews Street-Suite 101*
*Village of Goshen*
*Goshen, New York 10924*
*Tele. 845.294.2771*
*Fax. 845.294.2772*

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

# TABLE OF CONTENTS

| | Page(s) |
|---|---|
| Table of Authorities................ | iii-iv |
| POINT I | 1 |
| NORTHWESTERN'S PRACTICE PROVIDING ORAL MODIFICATIONS AND RETROACTIVE POLICY TERMINATION-CANCELLATION IS A DECEPTIVE BUSINESS PRACTIC AND AGAINST PUBLIC POLICY | |
| POINT II | 2 |
| NORTHWESTERN'S SERVICE OF ITS' ISA NOTICE DATED MAY 23, 2005, WITHOUT NOTICE OF REVOCATION EXTENDED THE TERM POLICY'S 31 DAY GRACE PERIOD | 3-8 |
| POINT III | 8-9 |
| NORTHWESTERN'S BUSINESS RECORDS ARE UNRELIABLE-UNTRUSTWORTHY AND SHOULD BE REJECTED BY THE COURT | |
| POINT IV | 9 |
| BECAUSE NORTHWESTERN IS A MUTUAL LIFE INSURANCE COMPANY PROVIDING DIVIDENS TO ITS' POLICY HOLDERS ITS' EMPLOYEES ARE PROHIBITED FROM OFFERING ANY TESTIMONY AS TO THE CANCELLATION-TERMINATION OF THE POLICIES IF THE EMPLOYEES ARE INSURED WITH NORTHWESTERN | |
| POINT V | |
| NORTHWESTERN FAILED TO NOTIFY THE INSURED OF THE CANCELLATION OF HIS TERM POLICY AND THE POLICY WAS NEVER PROPERLY CANCELED | |

i

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| CONCLUSION | 10 |
| PROOF OF SERVICE | End |

ii

# TABLE OF AUTHORITIES

**Cases**      **Pages**

Buchbinder Tunick & Co. v. Manhattan National Life Insurance Co., 631 N.Y.S. 2d 148, ......... 2

Clift v. Moses, 112 N.Y. 426 ......... 8

Corning v. Walker, 100 N.Y. 547 ......... 8

Goldblatt v. MetLife, Inc., 306 AD2d 217, 217 [2003] ......... 1

Hospital for Joint Diseases v. Nationwide Mut. Ins. Co., 284 AD2d 374, 726 N.Y.S. 443 [2001] ......... 2

Joannou v. Blue Ridge Ins. Co., 289 AD2d 531, 532 [2001]; ......... 1

Makuch v. New York Cent. Mut. Fire Ins Co., 12 AD3d 1110, 1111 [2004] ......... 1

New York & Presbyt. Hosp. v. Allstate Ins. Co., 29 AD3d 547, 814 NYS2d, 687 [2006] ......... 2

Palmer v. Hoffman, 318 U.S. 109, 114, 87 L. Ed. 645, 63 S. Ct. 477 (1943) ......... 5

Poslock et al., v. Teachers Retirement Board of Teachers' Retirement System, et al.
88 N.Y. 2d 146 ......... 8, 9

Residential Holding Corp. v. Scottsdale Ins. Co., 286 AD2d 679, 729 NYS2d 776 ......... 2

Saks Int'l, Inc. v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir. 1987) ......... 3

Security Mut. Life Ins. Co. of N.Y. v. DiPasquale, 283 AD2d 182, 182 [2001], lvs dismissed 97 NY2d 653 [2001], 97 NY2d 700 [2002] ......... 1

Skibinsky v. State Farm Fire & Cas. Co., 775 N.Y.S.2d 200 ......... 1

Soule v. Norton, 299 AD2d 827, 829 [2002] ......... 1

Thornton v. Netherlands-American Steam Nav. Co., 178 App Div 604 ......... 2

United States v. Mason, No. S17 96 Cr. 126 (JFK), 2000 WL 791926, at *1-2, (S.D.N.Y. June 19, 2000) ......... 3, 4

