**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE WILSON,<br>Plaintiff(s),<br>vs.<br><br>NORTHWESTERN MUTUAL INSURANCE COMPANY,<br>Defendant(s). | Case No.: 07CV2790 (CLB)<br>HON. CHARLES L. BRIEANT<br><br>**ATTORNEY'S DECLARATION** |

COUNTY OF ORANGE )
)SS.:
STATE OF NEW YORK )

**DOUGLAS R. DOLLINGER,** attorney for the Plaintiff MICHELLE WILSON, affirms under the penalty of perjury, deposes and says:

1. This Declaration, Memorandum of Points and Authorities and accompanying documents are each submitted to the Court for an Order allowing Plaintiff's Counsel to file substitution-supplemental pleadings to conform to Rule 56.1, in support of Plaintiff's Motion for Summary Judgment on her Complaint pursuant to F.R.E. 56(c), and in opposition to the Motion for Summary Judgment of the Defendant NORTHWESTERN MUTUAL INSURANCE COMPANY (**"NORTHWESTERN"**).

2. In response to Motion Practice before the Court Counsel for Plaintiff submitted Memorandums of Law which incorporated and referenced Plaintiff's **Volumes I and II containing Exhibits 1-12** together with a statement of facts

incorporated in her Memorandums of Law in Support of her Motion for Summary Judgment and in Opposition to the Defendant's Motion for Summary Judgment.

3. Defendant **NORTHWESTERN** argues[1] that the Court must reject Plaintiff's Motion for Summary Judgment and also grant **NORTHWESTERN's** Motion for Summary Judgment for the failure of Plaintiff to provide a separate statement of facts pursuant to Local Rule 56.1.

4. Plaintiff Counsel now moves the Court to enlarge the time to file said statement for good cause and in the Court's discretion to authorize him to file an amended pleading to conform to Local Rule 56.1. **[See, Exhibit "A".]**

5. Essentially, the undersigned misread-misunderstood the Local Rule 56.1 and failed to separate the factual statements for the memorandum and otherwise individually number the statements. The factual recitals conformed with the Local Rule in all other respects wherein identification to the factual assertions was supported by direct reference to Plaintiff's **Exhibits "1"-"12"** as the Rule requires.

6. Notwithstanding this form error, it is respectfully submitted that the content related to Plaintiff's factual claims was fully stated in Plaintiff's original Memorandum of Law as well as Plaintiff's Opposition Memorandum of Law. What's more, in each instance it was nearly identical in content except for clarity and reference to the term automation as set forth at the end of paragraph "15" in **Exhibit "A".**

[1] Counsel also argues that Plaintiff has exceeded the page limits for Memorandum set by the Court and directs the Court's attention to Judge Brieant's Individual Practice at paragraph 2, Section C. I have consulted those rules but find no such limitation. However, so as not to run afoul of the claimed rule, I have limited my Reply Memorandum of Defendant's Motion to 10 pages.

7. Although argued as to the form, Defense Counsel has failed to point to any prejudice suffered as a result of this error in form.

**WHEREFORE**, it is respectfully requested the Court issue an Order authorizing the filing of Plaintiff's Amended Rule 56.1 Statement, together with such other and further relief as the Court may deem just and proper.

Affirmed: Goshen, New York
March 14, 2008

By: ______________________

DOUGLAS R. DOLLINGER, ESQ. (5922)
Attorney for Plaintiff(s)
40 Matthews Street
Village of Goshen
Goshen, New York 10924
Tele. 845.294.2771
Fasc. 845.294.2772

**EXHIBIT "A"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHELLE WILSON,

Plaintiff(s),

vs.

NORTHWESTERN MUTUAL INSURANCE COMPANY,

Defendant(s).

Case No.: 07CV2790 (CLB)
HON. CHARLES L. BRIEANT

**PLAINTIFF'S PROPOSED RULE 56.1 STATEMENT**

STATE OF NEW YORK)
)SS.:
COUNTY OF ORANGE )

Plaintiff, MICHELL WILSON **("M. WILSON")** by her attorney DOUGLAS R. DOLLINGER submits this Declaration and statement of uncontestable facts and documentary proof under penalty of perjury pursuant to Local Rule 56.1, based on a review of the records available in this matter including Plaintiff's documents Volumes 1 and 2 containing Exhibit 1-12, and upon an investigation into the facts of this case as provided to me by the Plaintiff, **M. WILSON** as well as upon the various discovery responses had between my office and defense counsel for NORTHWESTERN MUTUAL INSURANCE COMPANY **("NORTHWESTERN")**.