# TABLE OF AUTHORITIES
**Cases**                                                              **Pages**

United States v. Lavin, 480 F.2d 657, 662 (2d Cir. 1973) .......... 3

Walsh v. Liberty Mut. Ins. Co, 289 AD2d 842, 843-844 [2001]) .......... 1

Ward v. Kovacs, 55 A.D.2d 391, 403, 390 N.Y.S.2d 931 (2d Dept. 1977)] .......... 8

Ward v. New York Life Insurance Company, 225 N.Y. 314, 122 N.E. 207 .......... 8,9

**Federal Rules**

[Rule 803(6).] .......... 3, 4 and 5

**Statutes**

New York State §CPLR 4519 .......... 8,9

New York State General Business Law §349 .......... 1

New York State Insurance Law §3211(a)(1) .......... 9,10

New York State Insurance Law §3202) .......... 1

New York State Insurance Law §4226(a)(6)(D) .......... 1

## POINT I

### NORTHWESTERN'S PRACTICE PROVIDING ORAL MODIFICATIONS AND RETROACTIVE POLICY TERMINATION-CANCELLATION IS A DECEPTIVE BUSINESS PRACTICE AND AGAINST PUBLIC POLICY

Defense Counsel's statement-characterization that Plaintiff has abandoned certain causes of action including those relating to NORTHWESTERN'S deceptive business practice involving New York State General Business Law §349 and New York State Insurance Law §4226(a)(6)(D) is misleading.

Plaintiff by her complaint at "*Counts III, IV and VII*", alleged a specific deceptive practice on the part of defendant, directed at members of the public who, in general, purchased its standard-form policy, wherein the oral modifications in derogation of state statutes, statutes designed to protect the insured are being circumvented in what amounts to a misrepresentation of the nature-duration of the coverage being provided, meaning the policy's grace periods.

Life insurance policy grace periods are an important part of every life insurance policy issued in New York State. [See, New York State Insurance Law §3203.]

The legislative-fundamental purpose behind New York's statutory provision providing for grace periods is to ensure that an individual does not inadvertently become uninsured leaving the beneficiaries without a means to support themselves in the future and further forcing them to rely on State assistance or similarly forcing the State to provide for their support.

Contrary to defendant's argument, the allegations in the complaint are not limited to a challenge regarding the cancellation made on the basis of facts unique to this insured, but relate to consumer-oriented conduct affecting the public at large. See, Makuch v. New York Cent. Mut. Fire Ins Co., 12 AD3d 1110, 1111 [2004]; see, also Joannou v. Blue Ridge Ins. Co., 289 AD2d 531, 532 [2001]; cf. Goldblatt v. MetLife, Inc., 306 AD2d 217, 217 [2003]; and see, Security Mut. Life Ins. Co. of N.Y. v. DiPasquale, 283 AD2d 182, 182 [2001], lv. dis. 97 NY2d 653 [2001], 97 NY2d 700 [2002].

Inasmuch as plaintiff asserts that this consumer-oriented conduct was deceptive, and caused the injury, the matter becomes a question of fact and the allegations are sufficiently plead as violations of General Business Law §349, Insurance Law §3203 and §4226(a)(6)(D). See, Skibinsky v. State Farm Fire & Cas. Co., 775 N.Y.S.2d 200; see also, Makuch v. New York Cent. Mut. Fire Ins. Co., supra at 1111; Acquista v. New York Life Ins. Co., 285 AD2d 73, 82-83 [2001]; cf. Soule v. Norton, 299 AD2d 827, 829 [2002]; and see, Walsh v. Liberty Mut. Ins. Co., 289 AD2d 842, 843-844 [2001]).

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

## POINT II

### NORTHWESTERN'S SERVICE OF ITS' ISA NOTICE DATED MAY 23, 2005, WITHOUT NOTICE OF REVOCATION EXTENDED THE TERM POLICY'S 31 DAY GRACE PERIOD

Although clearly pled and argued, "*Count II*" ¶22, Plaintiff's Memorandum of Law "*Point IV*", Defendants have failed to fully address the issue of estoppel related to the mailing of their May 23, 2005 ISA letter providing that the grace period of the Term Policy did not expire until June 29, 2005. [See, Exhibit "5" "E".]