1. Kenneth Wilson was 36 years old at the time of his death. He left surviving his wife, Plaintiff **M. WILSON**, and two infant children, Jared-9 years old and Evan-6 years old. **[See, Wilson Rule 26 Response at 56.]**

2. Prior to his death of June 6, 2005, on or about May 22, 2004, Mr. Wilson purchased two (2) life insurance policies from **NORTHWESTERN,** ACL Whole Life

Policy No. 16852083 (hereafter the "Whole Life Policy"), providing life insurance coverage in the amount of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS; and Term Insurance Policy No. 16852105 ("hereafter the Term Policy"), providing life insurance coverage in the amount of THREE HUNDRED FIFTY THOUSAND ($350,000.00) DOLLARS. **[See, Exhibit, 5, *Exhibits "A" and "B" thereto.*] [Counter Response Def. Rule 56.1 Statement ¶¶1-2.]**

3. The Policies were sold to Mr. Wilson via their **NORTHWESTERN's** Agent Daniel Stein. Mr. Stein was also Mr. Wilson's Financial Advisor as provided by **NORTHWESTERN** and would have delivered the Polices to Mr. Wilson here in New York. **[See, Exhibit 5 ¶¶7-10 and Exhibit 11 at Page 66 lines 8-10.] [Counter Response Def. Rule 56.1 Statement ¶13.]**

4. Demand was timely made for payment on the Polices by **M. WILSON** as the named beneficiary thereto. **[See, Exhibit's 5-*Exhibits "A", "B" and "D" thereto.*] [Counter Response Def. Rule 56.1 Statement ¶20.]**

5. Initially, payments were agreed to be made monthly, however, payment on the Policies was changed and the Company agreed to accept payments on each policy at different frequencies including either a monthly or a quarterly basis. **Exhibit 8 "NML 292-297".] [Counter Response Def. Rule 56.1 Statement ¶3.]**

6. **NORTHWESTERN** has refused to make payment on the Policies, claiming that Whole Life Policy lapsed with the consent of Mr. Wilson for non-payment of

premiums with a paid to date of February 28, 2005. **[See, Exhibit's 5-*Exhibit "D" thereto* and Exhibit 8 "NML 99-100".] [Counter Response Def. Rule 56.1 Statement ¶21.]**

7. On or about 29, April 2005 **NORTHWESTERN** received electronic wire payment from Mr. Wilson for payment on his Term Policy in the sum of $215.60. The funds were paid to his Insurance Service Account ("IAS") for the premium payments to the end of the year, December 2005. **[See, Exhibits 8 "M. Wilson 130" and Exhibit 8 "NML 169" and "292-297".] [Counter Response Def. Rule 56.1 Statement ¶6.]**

8. **NORTHWESTERN** also claims that on May 23, 2005, just 14 days prior to his death Mr. Wilson and **NORTHWESTERN** orally agreed to terminate-cancel the Term Policy and that Mr. Wilson "requested a refund of his last payment", which they claim was an agreement to backdate the Term Policy to February 28, 2005, thus relieving **NORTHWESTERN** of its obligation for payment under the Term Policy's 31 day grace period. [**See, Exhibit 5-*Exhibit "D" thereto*, and see Exhibit 8 "NML 99-100".] [Counter Response Def. Rule 56.1 Statement ¶8.]**

9. The specific facts concerning the oral agreement to terminate the Term Policy being, as **NORTHWESTERN** claims, that on May 23, 2005, Mr. Wilson called making inquires concerning an alleged shortage in his IAS-Account of $35.00. **[See Aff. Diane Knueppel at¶23.] [Counter Response Def. Rule 56.1 Statement ¶9.]**

10. **NORTHWESTERN** claims the shortage was the result of the loss in companion status related to the Whole Life Policy, and that they advised Mr. Wilson of the reason for the shortage in his ISA-Account and that there would be an additional charge of

$35.00 as a result of the loss of the companion status of the Whole Life Policy. **[See Aff. Diane Knueppel at¶23.] [Counter Response Def. Rule 56.1 Statement ¶11.]**

11. Defendant also claims that after advising Mr. Wilson of the additional $35.00 charge, **NORTHWESTERN** agreed a refund the Term Policy premiums to his last payment. **[See, Exhibit 5-** ***Exhibit "D" thereto*****, and see Exhibit 8 "NML 99-100".] [See, Exhibit 8 "NML 227 Pages 1 of 7".] [Counter Response Def. Rule 56.1 Statement ¶2.]**