The argument provided by Defense Counsel distinguishes the case cited by Plaintiff, Buchbinder Tunick & Co. v. Manhattan National Life Insurance Co., 631 N.Y.S. 2d 148, on the facts, but sidesteps the issue of estoppel. While, it was earlier claimed by their letter of July 26, 2006, that the May 23, 2005, Notice [See, Exhibit "5" "E".] was the result of automation, there is no accompanying affidavit in proper form to this fact, explaining the automation process, nor is there any business record submitted in contradiction to the facial statements contained on the Notice that the "End of the grace period was June 29, 2005". [See, Exhibit "5" "E".]

Plaintiff acknowledges the affidavit of Diane Knueppel to describe the business practices of NORTHWESTERN in relation to the letter being generated. [See, Exhibit "5" "E".] Likewise, her affidavit is void of any undertaking to advise Mr. Wilson that the Notice was issued in error. And, an estoppel need not be based upon an actual intent to mislead or defraud, but may arise from a party's negligence. See, Thornton v. Netherlands-American Steam Nav. Co., 178 App Div 604.

Under these circumstances, the failure of NORTHWESTERN to establish, by means of affidavit the Company's practices-procedures concerning its' "automation" system as well as the failure to provide the Company's practices-procedures related to the sequence of the claimed mailings of the May 23, 2005 letter or refund check in the sum of $81.03, an equitable estoppel has been established by the terms as provided in the Notice of May 23, 2005 wherein the Mr. Wilson was insured at the time of his death. See, e.g. New York & Presbyt. Hosp. v. Allstate Ins. Co., 29 AD3d 547, 814 NYS2d, 687 [2006]; Residential Holding Corp. v. Scottsdale Ins. Co., 286 AD2d 679, 729 NYS2d 776 ; Hospital for Joint Diseases v. Nationwide Mut. Ins. Co., 284 AD2d 374, 726 N.Y.S. 443 [2001].

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

2

## POINT III

## NORTHWESTERN'S BUSINESS RECORDS ARE UNRELIABLE-UNTRUSTWORTHY AND SHOULD BE REJECTED BY THE COURT

To begin with, Rule 803(6), the business records exception to the hearsay rule, requires a finding that the documents in question were kept in the course of a regularly conducted business activity and that it was the regular practice of the business to make such records. **[Rule 803(6).]** The hallmark of documents admitted under the business records exception is that they are trustworthy and reliable. See, Saks Int'l. Inc. v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir. 1987). The determination of whether, in all the circumstances, the records are sufficiently reliable to warrant their admission in evidence is left to the sound discretion of the trial court. See, e.g., id.; United States v. Lavin, 480 F.2d 657, 662 (2d Cir. 1973). Despite the reference to the "Casetracker" system allegedly maintained by **NORTHWESTERN** there has been no showing of the way the system works, nor has the custodian been identified or provided an affidavit for those documents and notes not personally entered into the system and referred to by each affiant in their Opposition Affidavits.

When no "custodian of records or other qualified witness testifies as to the trustworthiness" of the "source of information or the method or circumstances of preparation" of a record, it is ordinarily inadmissible under Rule 803(6). See, United States v. Mason, No. S17 96 Cr. 126 (JFK), 2000 WL 791926, at *1-2, (S.D.N.Y. June 19, 2000). Based on this standard, under the circumstances, the Court should reject the **NORTHWESTERN** records offered as unreliable or otherwise untrustworthy, for lack of a custodial-history, specifically Defendant's **Exhibits "F", "G", "L", "M", "N" and "Q"**.

Likewise, because "no source of [the] information or the method or circumstances of preparation" of the records relied on has been provided by a custodian, any reference made to the particular document which the affiant has not indicated exists through their personal knowledge i.e., when-who made them or entered them into **NORTHWESTERN**'s records system are also inadmissible hearsay under Rule 803(6). See, United States v. Mason, supra.

Beyond the failure of **NORTHWESTERN** to meet the requirements of Rule 803(6), and particularly revealing as to the reliability-truthfulness of **NORTHWESTERN**'s documents is the

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

3

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

fact that Defense Counsel's claim that **NORTHWESTERN** does not intend to use its' disclaimer letter of July 21, 2006 as a business record.