12. In response **NORTHWESTERN** issued its refund check of $154.07 on May 31, 2005, which said sum was a refund of premiums for the months of June 2005 through December 2005. **[Exhibit 8 Wilson "NML 154", 227 Pages 1 of 7" and NML "292"- "297".] [Counter Response Def. Rule 56.1 Statement ¶11.]**

13. This check was received by **M. WILSON** after Mr. Wilson's death. **[See, Exhibit 10 "Page 33- Line 16 continuing to Page 37 Line 16".]**

14. However, **NORTHWESTERN** also claims that after the premium payment of $154.07 was agreed to be refunded, they offered to terminated-canceled the Term Policy and in fact backdate the premium payment to February 28, 2005. They claim to have issued a second check in the sum of $81.03 on May 31, 2005. Significantly, it appears this check was not delivered prior to Mr. Wilson's death, nor was it ever received by **M. Wilson.** In fact, this check has never been cashed. **See, Exhibit 10 "Page 33- Line 16 continuing to Page 37 Line 16".] [Counter Response Def. Rule 56.1 Statement ¶17.]**

15. Notwithstanding the claim that a check in the sum of $81.03 was mailed on May 31, 2005, after being manually backdated on Memorial Day 2005, prior thereto, on or

about May 23, 2005 **NORTHWESTERN** mailed Mr. Wilson notice that his Term Policy was paid to May 29, 2005 and that the grace period under the Policy expired on June 29, 2005. [**See, Exhibit 5** ***Exhibit "E" annexed thereto*** - letter dated May 23, 2005, stating that Mr. Wilson's ISA Account had been closed but was paid to May 29, 2005, with a "Grace Period" to expire on June 29, 2005.] **NORTHWESTERN** claims to have issued the letter in error, via automation, however, the letter was never rescinded by **NORTHWESTERN.**

16. **NORTHWESTERN** also claims that on May 30, 2005, after having manually backdated the Policy's paid to date, on Memorial Day, on May 31, 2005 they mailed two (2) checks to Mr. Wilson. **[See Exhibit 8 "NLM 99- 100, 218", and NML 307".]**

17. Based on these alleged mailings **NORTHWESTERN** claims that the Term Policy was terminated-cancelled prior to the death of Mr. Wilson with as effective date of February 28, 2005. **[See, Exhibit 8 "NLM 99-100".] [Counter Response Def. Rule 56.1 Statement ¶21.]**

18. **NORTHWESTERN** has refused to pay the claims despite timely demand by the Plaintiff. [See **Volume 1 Exhibit "5".] [Counter Response Def. Rule 56.1 Statement ¶21.]**

Affirmed: Goshen, New York 12550
March 14, 2008

By: ______________________
DOUGLAS R. DOLLINGER, ESQ. (5922)
Attorney for Plaintiff(s)

**Law Office of Douglas R. Dollinger & Associates**
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

40 Matthews Street
Village of Goshen
Goshen, New York 10924
Tele. 845.294.2771
Fasc. 845.294.2772

**Law Office of Douglas R. Dollinger & Associates**
40 Matthews Street, Goshen, New York 10924* Tele. 845.294.2771 Facs. 845.294.2772

# PROOF OF SERVICE

STATE OF NEW YORK )
COUNTY OF ORANGE)

I, EDWARD McCARTHY maintain my offices in the City of Goshen, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings. My business address is 40 Matthews Street, Village of Goshen, Goshen, New York 10924.

On March 14, 2008, I served the annexed documents: Motion for Enlargement of Page Limitation on Memorandums and Motion to Allow Substitution of Pleadings to Conform to Rule 56.1 Statement, Declaration of Douglas R. Dollinger, Plaintiff's Memorandum of Law in Reply of the Defendant's Opposition to Plaintiff's Motion for Summary Judgment Pursuant to Fed. Rule 56 on all interested parties at the addresses that follow:

***** PLEASE SEE ATTACHED SERVICE LIST*****

**___ VIA OVERNIGHT MAIL:**

By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

**_X_ VIA U.S. MAIL:**

By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on ____________ with postage thereon fully paid at the local post office in Goshen, New York.

**____VIA PERSONAL DELIVERY:**

By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

**____VIA FACSIMILE:**

By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true ad correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

Executed this 14th day of March 2008, Village of Goshen, County of Orange, State of York.

EDWARD McCARTHY

**SERVICE LIST**

**WILSON V. NORTHWESTERN Case No.: 07cv2790-(CLB)**

RIVKIN RADLER LLP
Attorneys for Defendant
Attn: Norman L. Tolle, Esq., of Counsel
926 Reckson Plaza
Uniondale, New York 11556-0926
Tele: 516.357.3000
Fasc: 516.357.3333