The Court should consider the content of the letter, which was allegedly based on a review of the **NORTHWESTERN**'s business records in July 2006, and that the letter conflicts with or otherwise impeaches key facts as claimed to be supported by the business records offered through the affidavits of **NORTHWESTERN**'s employees concerning the facts of the Term Policy cancellation and premium refund check of $81.03. [See, Exhibit's Volume 1, NML 99-100.]

This is true for various reasons:

First, Plaintiff claims that the Court should reject the Affidavit of Ms. Cylvia Price as well as **NORTHWESTERN**'s introduction of Defendant's Exhibits "L", "M" and "N" submitted through Ms. Price because no custodian has provided the source of information or the method or circumstances of preparation, and because they are not a business record regularly maintained within the meaning of Rule 803(6).

Second, the Court should reject the claims of Ms. Price related to the payment of the premium refund of $81.03, because it is not supported by her direct knowledge or custodial records in support of her affidavit, and contradicts the July 21, 2006, disclaimer letter relating to backdating the refund on May 30, 2005, without explanation.

Third, the Court should reject the claims of Diane Knueppel for the reason that her affidavit is unreliable-untrustworthy and, is by virtue of exclusion of facts, a mischaracterization of the acts under taken in relation to the Casetraker notes submitted in support of the alleged mailing of the premium refund of $81.03.

Turning to the Affidavit of Ms. Price, for the most part a business record may include data stored electronically on computers and later printed out for presentation in court, so long as the "original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." See, United States v. Hernandez, 913 F.2d 1506, 1512-13 (10th Cir. 1990), cert. denied, 499 U.S. 908, 113 L. Ed. 2d 220, 111 S. Ct. 1111 (1991); see also Notes of Advisory Committee on 1972 Proposed Rules of Evidence.

It appears that **NORTHWESTERN** proffer of Exhibit "M" is their compellation of the purported electronic data of the Policies ISA financial transaction history allegedly stored in the

4

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

regular course of its business practices related to Mr. Wilson's payment history. However, the Court should reject the document as unreliable-untrustworthy in relation to the payment history and alleged premium refund of $81.03.

Again, this is true because there is no source of information or the method or circumstances of preparation when first entered, and because it was prepared on or about April 20, 2007, long after the events at issue herein occurred. Additionally, because **Exhibit "M"** provides only information concerning the refund of $154.07 for the months June 2005-December 2005 and never provides a recording basis for the alleged $81.03 premium refund. The document provides a "Paid To:" date of 05/28/05" showing a reverse payment of $154.07 and nothing more, it has no use in support of the premium refund of $81.03.

The Court is asked to consider that if, **Exhibit "M"** is in and of itself the ISA payment history generated in April 2007, why then doesn't the document provide for a history related to the premium refund of $81.03 allegedly posted on May 30, 2005 as set forth in **NORTHWESTERN's** disclaimer letter of July 21, 2006. [See, **Volume 1 Exhibit "NML 99-100".**]

Notwithstanding Ms. Price's preparation of **Exhibit "M"** as an alleged original computer data compilation, **Exhibit "N"**, the document and conclusions offered in support of it must be excluded in their entirety and as any proof of the alleged $81.03 premium refund, because data prepared or compiled for use in litigation are not admissible as business records within the meaning of Rule 803(6). See, e.g., Palmer v. Hoffman, 318 U.S. 109, 114, 87 L. Ed. 645, 63 S. Ct. 477 (1943).

In this instance it is clear the document is not a regularly maintained document because Ms. Price has failed to assert that fact. Indeed, she admits otherwise, as such all of the references and thought processes associated with **Exhibit "N"** should be rejected, especially those related to the inference that the check in the sum of $81.03 was issued on May 31, 2005. Without more, meaning a custodial history or her personal knowledge of the payments or the fact that the check was ever issued or her statements are at best hearsay. [See, **Price Aff. at ¶¶11-30.**]

Turning to the Affidavit of Diane Knueppel, and beginning with **Exhibits "F" and "G"**, again, because there is no source of information or the method or circumstances of preparation

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

5

the documents should be excluded. Turning next to Paragraph "3", the statement is completely in contradiction with the factual reality of this case and in conflict with itself. Ms. Knueppel's states that "Mr. Wilson told [her] that he had learned of a shortage to his ISA when he requested that payment be made from his ISA to pay his insurance premium on his term life insurance policy to the end of the year." This of course means that he was not relying on a written any notice provided by NORTHWESTERN. [See Knueppel Aff at ¶3.] The Court's attention is drawn to the fact on about April 27, 2005, Mr. Wilson negotiated payment of his Term Policy to the end of the year December 2005. Hence, Ms. Knueppel statements make absolutely no sense whatsoever, why on May 23, 2005 would Mr. Wilson be making a payment and finding out about a shortage if he is on an automated monthly payment from his ISA and had paid until December 2005. At their best Ms. Knueppel statements create a question of fact for the trier of fact as to whether any call was actually made on or about May 23, 2005 and whether a check was mailed on May 31, 2005, especially one that was not received or cashed.

Finally, there are the claims that Mr. Wilson requested backdating the Term Policy to February 28, 2005. However, there is nothing in the records of NORTHWESTERN to support the claim, and in fact the opposite is true. In fact, it appears that NORTHWESTERN's claims are a fabrication and manipulation of their own records. They are nothing more than an afterthought designed to avoid payment on the claim.

"Client is now asking to be refunded his <u>last payment and let the policy lapse.</u> Negotiated call back so I may contact FR discuss." [See, Knueppel Affidavit Exhibit "B".] [Emphasis added.]

The notes go on to state:

"Informed client that I am working on refunding <u>last draft</u> that was done on ISA." [See, Knueppel Affidavit Exhibit "C".] [Emphasis added.]

Defendant claims that based on these conversations on May 30, 2005[1], it retroactively terminated-canceled Mr. Wilson's Term Policy to the same date as the termination of his Whole

---

[1] Perhaps the most significant question to be posed by NORTHWESTERN's is the fact that although the letter of July 21, 2006, provides a claim of manual backdating to the date of May 30, 2005, Memorial Day the matter is never addressed by NORTHWESTERN other than to dismiss the letter as not a business record. Clearly the letter is an impeachment or at least some evidence of fabrication concerning their business records.

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

6

Life Policy to February 28, 2005, wherein a refund of $81.03 was allegedly issued on May 31, 2005, in the sum of $81.03. [2] [See, Knueppel Affidavit Exhibit "E" in contradiction.]

And, it is not at all clear whatsoever from the content contained in the Casetracker notes, even assuming that their was a telephone call from Mr. Wilson that oral an agreement to to modify the terms of the Policy- or even the paid to date beyond "refunding his last payment" as to May 29, 2005, and inasmuch as he was billed monthly, the statement which is the statement of Ms. Knueppel, not Mr. Wilson, that a refund was being made to his last "draft" with a retroactive termination to February 28, 2005 is self-serving and an issue of fact. [3]

The distinction is real because the meaning assigned to the notes is speculative and self serving for the reason that they do not reflect what Mr. Wilson agreed to or requested with any sort of reliable specificity. And, Ms. Knueppel Affidavit falls far short from making the claim inferred, that it was Mr. Wilson request to backdate the premium refund to February 28,2005. Since the alleged statements-records do not prove the existence of the agreement with the terms as claimed by NORTHWESTERN and do not in the slightest way refer to the terms alleged the Court should reject the meaning assigned to them by NORTHWESTERN concerning any agreement to backdate the termination-cancellation of the Term Policy to February 28, 2005 finding that any cancellation was ineffective or alternatively that a question of fact exists as to what Mr. Wilson meant concerning his direction to "refund his last payment and let the policy lapse". [See, Exhibit "8" NML 227 Pages 1 of 7.] and [See, Knueppel Affidavit Exhibits "B" and "C".]

In addition to the foregoing, the Court is asked to consider the fact the that if the Casetracker notes are accurate they should have been in place on July 21, 2006, however, it would appear that on June 23, 2006 NORTHWESTERN employees researching Plaintiff's claim were themselves questioning "who manually backdated" the policy and which policy was it that was

---

[2] Although NORTHWESTERN claims to have manually backdated the premium on Memorial Day, May 30, 2005, Plaintiff denies ever receiving the check and the check has never been cashed. [See, Exhibit 8 "NML 99-100".]

[3] Mr. Wilson's IAS account was billed quarterly and was billed internally monthly. On May 31, 2005, a premium refund check in the sum of $154.07 was drafted. [See, Exhibit 8-NML 251] Its' actual mailing date is a matter of dispute and of interest to the Court should be the fact that the check represents a premium refund on Mr. Wilson's Term Policy 16852105 to May 29, 2005, meaning of course that the 31 day grace period did not expire until at least June 29, 2005.

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

7

manually backdated. [See, Volume 1, Exhibit "7" NML117.] Under the circumstances it would appear that the Casetracker notes associated with the backdating of the Policies were nonexistent in July 2006 when Ms Berka was researching the claim and preparing the disclaimer letter. [See, Exhibit "7" NML 99-100.] Clearly, the Casetracker notes were not in place on July 21, 2006.

### POINT IV

### BECAUSE NORTHWESTERN IS A MUTUAL LIFE INSURANCE COMPANY PROVIDING DIVIDENS TO ITS' POLICY HOLDERS ITS' EMPLOYEES ARE PROHIBITED FROM OFFERING ANY TESTIMONY AS TO THE CANCELLATION-TERMINATION OF THE POLICIES IF THE EMPLOYEES ARE INSURED WITH NORTHWESTERN

The principal issue to be determined by the Court is whether any testimony offered by NORTHWESTERN's employees may be considered as testimony offered by an interested person-party concerning the decedent Kenneth Wilson against his surviving spouse, M. WILSON as prohibited under New York law. See, CPLR 4519; Clift v Moses, 112 N.Y. 426; Corning v Walker, 100 N.Y. 547

CPLR § 4519 precludes interested parties from testifying in their own behalf against the interest of a decedent as to conversations or transactions that they had with a person now dead. The statute, is grounded "on the concept that where death has sealed the lips of one of the parties to a personal transaction, the law, for the protection of his estate and his survivors, should and ought to seal the lips of anyone else making a claim against the estate" Ward v. Kovacs, 55 A.D.2d 391, 403, 390 N.Y.S.2d 931 (2d Dept. 1977)]. See also, In re Erdmann's Estate, 198 Misc. 1087, 98 N.Y.S.2d 111, (Richmond Co. 1950), where it was said that (p. 1091): "fairness requires that one party should not be permitted to give his version of a transaction or communication where the adversary in the controversy is dead; where death silences one, the law will silence the other. The purpose of the statute is to put both parties on equality." Ward, supra.

Most if not all of the cases cited by Defense Counsel in opposition to the imposition of CPLR §4519 are fact sensitive and have nothing to do with the facts in this case, especially, Ward v. New York Life Insurance Company, 225 N.Y. 314, 122 N.E. 207.

Indeed, the New York Court of Appeals has ruled that the holding in Ward v. New York

8

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

Life Insurance Comapny, supra was "fact sensitive" and has limited its application to situation where the decedent did not own the policy. See, Poslock et al. v. Teachers Retirement Board of Teachers' Retirement System, et al. 88 N.Y. 2d 146. Poslock, supra has significantly broadened the application of CPLR §4519 such that its application is proper in this case.

The facts of Ward, supra are distinguishable under Poslock, supra and are not present in the instant case. **NORTHWESTERN** is a mutual life insurance company where the policy belonged to the insured during his life time and where premium dividends are paid to the owner of the policy during their lifetime such that the Polices had a cash value. [See, Price Aff. Exhibit "J" and "K".] Assuming Ward v. New York, supra is inapplicable, and Poslock, supra is, and turning to the core issue of witness competency related to **NORTHWESTERN**'s employees, the fact that they are employees standing alone does not make them competent to testify in this matter. Although Plaintiff does not concede the issue, it would appear that the **NORTHWESTERN**'s employees might not precluded from testifying on behalf of their employer against the interest of M. WILSON as to conversations or transactions that they had with Mr. Wilson.

However, under the unique facts of this case the matter does not simply end with the fact that **NORTHWESTERN**'s employees are always competent testifying, the matter turns on the interest of each of these individuals who's testimony is being offered. The test is whether they would be affected by in some manner by a judgment rendered in the matter.

And, because **NORTHWESTERN** provides dividends to its policy holders and because the Affidavits of each of the **NORTHWESTERN** employees fails to provided any background or to determine their ownership interest in **NORTHWESTERN**, their testimony should be excluded for the failure to qualify the witnesses.

POINT V

**NORTHWESTERN FAILED TO NOTIFY THE INSURED OF THE CANCELLATION OF HIS TERM POLICY AND THE POLICY WAS NEVER PROPERLY CANCELED**

Insurance Law §3211(a)(1) requires an insurer to issue a written notice of cancellation prior to terminating a life insurance policy for a default in the payment of a premium, where the payment of the policy premiums occurs in greater than one month intervals. **NORTHWESTERN**

9

Plaintiff's Memorandum with Points and Authorities
For An Order Granting Summary Judgment Case No.: 07CV2790-(CLB)

Law Office of Douglas R. Dollinger & Associates
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

failed to issue such a notice claiming Mr. Wilson elected to pay the policies premiums on a monthly basis.

NORTHWESTERN's Policies provide that the Company-Insured may change the frequency of premium payments. Changes become effective as the Company accepts them. [See, Price Aff.¶4.]

In this case, Mr. Wilson elected to change the frequency of his premium payments from monthly to at a minimum quarterly as is evidenced by his April 27 2005, payment. It was NORHTWESTERN's own internal policy that billed the ISA monthly. Once the payment option for premiums was changed with the consent of NORTHWESTERN as evidence by their billing practices and acceptance of the premiums on a quarterly-annual basis[4], the language of Insurance Law §3211 (a)(1)was triggered, thus creating the requirement that defendant provide written notification of cancellation prior to its termination of the policies.

The consequences of the foregoing are that Mr. Wilson died within the grace period because he died within one year of the claimed cancelation date wherein the policies by statute and agreement remained in full force with premium payment to be deducted for the policy proceeds.

Based on the above, Plaintiff respectfully requests that this Court should grant Plaintiff's Motion for Summary Judgment.

## CONCLUSION

By: _____
DOUGLAS R. DOLLINGER, ESQ.
Attorney for Plaintiff
40 Matthews Street
Village of Goshen
Goshen, New York 10924
Tele.  845.294.2771
Fasc.  845.294.2772

---

[4] NORTHWESTERN admits that it reinstate the Term Policy with a payment in advance of 6 months. Hence, the statute applies and Notice of Cancellation was required and none was sent.

## PROOF OF SERVICE

STATE OF NEW YORK )
COUNTY OF ORANGE)

I, EDWARD McCARTHY maintain my offices in the City of Goshen, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings. My business address is 40 Matthews Street, Village of Goshen, Goshen, New York 10924.

On March 14, 2008, I served the annexed documents: Motion for Enlargement of Page Limitation on Memorandums and Motion to Allow Substitution of Pleadings to Conform to Rule 56.1 Statement, Declaration of Douglas R. Dollinger, Plaintiff's Memorandum of Law in Reply of the Defendant's Opposition to Plaintiff's Motion for Summary Judgment Pursuant to Fed. Rule 56 on all interested parties at the addresses that follow:

*** PLEASE SEE ATTACHED SERVICE LIST***

___ VIA OVERNIGHT MAIL:

By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

X VIA U.S. MAIL:

By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on _____ with postage thereon fully paid at the local post office in Goshen, New York.

___ VIA PERSONAL DELIVERY:

By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

___ VIA FACSIMILE:

By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true ad correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

Executed this 14th day of March 2008, Village of Goshen, County of Orange, State of York.

EDWARD McCARTHY

## SERVICE LIST

### WILSON V. NORTHWESTERN Case No.: 07cv2790-(CLB)

RIVKIN RADLER LLP
Attorneys for Defendant
Attn: Norman L. Tolle, Esq., of Counsel
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333